UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NORCAL MUTUAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>LAUREL PEDIATRIC ASSOCIATES, INC.<br>d/b/a LAUREL PEDIATRIC ASSOCIATES<br><br>Defendant. | Civil Action No. 3:21-cv-66 |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, NORCAL MUTUAL INSURANCE COMPANY ("NORCAL"), by and through its attorneys, files this Complaint for Declaratory Judgment and states the following claims against Defendant:

**Nature of Action**

1. NORCAL brings this action against Defendant for a declaration that NORCAL does not owe indemnity or defense coverage under a policy of insurance issued to Defendant Laurel Pediatrics Associates, Inc., in effect for the period January 1, 2016 to January 1, 2017 in connection with an underlying lawsuit seeking damages arising out of sexual conduct perpetrated by Dr. Johnnie Barto.

**Parties**

2. Plaintiff NORCAL is an insurance company organized under the laws of California with its principal place of business located in the State of California.

3. Defendant Laurel Pediatric Associates, Inc. ("LPA") is a corporation organized under the laws of the Commonwealth of Pennsylvania with its principal place of business located in Johnstown, Pennsylvania.

## Jurisdiction and Venue

4. Plaintiff brings this action for declaratory relief pursuant to 28 U.S.C. §§ 2201-2202. An actual case and controversy of a justifiable nature exists between NORCAL and LPA involving the rights and liabilities under a policy of insurance issued by NORCAL to LPA for professional liability coverage.

5. This Court has jurisdiction over the controversy pursuant to 28 U.S.C. § 1332 on the basis that there exists diversity of citizenship between NORCAL and LPA, and the amount of controversy, exclusive of interest and costs, exceeds $75,000.

6. Venue is proper pursuant to 28 U.SC. § 1391 because the principal place of business of LPA is within the Western District of Pennsylvania, and the events giving rise to this cause of action took place within this judicial district.

## Factual Background

### The Underlying Lawsuit

7. On May 14, 2019, several minor Jane Doe and John Doe plaintiffs filed an action in the Court of Common Pleas of Cambria County, Pennsylvania, against LPA, DLP Conemaugh Memorial Medical Center, LLC, and Johnnie W. Barto, M.D., under docket no. 2019-2172. That lawsuit, which is the subject of this declaratory judgment action, is pending under docket no. 2019-2172 and is referred to herein as the "Underlying Lawsuit." The operative complaint in the Underlying Lawsuit is the Fourth Amended Complaint, which was filed on September 18, 2020 and is attached hereto as Exhibit A.

8. The Fourth Amended Complaint in the Underlying Lawsuit adds Johnston Pediatric Associates, Inc. and DLP Healthcare, LLC as defendants and seeks damages on behalf of 44 plaintiffs. The plaintiffs allege sexual misconduct by Barto, a pediatrician, during medical appointments that took place between 1991 and 2018. *See* Ex. A.

9. According to the Underlying Lawsuit, in 2018, Barto was charged with sexual misconduct involving twenty-nine victims alleging abuse that dated back to the early 1990s, and took place at LPA; Barto entered no contest pleas to charges of aggravated indecent assault, indecent assault and endangering the welfare of a child. *Id.* at ¶¶ 61-63.

10. On January 22, 2018, Barto's medical license was suspended and, on March 18, 2019, Barto was sentenced to 79 to 158 years in state prison. *Id.* at ¶ 64.

11. The Underlying Lawsuit alleges that LPA knew or should have known of Barto's conduct and failed to supervise Barto and prevent his sexual misconduct. *Id*. at ¶¶ 70-71.

12. The Underlying Lawsuit alleges that "[w]hile many patients and their parents raised alarms about Barto's treatment and abuse of his minor patients, nothing was done by any of the named Defendants to protect these children from Barto despite *inter alia*, repeated police contact, repeated similar complaints by patients in each decade of his long medical career, and despite gaining access to, and abusing these minor patients at the time and place designated for his work as a pediatrician." *Id.* at ¶ 59.

13. The Underlying Lawsuit alleges that in March 2000, the Commonwealth of Pennsylvania suspended Barto's medical license and, although it was "erroneously re-instated, . . . Laurel Pediatrics, given the facts circumstances and allegations that led to the revocation of Barto's license in March, [was] actually aware of the serious nature of the allegations, and the

3

testimony – sufficient to place those defendants on notice that Barto presented an unreasonably high risk of harm to his minor patients . . ." *Id.* at ¶ 69.

14. The Underlying Lawsuit also alleges that individuals at LPA had knowledge of the sexual misconduct by Barto, and that the plaintiffs reported Barto's sexual conduct with minor patients to various personnel at LPA. *Id.* at ¶¶ 102, 187, 199, 211-212, 219-220, 231, 312, 355-356, 366-367.

15. Based on these allegations of fact, the Underlying Lawsuit nonetheless characterizes LPA's breaches of duty as failures "to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for" the respective plaintiff.

16. The plaintiffs seek to recover compensatory and punitive damages against LPA based on theories of childhood sexual abuse and vicarious liability, negligence – hiring/retention, negligent supervision, negligent misrepresentation, intentional infliction of emotional distress, civil conspiracy to protect reputation and finances, medical negligence, and corporate negligence (negligent credentialing).

## The NORCAL Policy

17. NORCAL issued policy 719736N to LPA for the policy period of January 1, 2016 to January 1, 2017 (the "Policy"). A true and correct copy of the Policy, with premium redacted, is attached hereto as Exhibit B.

18. The Policy's medical professional liability insurance is occurrence-based and is subject to a limit of $500,000 for each Claim and $1,500,000 aggregate.

19. By endorsement, Barto was an "Insured" under the Policy, subject to the Policy terms and conditions.

20. The Policy's insuring agreement for medical professional liability coverage states, in relevant part, that subject to the applicable limits, NORCAL "will pay <u>Damages</u> . . . on behalf of an <u>Insured</u> because of a <u>Medical Incident</u> that: 1) first takes place within the <u>Coverage Territory</u> during the <u>Policy Period</u>; and 2) results in a <u>Claim</u> against that <u>Insured</u>."

21. The relevant insuring agreement further states that NORCAL has duty to "defend a <u>Claim</u> resulting from a <u>Medical Incident</u> that first takes place within the <u>Coverage Territory</u> during the <u>Policy Period</u> . . . But <u>We</u> have no duty to defend a <u>Claim</u> to which this insurance does not apply."

22. The Policy defines "<u>Medical Incident</u>" as "any act or omission resulting directly from the rendering of or failure to render <u>Professional Health Care Services</u> . . ." Further under the definition, "<u>Medical Incident</u> includes <u>Related Medical Incidents</u>."

23. The Policy defines "<u>Professional Health Care Services</u>" as "those medical or health care services provided by the <u>Insured</u>, or a health care professional for whom the <u>Insured</u> may be liable, including: 1. direct medical, surgical, dental, or nursing treatment, including furnishing food or beverage in connection with these; (2) making medical diagnoses and rendering medical opinions or medical advice; [or] (3) furnishing or dispensing drugs or medical, surgical, or dental supplies or appliances as warranted by the medical, surgical, dental, or nursing treatment; . . ."

24. The Policy defines "<u>Related Medical Incidents</u>" to include "two or more <u>Medical Incidents</u> logically related to the same or similar . . . decision(s) or circumstances." Further under the definition, "[t]he determination of whether or not two or more <u>Medical Incidents</u> constitute <u>Related Medical Incidents</u> will not be affected by the number or identity of claimants or the existence of a separate medical professional relationship or duty. <u>Related Medical Incidents</u> will

5

be deemed to be a single Medical Incident and will be deemed to have taken place when the first of such Medical Incidents took place."

25. Part IV of the Policy sets forth exclusions to the Policy's coverage.

26. Under Common Exclusion 9, the Policy does not provide indemnity coverage for "any Claim, arising out of, directly or indirectly . . . [a]ny dishonest, fraudulent, willful, criminal, or malicious act or omission."

27. Common Exclusion 11 provides that the coverage does not apply to punitive damages.

28. Common Exclusion 13 is the Policy's Sexual Misconduct Exclusion. Under that exclusion, NORCAL will "not defend any Claim, nor will We pay any Damages, Defense Costs, or Additional Benefits for a Claim, arising out of, directly or indirectly . . . [a]ny Sexual Misconduct." The exclusion continues:

   a. We will defend a Claim directly resulting from Sexual Misconduct to a patient of an Insured. If We defend an Insured under this exception, the Insured who committed or allegedly committed Sexual Misconduct must reimburse Us for any Defense Costs and Additional Benefits if he or she admits or it is proven, that he or she committed Sexual Misconduct.

   b. We will pay Damages on behalf of an Insured, other than an Insured who committed or allegedly committed Sexual Misconduct, if the Damages result directly from Sexual Misconduct to a patient of an Insured unless that other Insured:

      i. knew or should have known about the Sexual Misconduct but failed to prevent or stop it; or

      ii. knew or should have known that the person who committed or allegedly committed Sexual Misconduct had a prior history of or propensity for Sexual Misconduct.

29. Relevant to this exclusion, the Policy defines "Sexual Misconduct" as "any actual or alleged physical or mental assault, harassment, or contact of a sexual nature."

6

**The Tender of the Underlying Lawsuit under the Policy**

30. On or about May 20, 2019, LPA, through its broker, tendered the Underlying Lawsuit to NORCAL under the Policy.

31. NORCAL informed LPA that it would provide a defense subject to a reservation of rights, but that NORCAL would seek a judicial determination that no coverage was available for the then-operative complaint in the Underlying Lawsuit. A true and correct copy of the July 18, 2019 coverage position letter is attached hereto as Exhibit C.

32. NORCAL issued a supplemental coverage position letter on November 5, 2020, after the filing of the Fourth Amended Complaint in the Underlying Lawsuit. A true and correct copy of the November 5, 2020 supplemental coverage position letter is attached hereto as Exhibit D.

33. In the November 5, 2020 coverage position letter, NORCAL denied coverage for two complaints filed in Cambria County and pending under Case No. 2020-3383 and 2020-3384, which did not allege any medical negligence on the part of LPA, and the Underlying Lawsuit, and advised that it would seek a declaration that NORCAL did not owe any indemnity or defense to LPA based on the terms of the Policy.

34. On November 10, 2020, NORCAL confirmed that although it would not provide a defense to LPA with respect to the two complaints filed in Cambria, NORCAL was not withdrawing its defense against the Underlying Lawsuit at that time.

**The Underlying Lawsuit Does Not Allege a "Medical Incident"
against LPA During the "Policy Period"**

35. Under the terms of the Policy, the Policy's insuring agreement requires a "Medical Incident" that takes place during the "Policy Period."

36. The Underlying Lawsuit seeks damages based on various theories of negligence on the part of LPA because LPA allowed Barto access to minor patients even though LPA knew of prior allegations that Barto engaged in sexual misconduct with minors.

37. LPA's vicarious liability for a doctor's sexual misconduct is not a "Medical Incident."

38. Theories of direct negligence, such as negligent supervision, based on allowing access to minor patients despite knowledge of a history of sexual misconduct with minors, do not qualify as a "Medical Incident."

39. Even if the negligence of LPA could be deemed to qualify as a "Medical Incident," a "Related Medical Incident" on the part of LPA preceded the policy period.

40. Of the 44 plaintiffs that seek damages in the Underlying Lawsuit, 14 plaintiffs allege sexual conduct that potentially took place during the January 1, 2016 to January 1, 2017 policy period. The Underlying Lawsuit alleges, however, "complaints by patients in each decade of [Barto's] long medical career" and that LPA was actually aware by March 2000 that Barto presented an unreasonable risk of harm to minor patients. *See* Ex. A at ¶¶ 59, 69.

41. NORCAL owes no obligation to LPA because the conduct alleged on the part of LPA does not qualify as a "Medical Incident" and, even if a "Medical Incident," that "Medical Incident" preceded the Policy Period.

**The Exclusions Bar Coverage**

42. Under exclusion 13, the Policy does not afford coverage for any Claim, arising out of, directly or indirectly "any Sexual Misconduct."

43. Exclusion 13 is subject to an exception that permits indemnification of "an Insured, other than an Insured who committed or allegedly committed Sexual Misconduct . . .

unless that other Insured . . . knew or should have known about the Sexual Misconduct but failed to prevent or stop it; or . . . . knew or should have known that the person who committed or allegedly committed Sexual Misconduct had a prior history of or propensity for Sexual Misconduct . . ."

44. Even if LPA's alleged negligence for providing Barto access to LPA's patients qualifies as a "Medical Incident," and even if that Medical Incident is deemed to have first occurred during the January 1, 2016 to January 1, 2017 policy period, the exception to exclusion 13 does not permit coverage to LPA because the Underlying Lawsuit alleges that LPA knew or should have known about Barto's sexual misconduct and failed to prevent or stop it, or knew or should have known that Barto had a prior history or propensity for sexual misconduct.

45. Based on the allegations of the Underlying Lawsuit, the exception to exclusion 13 does not apply.

46. In addition, exclusion 11 applies to the Underlying Lawsuit's causes of action for intentional infliction of emotional distress and civil conspiracy.

**FIRST CAUSE OF ACTION**
(Declaratory Judgment: No Duty to Indemnify)

47. NORCAL repeats and realleges the allegations in paragraph 1 through 44 as though fully set forth herein.

48. Coverage under the Policy applies to "Medical Incident[s]" that take place during the "Policy Period," which include those acts or omissions "resulting directly from the rendering of or failure to render Professional Health Care Services . . ."

49. Because the Underlying Lawsuit seeks damages against LPA for allowing Barto access to LPA's patients, despite knowledge of allegations that Barto engaged sexual misconduct with minor patients, the Policy does not afford coverage for the Underlying Lawsuit because

such conduct does not qualify as the "rendering of or failure to rendering professional health care services".

50. Even if the conduct of LPA could qualify as a "<u>Medical Incident</u>," the Policy does not apply to the Underlying Lawsuit because the conduct on the part of LPA during the "<u>Policy Period</u>" does not qualify as the first of "<u>Related Medical Incidents</u>."

51. Under exclusion 9, the Policy does not provide coverage for any willful act or omission and, under exclusion 11, for intentional infliction of emotional distress or civil conspiracy.

52. Exclusion 13 further negates coverage for the Underlying Lawsuit because the allegations of the Underlying Lawsuit preclude application of the exception to exclusion 13. Under the exception, coverage can apply to claims alleging "<u>Sexual Misconduct</u>" as to the insured who did not perpetrate the sexual misconduct unless that insured "1. knew or should have known about the <u>Sexual Misconduct</u> but failed to prevent or stop it; or 2. knew or should have known that the person who committed or allegedly committed <u>Sexual Misconduct</u> had a prior history of or propensity for <u>Sexual Misconduct</u>."

53. Because the Underlying Lawsuit alleges that LPA knew or should have known about Barto's sexual misconduct and failed to prevent or stop it, and also that LPA knew or should have known that Barto had a prior history of or propensity for sexual misconduct, the exception to exclusion 13 does not afford coverage for the Underlying Lawsuit.

54. For these reasons, NORCAL has no duty to indemnify LPA for the Underlying Lawsuit.

55. A judicial declaration is necessary and appropriate at this time so that NORCAL obtain a declaration that it owes no indemnity obligation with respect to the Underlying Lawsuit.

A judicial declaration of the parties' rights and obligations under the Policy will obviate further disputes and legal actions that would otherwise result.

## SECOND CAUSE OF ACTION
(Declaratory Judgment: No Duty to Defend)

56. NORCAL repeats and realleges the allegations in paragraph 1 through 49 as though fully set forth herein.

57. The Policy states that NORCAL owes no duty to defend a claim to which the insurance does not apply.

58. Because NORCAL owes no indemnity obligation under the Policy, NORCAL owes no duty to defend LPA.

59. A judicial declaration is necessary and appropriate at this time so that NORCAL obtain a declaration that it is entitled to withdraw the defense. A judicial declaration of the parties' rights and obligations under the Policy will obviate further disputes and legal actions that would otherwise result.

WHEREFORE, NORCAL respectfully requests that this Honorable Court enter an Order declaring that NORCAL is not obligated to defend or indemnify LPA in connection with the Underlying Lawsuit, and award such other relief that this Court deems just and proper.

Date: April 12, 2021                                COZEN O'CONNOR

By: _/s/ Deborah M. Minkoff_____

Deborah M. Minkoff (Bar ID 42404)
Stephen S. Kempa (Bar ID 319143)
1650 Market St.
Philadelphia, PA  19103
215-665-2000
dminkoff@cozen.com
skempa@cozen.com

Mark R. Lane (Bar ID 61923)
Dell Moser Lane & Loughney, LLC
Two Chatham Center, Suite 1500
112 Washington Place
Pittsburgh, PA  15219
412-471-1180
mrl@dellmoser.com

*Attorneys for Plaintiff*
*NORCAL Mutual Insurance Company*