# EXHIBIT

## "A"

DALTON & ASSOCIATES, P.A.
By: Andrew C. Dalton, Esquire
Pa. Identification No. 315550
Megan N. Kinley, Esquire
Pa. Identification No. 328196
Cool Spring Meeting House
1106 West Tenth Street
Wilmington, DE  19806
(302) 652-2050
ADalton@BDaltonlaw.com

Attorneys for Plaintiffs

| | |
|---|---|
| JANE BR1 DOE; JANE JM2 DOE; JANE KW3 DOE; JANE AF4 DOE; JANE SN5 DOE; JANE NC6 DOE; JANE SW7 DOE; JOHN GL8 DOE; JANE KK9 DOE; JANE DD10 DOE; JANE TS11 DOE; | IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY – CIVIL ACTION – MEDICAL PROFESSIONAL LIABILITY ACTION |
| & | |
| JANE KD DOE as Parent, Guardian, and Next Friend of JANE JD12 DOE a minor; JANE SM DOE as Parent, Guardian, and Next Friend of JOHN GM13 DOE a minor; JANE KP DOE as Parent, Guardian, and Next Friend of JANE HP14 DOE a minor; JANE RT DOE as Parent, Guardian and Next Friend of a minor JANE ET15 DOE and JOHN PT16 DOE minors; JOHN JK DOE and JANE MK DOE as Parents, Guardians, and Next Friends of JOHN LK17 DOE and JANE SK18 DOE minors; JOHN KE DOE and JANE AE DOE as Parents, Guardians, and Next Friends of JANE GE19 DOE and JOHN TE20 DOE minors; JANE KB DOE as Parent, Guardian, and Next Friend of JANE PB21 DOE a minor; JANE CT DOE as Parent, Guardian, and Next Friend of JANE ST23 DOE a minor, JANE JR DOE as Parent, Guardian, and Next Friend of JANE RR24 DOE a minor; | JURY TRIAL DEMANDED  NO. 2019-2172 |
| & | |
| JANE MH25 DOE; JOHN AS26 DOE; JANE CW27 DOE; JANE MW28 DOE; | |
| & | |
| JANE KW DOE as Parent, Guardian, and Next Friend of JANE RW29 DOE a minor; JOHN JF DOE as Parent, Guardian, and Next Friend of JOHN JF30 DOE and JANE VF31 DOE minors; | |

JANE DM DOE as Parent, Guardian, and Next                    :
Friend of JOHN WM32 DOE a minor; JANE                         :
LM DOE as Parent, Guardian, and Next Friend                   :
of JOHN IM33 DOE and JANE JM34 DOE                            :
minors; JANE PL DOE as Parent, Guardian,                      :
and Next Friend of JANE KS35 DOE and                          :
JANE KS36 DOE minors; JOHN BH DOE and                         :
JANE DH DOE as Parents, Guardians, and                        :
Next Friends of JANE AH37 DOE a minor;                        :
      **&**                      :
**JANE AL38 DOE; JOHN DK39 DOE;**                             :
      **&**                      :
**JOHN RW DOE and JANE DW DOE as**                            :
**Parents, Guardians, and Next Friends of**                   :
**JANE AW40 DOE and JANE AW41 DOE**                           :
**minors; JANE WR DOE as Parent, Guardian,**                  :
**and Next Friend of JANE JR42 DOE a minor;**                 :
**JANE AL DOE as Parent, Guardian, and**                      :
**Next Friend of JANE AM43 DOE, JOHN JM44**                   :
**DOE, and JANE TL45 DOE minors;**                            :
                                                              :
       Plaintiffs,          :
                                                              :
                                                              :
    v.                                     :
                                                              :
                                                              :
LAUREL PEDIATRIC ASSOCIATES, INC.                             :
d/b/a LAUREL PEDIATRIC ASSOCIATES,                            :
323 Budfield Street, Johnstown, PA 15904                      :
     and                              :
JOHNSTOWN PEDIATRIC ASSOCIATES,                               :
INC., d/b/a Johnstown Pediatric Associates,                   :
209 West Sea Spray Road,                                      :
Ocean City, New Jersey, 08226                                 :
     and                              :
CONEMAUGH VALLEY MEMORIAL                                     :
HOSPITAL d/b/a MEMORIAL MEDICAL                               :
CENTER,                                                       :
Registered Agent at 1086 Franklin-MMC, Inc.,                  :
4 Valley Pike, Johnstown, PA 15905                            :
     and                              :
DLP CONEMAUGH MEMORIAL MEDICAL                                :
CENTER, LLC d/b/a CONEMAUGH HEALTH                            :
SYSTEM and CONEMAUGH MEMORIAL                                 :
MEDICAL CENTER LEE CAMPUS,                                    :
320 Main Street, Johnstown, PA 15901                          :
     and                              :

DLP Healthcare, LLC d/b/a Duke LifePoint    :
Healthcare, 1209 Orange Street, Wilmington,  :
DE 19801                                      :
    and                  :
JOHNNIE W. BARTO, M.D.,                       :
Inmate Number: NU4531                         :
SCI Waymart                                   :
Pennsylvania Department of Corrections;       :
                                          :
    Defendants.           :

## **NOTICE**

You have been sued in court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by your attorney, and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so, the case may proceed without you, and a judgment may be entered against you by the court, without further notice, for any money claimed in the Complaint, or of any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMAITON ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

    Laurel Legal Services, Inc.
    227 Franklin Street
    Suite 400
    Johnstown, PA15901
    Telephone:   (814) 536-8917
    Facsimile:   (814) 535-3377

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: Andrew C. Dalton, Esq.
Attorney for Plaintiffs

Signature: _____

Name:        Andrew C. Dalton, Esq.

Attorney No.  315550

DALTON & ASSOCIATES, P.A.
By:  Andrew C. Dalton, Esquire
Pa. Identification No. 315550
Megan N. Kinley, Esquire
Pa. Identification No. 328196
Cool Spring Meeting House
1106 West Tenth Street
Wilmington, DE  19806
(302) 652-2050
ADalton@BDaltonlaw.com

Attorneys for Plaintiffs

| | |
|---|---|
| JANE BR1 DOE; JANE JM2 DOE; JANE KW3 DOE; JANE AF4 DOE; JANE SN5 DOE; JANE NC6 DOE; JANE SW7 DOE; JOHN GL8 DOE; JANE KK9 DOE; JANE DD10 DOE; JANE TS11 DOE; | IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY – CIVIL ACTION – MEDICAL PROFESSIONAL LIABILITY ACTION |
| & | |
| JANE KD DOE as Parent, Guardian, and Next Friend of JANE JD12 DOE a minor; JANE SM DOE as Parent, Guardian, and Next Friend of JOHN GM13 DOE a minor; JANE KP DOE as Parent, Guardian, and Next Friend of JANE HP14 DOE a minor; JANE RT DOE as Parent, Guardian and Next Friend of a minor JANE ET15 DOE and JOHN PT16 DOE minors; JOHN JK DOE and JANE MK DOE as Parents, Guardians, and Next Friends of JOHN LK17 DOE and JANE SK18 DOE minors; JOHN KE DOE and JANE AE DOE as Parents, Guardians, and Next Friends of JANE GE19 DOE and JOHN TE20 DOE minors; JANE KB DOE as Parent, Guardian, and Next Friend of JANE PB21 DOE a minor; JANE CT DOE as Parent, Guardian, and Next Friend of JANE ST23 DOE a minor, JANE JR DOE as Parent, Guardian, and Next Friend of JANE RR24 DOE a minor; | JURY TRIAL DEMANDED THIRD **FOURTH** AMENDED COMPLAINT NO. 2019-2172 |
| & | |
| JANE MH25 DOE; JOHN AS26 DOE; JANE CW27 DOE; JANE MW28 DOE; | |
| & | |
| JANE KW DOE as Parent, Guardian, and Next Friend of JANE RW29 DOE a minor; JOHN JF DOE as Parent, Guardian, and Next Friend of JOHN JF30 DOE and JANE VF31 DOE minors; | |

JANE DM DOE as Parent, Guardian, and Next          :
Friend of JOHN WM32 DOE a minor; JANE             :
LM DOE as Parent, Guardian, and Next Friend       :
of JOHN IM33 DOE and JANE JM34 DOE                :
minors; JANE PL DOE as Parent, Guardian,          :
and Next Friend of JANE KS35 DOE and              :
JANE KS36 DOE minors; JOHN BH DOE and             :
JANE DH DOE as Parents, Guardians, and            :
Next Friends of JANE AH37 DOE a minor;            :
    **&**                                               :
**JANE AL38 DOE; JOHN DK39 DOE;**                 :
    **&**                                               :
**JOHN RW DOE and JANE DW DOE as**               :
**Parents, Guardians, and Next Friends of**       :
**JANE AW40 DOE and JANE AW41 DOE**              :
**minors; JANE WR DOE as Parent, Guardian,**      :
**and Next Friend of JANE JR42 DOE a minor;**     :
**JANE AL DOE as Parent, Guardian, and**          :
**Next Friend of JANE AM43 DOE, JOHN JM44**       :
**DOE, and JANE TL45 DOE minors;**               :

       Plaintiffs,          :

   v.                                              :

LAUREL PEDIATRIC ASSOCIATES, INC.                 :
d/b/a LAUREL PEDIATRIC ASSOCIATES,                :
323 Budfield Street, Johnstown, PA 15904          :
     and                                       :
JOHNSTOWN PEDIATRIC ASSOCIATES,                   :
INC., d/b/a Johnstown Pediatric Associates,       :
209 West Sea Spray Road,                          :
Ocean City, New Jersey, 08226                     :
     and                                       :
CONEMAUGH VALLEY MEMORIAL                         :
HOSPITAL d/b/a MEMORIAL MEDICAL                   :
CENTER,                                           :
Registered Agent at 1086 Franklin-MMC, Inc.,      :
4 Valley Pike, Johnstown, PA 15905                :
     and                                       :
DLP CONEMAUGH MEMORIAL MEDICAL                    :
CENTER, LLC d/b/a CONEMAUGH HEALTH                :
SYSTEM and CONEMAUGH MEMORIAL                     :
MEDICAL CENTER LEE CAMPUS,                        :
320 Main Street, Johnstown, PA 15901              :
     and                                       :

DLP Healthcare, LLC d/b/a Duke LifePoint                    :
Healthcare, 1209 Orange Street, Wilmington,                 :
DE 19801                                                    :
    and                                 :
JOHNNIE W. BARTO, M.D.,                                     :
Inmate Number: NU4531                                       :
SCI Waymart                                                 :
Pennsylvania Department of Corrections;                     :
                                                            :
    Defendants.                         :

## FOURTH AMENDED COMPLAINT- CIVIL ACTION- MEDICAL PROFESSIONAL LIABILITY ACTION

COMES NOW Plaintiffs, […] by and through their undersigned counsel, and bring this ~~Third~~ **Fourth** Amended Complaint.  In support thereof, Plaintiffs assert as follows:

PARTIES

1.    Plaintiff JANE BR1 DOE is an adult female individual, formerly and at present a citizen and resident of the Commonwealth of Pennsylvania.  Her year of birth is 1990.

2.    Plaintiff JANE JM2 DOE is an adult female individual, formerly a citizen and resident of the Commonwealth of Pennsylvania, but now is a resident of the State of Alabama. Her year of birth is 1990.

3.    Plaintiff JANE KW3 DOE is an adult female individual, formerly a citizen and resident of the Commonwealth of Pennsylvania, but now is a resident of the State of California. Her year of birth is 1991.

4.    Plaintiff JANE AF4 DOE is an adult female individual, formerly and at present a citizen and resident of the Commonwealth of Pennsylvania.  Her year of birth is 1991.

5.    Plaintiff JANE SN5 DOE is an adult female individual, formerly and at present a citizen and resident of the Commonwealth of Pennsylvania.  Her year of birth is 1992.

6.      Plaintiff JANE NC6 DOE is an adult female individual, ~~formally~~ **formerly** and at present a citizen and resident of the Commonwealth of Pennsylvania.  Her year of birth is 1992.

7.      Plaintiff JANE SW7 DOE is an adult female individual, ~~formally~~ **formerly** and at present a citizen and resident of the Commonwealth of Pennsylvania.  Her year of birth is 1992.

8.      Plaintiff JOHN GL8 DOE is an adult male individual, ~~formally~~ **formerly** and at present a citizen and resident of the Commonwealth of Pennsylvania.  His year of birth is 1992.

9.      Plaintiff JANE KK9 DOE is an adult female individual, formerly and at present a citizen and resident of the Commonwealth of Pennsylvania.  Her year of birth is 1993.

10.     Plaintiff JANE DD10 DOE is an adult female individual, ~~formally~~ **formerly** and at present a citizen and resident of the Commonwealth of Pennsylvania.  Her year of birth is 1997.

11.     Plaintiff JANE TS11 DOE is an adult female individual, ~~formally~~ **formerly** and at present a citizen and resident of the Commonwealth of Pennsylvania.  Her year of birth is 1999.

12.     Plaintiff JANE JD12 DOE is a minor female individual, ~~formally~~ **formerly** and at present a citizen and resident of the Commonwealth of Pennsylvania.  Her year of birth is 2002.

13.     Plaintiff JOHN GM13 DOE is a minor male individual, ~~formally~~ **formerly** and at present a citizen and resident of the Commonwealth of Pennsylvania.  His year of birth is 2004.

14.     Plaintiff JANE HP14 DOE is a minor female individual, ~~formally~~ **formerly** and at present a citizen and resident of the Commonwealth of Pennsylvania.  Her year of birth is 2005.

15.     Plaintiff JANE ET15 DOE is a minor female individual, formerly and at present a citizen and resident of the Commonwealth of Pennsylvania.  Her year of birth is 2007.  JANE ET15 DOE is the sibling of John PT16 Doe (See Paragraph 16).

16.     Plaintiff JOHN PT16 DOE is a minor male individual, formerly and at present a citizen and resident of the Commonwealth of Pennsylvania.  His year of birth is 2006.

17.     Plaintiff JOHN LK17 DOE is a minor male individual, formerly and at present a citizen and resident of the Commonwealth of Pennsylvania.  His year of birth is 2005.

18.     Plaintiff JANE SK18 DOE is a minor female individual, formerly and at present a citizen and resident of the Commonwealth of Pennsylvania.  Her year of birth is 2006.  JANE SK18 DOE is the sibling of John LK17 Doe (See Paragraph 17).

19.     Plaintiff JANE GE19 DOE is a minor female individual, formerly and at present a citizen and resident of the Commonwealth of Pennsylvania.  Her year of birth is 2011.  JANE GE19 DOE is the sibling of John TE20 Doe (See Paragraph 20).

20.     Plaintiff JOHN TE20 DOE is a minor male individual, formerly and at present a citizen and resident of the Commonwealth of Pennsylvania.   His year of birth is 2009.

21.     Plaintiff JANE PB21 DOE is a minor female individual, formerly and at present a citizen and resident of the Commonwealth of Pennsylvania.  Her year of birth is 2011.

22.     ~~Plaintiff JOHN CC22 DOE is a minor male individual, formerly and at present a citizen and resident of the Commonwealth of Pennsylvania.  His year of birth is 2012.~~

23.     Plaintiff JANE ST23 DOE is a minor female individual, formerly and at present a citizen and resident of the Commonwealth of Pennsylvania.  Her year of birth is 2015.

24.     Plaintiff JANE RR24 DOE is a minor female individual, formerly and at present a citizen and resident of the Commonwealth of Pennsylvania.  Her year of birth is 2016.

25.     Plaintiff JANE MH25 DOE is an adult female individual, formerly a citizen and resident of the Commonwealth of Pennsylvania, but now is a resident of the State of Tennessee.

Her year of birth is 1993.  JANE MH25 DOE is the sibling of John AS26 Doe (See Paragraph 26).

26.     Plaintiff JOHN AS26 DOE is an adult male individual, formerly and at present a citizen and resident of the Commonwealth of Pennsylvania.  His year of birth is 1991.

27.     Plaintiff JANE CW27 DOE is an adult female individual, formerly and at present a citizen and resident of the Commonwealth of Pennsylvania.  Her year of birth is 1999.  JANE CW27 DOE is the sibling of Jane MW28 Doe and Jane RW29 Doe (See Paragraphs 28-29).

28.     Plaintiff JANE MW28 DOE is an adult female individual, formerly and at present a citizen and resident of the Commonwealth of Pennsylvania.  Her year of birth is 2001.

29.     Plaintiff JANE RW29 DOE is a minor female individual, formerly and at present a citizen and resident of the Commonwealth of Pennsylvania.  Her year of birth is 2005.

30.     Plaintiff JOHN JF30 DOE is a minor male individual, formerly and at present a citizen and resident of the Commonwealth of Pennsylvania.  His year of birth is 2006.  JOHN JF30 DOE is the sibling of Jane VF31 Doe (See Paragraph 31).

31.     Plaintiff JANE VF31 DOE is a minor female individual, formerly and at present a citizen and resident of the Commonwealth of Pennsylvania.  Her year of birth is 2012.

32.     Plaintiff JOHN WM32 DOE is a minor male individual, formerly and at present a citizen and resident of the Commonwealth of Pennsylvania.  His year of birth is 2012.

33.     Plaintiff JOHN IM33 DOE is a minor male individual, formerly a citizen and resident of the Commonwealth of Pennsylvania, but now is a resident of the State of Maryland.  His year of birth is 2007.  JOHN IM33 DOE is the sibling of Jane JM34 Doe (See Paragraph 34).

34.     Plaintiff JANE JM34 DOE is a minor female individual, formerly a citizen and resident of the Commonwealth of Pennsylvania, but now is a resident of the State of Maryland. Her year of birth is 2009.

35.     Plaintiff JANE KS35 DOE is a minor female individual, formerly and at present a citizen and resident of the Commonwealth of Pennsylvania.  Her year of birth is 2002.  JANE KS35 DOE is the sibling of Jane KS36 Doe (See Paragraph 36).

36.     Plaintiff JANE KS36 DOE is a minor female individual, formerly and at present a citizen and resident of the Commonwealth of Pennsylvania.  Her year of birth is 2004.

37.     Plaintiff JANE AH37 DOE is a minor female individual, formerly and at present a citizen and resident of the Commonwealth of Pennsylvania.  Her year of birth is 2012.

38.     **Plaintiff JANE AL38 DOE is an adult female individual, formerly and at present a citizen and resident of the Commonwealth of Pennsylvania.  Her year of birth is 1996.**

39.     **Plaintiff JOHN DK39 DOE is an adult male individual, formerly and at present a citizen and resident of the Commonwealth of Pennsylvania.  His year of birth is 2002.**

40.     **Plaintiff JANE AW40 DOE is a minor female individual, formerly and at present a citizen and resident of the Commonwealth of Pennsylvania.  Her year of birth is 2012.**

41.     **Plaintiff JANE AW41 DOE is a minor female individual, formerly and at present a citizen and resident of the Commonwealth of Pennsylvania.  Her year of birth is 2014.**

42.     **Plaintiff JANE JR42 DOE is a minor female individual, formerly and at present a citizen and resident of the Commonwealth of Pennsylvania.  Her year of birth is 2007.**

43.     **Plaintiff JANE AM43 DOE is a minor female individual, formerly and at present a citizen and resident of the Commonwealth of Pennsylvania.  Her year of birth is 2009.**

44.     **Plaintiff JOHN JM44 DOE is a minor male individual, formerly and at present a citizen and resident of the Commonwealth of Pennsylvania.  His year of birth is 2011.**

45.     **Plaintiff JANE TL45 DOE is a minor female individual, formerly and at present a citizen and resident of the Commonwealth of Pennsylvania.  Her year of birth is 2013.**

46.     The identities of Plaintiffs in paragraphs 1 - ~~37~~ **45** […] are not disclosed in this Complaint.  As the victims of sex crimes that were perpetrated against them as minors, Plaintiffs […] are designated as such in order to protect their identities and prevent further unnecessary embarrassment.

47.     On July 22, 2019, The Honorable Norman A. Krumenacker, III, P.J., granted Plaintiffs' Motion to Proceed in Pseudonym for the previously filed and anticipated Amended Complaints in this matter.

48.     With this ~~Third~~ **Fourth** Amended Complaint, Plaintiffs will file ~~under seal, a~~ **two** charts**:** **one** that identifies each individual Plaintiff (and Guardian *ad litem*) by name and reference number, along with other identifying information (***see* Attachment A – Pseudonym Chart [FILED UNDER SEAL]), and one that delineates which Plaintiffs are suing which of**

the named Defendants (*see* **Attachment B – Plaintiff vs. Defendant Chart**)**,** for the intended benefit of the Defendants and the Court.

49.     Defendant LAUREL PEDIATRIC ASSOCIATES, INC. d/b/a Laurel Pediatric Associates ("Laurel Pediatric") is a Pennsylvania Corporation located at 323 Budfield Street, Johnstown, PA 15904.   Laurel Pediatric was and continues to be a for-profit medical organization, authorized to conduct business and conducting business in the Commonwealth of Pennsylvania with its principal place of business located in Johnstown, Pennsylvania.

50.     Defendant JOHNSTOWN PEDIATRIC ASSOCIATES, INC., d/b/a Johnstown Pediatric Associates ("Johnstown"), is a Pennsylvania Corporation owned and operated by Defendant BARTO, AND HIS PARTNER Joseph F. Sheridan, M.D., with a formation date of 1977, and a former business address of 110 Main Street, Johnstown, PA 15901.  Johnstown now has a registered agent address of 209 West Sea Spray Rd., Ocean City New Jersey 08226.

51.     **Defendant CONEMAUGH VALLEY MEMORIAL HOSPITAL d/b/a MEMORIAL MEDICAL CENTER ("Conemaugh") is a private health care organization, established and operated by the Commonwealth of Pennsylvania with its principal place of business in Johnstown, Pennsylvania.  Conemaugh conducts business in Cambria County, including in Johnstown.  Conemaugh is sued in Johnstown based on its contact with Cambria County and because one or more acts of sexual abuse occurred in Cambria County.**

52.     Defendant DLP CONEMAUGH MEMORIAL MEDICAL CENTER, LLC d/b/a Conemaugh Health System and Conemaugh Memorial Medical Center (~~collectively referred to herein as~~ "DLP Conemaugh") is a private health care organization, established and operated by the Commonwealth of Pennsylvania with its principal place of business in Johnstown,

Pennsylvania. **DLP** Conemaugh conducts business in Cambria County, including in Johnstown. **DLP** Conemaugh is sued in Johnstown based on its contact with Cambria County and because one or more acts of sexual abuse occurred in Cambria County.

53.     Defendant DLP Healthcare, LLC d/b/a Duke LifePoint Healthcare (~~herein~~ "DLP **Healthcare**") is a joint venture of Duke University Health System, and LifePoint Health, a healthcare company with a registered agent at The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801. Defendant Duke purchased the Non-Profit Conemaugh Heath System in 2014, ultimately resulting in the entity Defendant herein referred to as "DLP." **Thus, DLP Conemaugh and DLP Healthcare are collectively referred to herein as "DLP."**

54.     Defendant JOHNNIE W. BARTO, M.D. ("Barto") is an adult male citizen and resident of the Commonwealth of Pennsylvania. He is currently incarcerated and under the supervision of the Pennsylvania Department of Corrections, residing at SCI Waymart. Barto is sued in Cambria County, based on tortious acts he committed against the Plaintiffs in Johnstown, Cambria County, Pennsylvania.

55.     At all times relevant alleged herein, Defendant Barto was acting in the course and scope of his employment with Defendants Laurel Pediatric, Johnstown, Conemaugh, and DLP, and as an agent, apparent agent, servant and/or employee, as were all other staff members as enumerated *infra*.

56.     At all times relevant Defendants Laurel, Johnstown, Conemaugh, ~~Conemaugh,~~ and DLP were under a duty to investigate reported incidents of inappropriate touching and other abusive behavior by Barto, and failed in every respect to meaningfully investigate, and protect their patients in accordance with their separate and distinct non-delegable duties as alleged *infra*.

STATEMENT OF FACTS

57.      Barto received his medical license in 1974.  Barto thereafter obtained employment as a physician at Johnstown ~~Pediatric~~, Laurel Pediatric, Conemaugh, and DLP, practicing primarily as a pediatrician.

58.      On information and belief, primarily based on the criminal investigation and the first-hand accounts of Plaintiffs and/or their parents arising out of these events, and associated investigation by undersigned counsel, Barto admitted to the Pennsylvania's State Sexual Offender Board to abusing his first patient-victim when Barto was twenty-six (26) years old at or about the same time he received his medical license.  There was not a single time at which Barto worked for any of the named Defendants as a licensed Physician between 1974 and 2018, when he was *not* abusing his minor patients.

59.      While many patients and their parents raised alarms about Barto's treatment and abuse of his minor patients, nothing was done by any of the named Defendants to protect these children from Barto despite *inter alia*, repeated police contact, repeated similar complaints by patients in each decade of his long medical career, and despite gaining access to, and abusing these minor patients at the time and place designated for his work as a pediatrician.

60.      Simply put, Barto used his position as a pediatrician to abuse and molest his minor patients under the pretense and in conjunction with *actual* medical treatment.  A confluence of factors that make it all the more incredible and outrageous that the other physicians, staff, nurses, etc., of the named Defendants did not stop Barto's abuse of, and access to, these same minor patients for whom they shared responsibility.

61.      In March 2018, Barto was charged with multiple counts of aggravated indecent assault, indecent assault, corruption of minors, unlawful contact with a minor, and endangering

the welfare of children. One month later, subsequent charges were filed against him. These charges stemmed from Barto having inappropriately touched a young relative on numerous occasions.

62. In July 2018, the Attorney General brought sixty-nine additional charges against Barto after detailed reports from twenty-nine victims documented abuse dating back to the early 1990s—abuse that occurred at Barto's Richland Township office of Laurel Pediatric, DLP Conemaugh Memorial Medical Center (organized under DLP Conemaugh Health), and the Laurel Pediatric location in Somerset County.

63. Barto entered no-contest pleas to those charges, which included sixty-six allegations, including the aforementioned charges of aggravated indecent assault, indecent assault, and endangering the welfare of children.

64. On January 22, 2018, Barto's medical license was suspended, and his bond was revoked in May 2018. On March 18, 2019, Barto received a criminal sentence of 79 to 158 years in state prison. He now resides at SCI Waymart, under the supervision of the Pennsylvania Department of Corrections.

65. At all times relevant hereto, Barto was acting in the course and scope of his employment with Defendants Laurel Pediatric, Johnstown and/or Conemaugh and/or DLP as their agent, apparent agent, servant and/or employee and representing himself as a licensed physician to the public at large, the Johnstown community, and Plaintiffs in particular.

66. Barto came into contact with Plaintiffs via his role as a pediatrician at Laurel Pediatric. In this role, Plaintiffs and their parents placed great trust and confidence in Barto.

67. As patients of Defendants, Plaintiffs were under Barto's direct supervision, control, and care, which created a special, confidential, and fiduciary relationship between

Plaintiffs and Barto. Because of such relationship, Barto owed Plaintiffs a heightened duty of care. Additionally, as the employers and supervisors of Barto, with knowledge that he was in contact with and providing medical care to minor patients, Defendants Laurel Pediatric, Johnstown, Conemaugh, and DLP were also in a special, confidential, and fiduciary relationship with Plaintiffs.

68.     The Complaints received, and as detailed herein stretch as far back as the early nineties for incidents occurring at Conemaugh's Lee Campus, as alleged specifically by plaintiff JANE SW7 DOE. These multiple reports, each standing alone provided sufficient 'red flags' that a duty to investigate and take protective action, including but not limited to reporting Barto to the authorities, was triggered. Defendants failed, collectively in this non-delegable and specific duty they each had relative to their association and endorsement of Barto to the community at large as a Doctor in good standing and of no danger to children.

69.     Barto's Medical License was suspended in March, 2000 pursuant to a decision of the Commonwealth of Pennsylvania's Bureau of Professional and Occupational Affairs following a full investigation and hearing. However, Barto's license was erroneously re-instated following an appeal to that same board, and he was once again granted unfettered access to children and his minor patients in May of 2000. Despite this reversal of the initial decision, Defendants Johnstown, Conemaugh and/or DLP, and Laurel Pediatrics, given the facts circumstances and allegations that led to the revocation of Barto's license in March, were actually aware of the serious nature of the allegations, and the testimony- sufficient to place those defendants on notice that Barto presented an unreasonably high risk of harm to his minor patients, and yet through silence, acquiescence, denial, and misrepresentation they failed to act in any way to protect Barto's minor patients, whom they knew were in serious danger.

70.     Defendants Laurel Pediatric, Johnstown, Conemaugh, and DLP knew or should have known that Barto had engaged in unlawful, sexually abusive conduct in the past, and/or was continuing to engage in such conduct.

71.     Defendants had a duty to disclose these known facts to Plaintiffs and others, but negligently and/or intentionally suppressed, concealed, and/or failed to do so.   Moreover, Defendants failed to take any reasonable steps to protect Plaintiffs when they knew or should have known that Barto had engaged in unlawful, sexually abusive conduct in the past, and/or was continuing to engage in such conduct.   The duty to disclose this information and protect Plaintiffs from the abuse that ensued, arose out of the special, trusting, confidential, fiduciary relationship between Defendants and Plaintiffs.

72.     The specific facts of the allegations against Defendants are as follows:

JANE BR1 DOE
**(vs. Defendants Barto, Johnstown, & Conemaugh)**

73.     Utilizing his position of trust, power, and control, Barto, while acting as her pediatrician, exploited JANE BR1 DOE.   This exploitation included, but is not limited to, Barto's sexual abuse of JANE BR1 DOE in approximately 2000 when she was 10 years old.

74.     From birth JANE BR1 DOE was a pediatric patient of Johnstown Pediatrics, but not specifically the patient of Barto.   The pediatrician they would see changed from visit to visit and they never actually had Barto as a physician until 2000 when JANE BR1 DOE was 10 years old.

75.     During a visit for a "sports physical," in 2000, JANE BR1 DOE was seen by Barto.   JANE BR1 DOE's mother stayed in the room throughout the visit.

76.     Despite being seen for a prepubescent physical exam, Barto immediately asked JANE BR1 DOE to unbutton her pants and lie down on the exam room table.

77.    JANE BR1 DOE's mother immediately questioned what Barto was doing and he replied erroneously that he had to "check her femoral pulses," a procedure for which there was no medical indication, and caused great embarrassment, and discomfort to both patient and to her mother who witnessed the exam.

78.    JANE BR1 DOE's mother remarked that no other physician had done that particular test before, and Barto replied, "well I guess it's a good thing you got me today."  He continued the abuse under the fraudulent exam, and did so the entire time without being gloved, or washing his hands.

79.    Following the visit, JANE BR1 DOE disclosed to her mother that the 'check of femoral pulses,' was actually Barto fondling the genitalia of JANE BR1 DOE, who told her mother that the experience was "really gross… He stuck his fingers inside my underwear."

80.    JANE BR1 DOE's mother was so distraught by the encounter that she wrote and later hand-delivered a letter to the District Attorney's office in the Ebensburg Courthouse (Cambria County Courthouse) describing the molestation of JANE BR1 DOE during the visit.

81.    No action was taken at that time and JANE BR1 DOE's mother was told that there was insufficient evidence to pursue her complaint against Barto.

82.    JANE BR1 DOE's parents thereafter refused to let her be seen by Barto and would specifically request that JANE BR1 DOE not see Barto when calling for an appointment. Despite this clear and obvious red flag to anyone who is charged with the scheduling duties for Johnstown Pediatric (later Laurel Pediatric) JANE BR1 DOE's mother reports that no one on the staff of either institution ever asked why JANE BR1 DOE did not want to ever see Barto, nor conduct any other type of follow up inquiry into the request to shield their child from Barto.

83.    As a result of the abuse by Barto, JANE BR1 DOE has suffered emotional

distress, including, but not limited to, trust issues, especially with male physicians and males in positions of authority.   JANE BR1 DOE also suffers from anxiety, shame and other psychological damage, which requires significant treatment.

84.   At all relevant times mentioned herein, JANE BR1 DOE was too young to have given any lawful consent to any sexual contact.  Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification, **in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for these failures the physical and emotional harm here alleged, would not have occurred.**  At the time of filing this Complaint, JANE BR1 DOE is under the age of 30.

<u>JANE JM2 DOE</u>
**(vs. Defendants Barto, Johnstown, & Conemaugh)**

85.   Utilizing his position of trust, power, and control, Barto, while acting as her pediatrician, exploited JANE JM2 DOE.  This exploitation included, but is not limited to, Barto's sexual abuse of JANE JM2 DOE in approximately 1996.

86.   JANE JM2 DOE's mother took JANE JM2 DOE, just six years old at the time, for a visit at Laurel Pediatrics, at the Conemaugh Health Systems location at 320 Main St., in Johnstown, Pennsylvania, as JANE JM2 DOE was in need of an examination and/or treatment for ear-related issues including ear wax build up and associated discomfort with her ears.

87.   JANE JM2 DOE had a regular pediatrician; however, that pediatrician was not available, and JANE JM2 DOE required an immediate appointment, due to her condition.  JANE JM2 DOE and her mother were therefore forced to see Barto.

88.   Barto seized this opportunity to molest JANE JM2 DOE, insisting that a full-body examination was the only way to assess her ear-related issue.  Barto used this visit as a pretext to

examine JANE JM2 DOE's breast-area and genitals for his own sexual gratification and in dereliction of his duty as her treating physician.

89.     Barto picked up JANE JM2 DOE and laid her on the examination table.  Without any warning to JANE JM2 DOE and without requesting her informed consent, Barto proceeded to lift up JANE JM2 DOE's shirt and placed his hand on JANE JM2 DOE's breast area.

90.     Without any warning to JANE JM2 DOE and without requesting her informed consent, Barto pulled the waistband on JANE JM2 DOE's pants out and lifted up JANE JM2 DOE's underwear, exposing JANE JM2 DOE's vaginal area to conduct a genital examination. Again, this genital examination was conducted, even though the health-related concerns for JANE JM2 DOE were limited to her ears.

91.     After completing the examination on the table, Barto placed JANE JM2 DOE on his lap while Barto engaged in conversation with JANE JM2 DOE's mother.  Barto positioned JANE JM2 DOE such that she was also facing JANE JM2 DOE's mother while Barto spoke with her mother.

92.     While speaking to JANE JM2 DOE's mother, Barto put his bare hand on the bare lower back of JANE JM2 DOE and began rubbing his hand in circles, caressing JANE JM2 DOE's skin at her lower back and upper buttocks area.  JANE JM2 DOE was positioned such that Barto could molest JANE JM2 DOE and caress JANE JM2 DOE's back and upper buttocks area without JANE JM2 DOE's mother seeing that abuse.

93.     This abuse and harassment carried on for approximately 10 minutes while Barto was engaged in conversation with JANE JM2 DOE about Barto's "treatment" of JANE JM2 DOE.

94.     As a result of the abuse by Barto, JANE JM2 DOE has suffered emotional distress, including, but not limited to, trust issues, especially with male physicians and males in positions of authority.   JANE JM2 DOE also suffers from anxiety, shame and other psychological damage, which requires significant treatment.

95.     At all relevant times mentioned herein, JANE JM2 DOE was too young to have given any lawful consent to any sexual contact.  Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification, **in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for these failures the physical and emotional harm here alleged, would not have occurred.**  At the time of filing this Complaint, JANE JM2 DOE is under the age of 30.

JANE KW3 DOE
**(vs. Defendants Barto, Laurel, & Conemaugh)**

96.     JANE KW3 DOE and her parents placed great trust in Barto as a practicing physician.   Utilizing his position of trust, power and control, Barto, while acting as her pediatrician, exploited JANE KW3 DOE, including sexually abusing her in or around 2007.

97.     In or around 2007, JANE KW3 DOE's mother took her for a visit at Laurel Pediatric to see Barto when JANE KW3 DOE was sixteen years old.  During this visit, Barto sexually abused JANE KW3 DOE under the auspices of a routine check-up at the Budfield St. location.

98.     JANE KW3 DOE's mother had accompanied her younger child, JANE KW3 DOE's brother, to his check-up in another examination room.  With JANE KW3 DOE alone in the examination room, Barto told JANE KW3 DOE to lie on the examination table.  Without her mother present, Barto seized this opportunity to molest JANE KW3 DOE.

99.     Without any warning to JANE KW3 DOE and without requesting her informed consent, Barto lifted up JANE KW3 DOE's shirt to expose her breasts and began to palpitate and massage her breasts as a pretext for a "breast examination." This molestation of JANE KW3 DOE and her breasts lasted for approximately two minutes. JANE KW3 DOE was frozen in shock and fear the entire time. She could not bring herself to even speak. JANE KW3 DOE was only sixteen years old at the time, and there was no medical necessity or benefit for such an examination. The fraudulent examination was done for the sexual gratification of Barto.

100.    Immediately following the fraudulent breast exam, without any warning to JANE KW3 DOE and without requesting her informed consent, Barto conducted a genital examination of JANE KW3 DOE, by pulling her waistband on her pants out and downward to expose her pubic hair and vaginal area. JANE KW3 DOE does not recall how long this genital "check" lasted, but she remained frozen and in shock while Barto gazed at her genitals. Once again, there was no medical necessity or benefit for this fraudulent examination and, as with the fraudulent breast examination, this too was done for the sexual gratification of Barto.

101.    Following her abuse by Barto, JANE KW3 DOE was traumatized, breaking down into tears as soon as she got into the car with her mother following the appointment. JANE KW3 DOE felt humiliated, ashamed, and disgusted. She informed her parents about this molestation and mistreatment by Barto and further expressed her extreme distress.

102.    Shortly after JANE KW3 DOE informed her parents of the harassment and molestation, her parents complained about Barto's abuse of JANE KW3 DOE to various personnel at Laurel Pediatric, including another Laurel Pediatric physician, Dr. Lambert. They also demanded a meeting with the clinic's administration to discuss these complaints.

103.    During that meeting, with Barto present, the office manager and Bradley S. Callihan, the nurse practitioner, disregarded or otherwise ignored the complaints made by JANE KW3 DOE's parents, claiming that Barto's behavior merely showed that Barto was "thorough" and that her parents "would be singing [Barto's] praises if he had discovered a [breast] lump."

104.    At the time of the abuse and harassment by Barto, JANE KW3 DOE was too young to have given any lawful consent to any sexual contact with him.  Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification**, in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for these failures the physical and emotional harm here alleged, would not have occurred.**

105.    At the time of filing this Complaint, JANE KW3 DOE is under the age of 30.

106.    As a result of the abuse by Barto, JANE KW3 DOE has suffered extreme emotional distress, including, but not limited to, humiliation, embarrassment, shame, and discomfort.  She has also suffered from a lack of trust in others, particularly men and those in positions of authority.  JANE KW3 DOE has also suffered in that she has intimacy issues, which have affected her interpersonal relationships and intimate relationships.   This psychological injury is permanent in nature and requires significant treatment.

JANE AF4 DOE
**(vs. Defendants Barto, Johnstown, & Conemaugh)**

107.    Utilizing his position of trust, power, and control, Barto, while acting as her pediatrician, exploited JANE AF4 DOE.  This exploitation included, but is not limited to, Barto's sexual abuse of JANE AF4 DOE in or around October 1991.

20

108.   JANE AF4 DOE was born on June 23, 1991.  When JANE AF4 DOE was approximately 4 months old, JANE AF4 DOE's mother took her for a wellness visit at Johnstown Pediatrics on 110 Main Street in Johnstown, Pennsylvania.

109.   JANE AF4 DOE received an examination by Barto.  Barto proceeded to conduct a full physical examination of JANE AF4 DOE.  While Barto examined JANE AF4 DOE's body, he affirmed that JANE AF4 DOE was healthy, positively noting there were no concerns about her weight, height, or reflexes.  Although the examination room was small, Barto soon thereafter repositioned his body between JANE AF4 DOE's mother and JANE AF4 DOE.  Leaving only a few feet between Barto and JANE AF4 DOE's mother, Barto angled himself with his back to JANE AF4 DOE's mother, attempting to obstruct her view of the examination.

110.   JANE AF4 DOE's mother peered around Barto to see that he had unlatched JANE AF4 DOE's diaper.  Barto then spent an inordinate amount of time examining JANE AF4 DOE's genital region, which JANE AF4 DOE's mother felt was exceedingly disturbing.

111.   Barto noted that JANE AF4 DOE had "labial adhesions." Although JANE AF DOE's mother did not know why a four-month-old would have labial adhesions, and felt uncomfortable and unsettled about Barto's diagnosis, JANE AF4 DOE's mother nonetheless felt that Barto, as the medical professional, could be trusted.

112.   JANE AF4 DOE and her mother left the appointment, receiving neither medication nor treatment advice from Barto, for his erroneous diagnosis of labial adhesions.

113.   JANE AF4 DOE never had another pediatrician conduct the same type of lengthy genital examination that Barto conducted on JANE AF4 DOE, nor did other pediatricians note a similar "condition" to that allegedly identified by Barto.

114.    As a result of the abuse by Barto, JANE AF4 DOE, has suffered emotional distress, including, but not limited to embarrassment, shame, feelings of violation, and other psychological damages.

115.    At all relevant times stated herein, JANE AF4 DOE was too young to give lawful consent to any sexual contact.  Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification, **in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for these failures the physical and emotional harm here alleged, would not have occurred.**    At the time of this Complaint's filing, JANE AF4 DOE is under the age of 30.

## JANE SN5 DOE
### (vs. Defendants Barto, Johnstown, & Conemaugh)

116.    Utilizing his position of trust, power, and control, Barto, while acting as her pediatrician, exploited JANE SN5 DOE.  This exploitation included, but is not limited to, Barto's sexual abuse of JANE SN5 DOE in or around July of 1999.

117.    JANE SN5 DOE saw Barto as a patient on July 9, 1999 for a sore throat and an earache when she was seven years old.

118.    After checking her ears, nose, and throat, Barto stated that he 'needed to check her pulse.'  Presumably once again, Barto was referring to the femoral pulse that he used as a ruse to molest Jane BR Doe *supra*.

119.    Barto then held a single finger to his mouth in a "shushing," motion and proceeded to reach inside JANE SN5 DOE's pants, and then her underwear, ultimately digitally penetrating her vagina.

120.   As a result of the abuse by Barto, JANE SN5 DOE, has suffered emotional distress, including, but not limited to embarrassment, shame, feelings of violation, and other psychological damages including diagnosed PTSD, anxiety, and depression for which she is under psychiatric care presently.

121.   At all relevant times stated herein, JANE SN5 DOE was too young to give lawful consent to any sexual contact.  Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification, **in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for these failures the physical and emotional harm here alleged, would not have occurred.**  At the time of this Complaint's filing, JANE SN5 DOE is under the age of 30.

JANE NC6 DOE
**(vs. Defendants Barto, Laurel, & Conemaugh)**

122.   JANE NC6 DOE is the sister of JANE KK9 DOE.  As was the case with her sister, JANE NC6 DOE, along with her parents, had known and trusted Barto for the majority of her childhood.  Utilizing his position of trust, power, and control, Barto, as JANE NC6 DOE's pediatrician, exploited and groomed JANE NC6 DOE for years, including, but not limited to, making JANE NC6 DOE sit on his lap for extended periods of time during her routine visits with Barto.  While seated on Barto's lap, Barto would inappropriately hug JANE NC6 DOE, holding her tight with his body pressed closely against hers at the 110 Main Street location.

123.   In or around 2006, JANE NC6 DOE, who was approximately thirteen years old at the time, sustained sexual abuse at the hands of Barto during an annual "well visit," at the Budfield St. location.

124.    On that visit, JANE NC6 DOE recalls having felt incredibly uncomfortable and uneasy when Barto indicated that he needed to perform a genital examination on her. Immediately following JANE KK9 DOE's invasive, abusive inspection (as discussed *infra*), Barto, still gloveless and not having washed his hands between patients' genital examinations, solicited JANE NC6 DOE to climb on his examination table.  Barto instructed JANE NC6 DOE to remove her pants and underwear.

125.    Without any warning to JANE NC6 DOE and without requesting her informed consent, JANE NC6 DOE recalls Barto caressing up and between her inner thighs.  During Barto's fraudulent examination of JANE NC6 DOE's genitals, Barto remarked that she was "about to get [her] period."  JANE NC6 DOE recalls asking her mother whether the genital exam was really necessary, as no pediatrician had ever conducted either a vaginal or breast exam on JANE NC6 DOE either prior to, or following, this visit with Barto.  JANE NC6 DOE and her mother placed their complete trust in Barto and were led to believe that such a genital exam was necessary.

126.    JANE NC6 DOE has sustained permanent emotional distress and scarring as a result of the abuse and harassment she suffered at the hands of Barto.  This psychological injury is permanent in nature and requires significant treatment.

127.    At all relevant times mentioned herein, JANE NC6 DOE was too young to have given any lawful consent to any sexual contact.  Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification**, in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff;**

**and but-for these failures the physical and emotional harm here alleged, would not have occurred.**  At the time of filing this Complaint, JANE NC6 DOE is under the age of 30.

<u>JANE SW7 DOE</u>
**(vs. Defendants Barto, Johnstown, & Conemaugh)**

128.    JANE SW7 DOE and her parents placed great trust in Barto as a practicing physician.   Utilizing his position of trust, power, and control, Barto, while acting as her pediatrician, exploited JANE SW7 DOE.   This exploitation included, but is not limited to, Barto's sexual abuse of JANE SW7 DOE in 1993, when he was just an infant.

129.    In 1993, JANE SW7 DOE's mother took JANE SW7 DOE to the Conemaugh Health Center's Lee Campus on 320 Main Street in Johnstown, Pennsylvania for an infant check-up for JANE SW7 DOE.   During this visit, Barto sexually abused JANE SW7 DOE under the auspices of a routine check-up.

130.    During the examination, Barto placed JANE SW7 DOE on the examination table. Without any warning to JANE SW7 DOE's mother and without requesting informed consent, Barto then proceeded to spread JANE SW7 DOE's vaginal labia apart with his ungloved hands.

131.    Barto had initially positioned himself standing such that his body was blocking the view of JANE SW7 DOE's mother.  JANE SW7 DOE's mother stood up and moved around to the side of Barto to give herself a view of the physical examination that was being conducted of JANE SW7 DOE.

132.    As JANE SW7 DOE's mother moved around to get a view of the examination, she witnessed the vaginal check being conducted of JANE SW7 DOE by Barto, including Barto spreading JANE SW7 DOE's labia.   When JANE SW7 DOE asked Barto why that was necessary, Barto replied that he had to make sure that it does not grow shut.

133.    Just months later, JANE SW7 DOE's mother brought JANE SW7 DOE back to the same facility for a further infant wellness check, conducted by another pediatrician whose identity is unknown at the time of filing.

134.    During that check-up, the other pediatrician did not conduct a genital check of JANE SW7 DOE.  JANE SW7 DOE's mother inquired as to whether such a check should be conducted, explaining what Barto had done at the last check, and repeating Barto's concerns about the labia growing shut.

135.    This other pediatrician confirmed that there was no medically indicated reason for such an exam, and that a genital check was unnecessary.  JANE SW7 DOE's mother then reported Barto's abusive and inappropriate conduct with JANE SW7 DOE.

136.    Notwithstanding this report by JANE SW7 DOE's mother, nothing was done to investigate and prevent further abuse by Barto, as he remained a pediatrician under the auspices of Conemaugh, and Johnstown simultaneously who both failed to recognize report, or protect the abusive conduct that went essentially unchecked for decades.

137.    As a result of the abuse by Barto, JANE SW7 DOE has suffered emotional distress, including, but not limited to, embarrassment, anxiety, shame and other psychological damage, which requires significant treatment.

138.    At all relevant times mentioned herein, JANE SW7 DOE was too young to have given any lawful consent to any sexual contact.  Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification, **in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff;**

**and but-for these failures the physical and emotional harm here alleged, would not have occurred.** At the time of filing this Complaint, JANE SW7 DOE is under the age of 30.

JOHN GL8 DOE
**(vs. Defendants Barto, Johnstown, & Conemaugh)**

139. Utilizing his position of trust, power, and control, Barto, while acting as his pediatrician, exploited JOHN GL8 DOE. This exploitation included, but is not limited to, Barto's sexual abuse of JOHN GL8 DOE in or around mid to late-1992.

140. JOHN GL8 DOE was born on May 20, 1992. When JOHN GL8 DOE was approximately 2 to 6 months old, in or around mid to late-1992, JOHN GL8 DOE's mother made a routine checkup appointment for her son at Johnstown Pediatrics.

141. JOHN GL8 DOE arrived at the appointment with his mother. A nurse initially saw JOHN GL8 DOE, but she left the examination room prior to Barto's arrival, leaving Barto without any other professional in the room.

142. During the examination, Barto started by laying JOHN GL8 DOE on the examination table and commencing a wellness examination that initially appeared normal to JOHN GL8 DOE's mother. However, as Barto examined down JOHN GL8 DOE's body, he removed JOHN GL8 DOE's diaper and began fondling his penis. While holding JOHN GL8 DOE's penis, Barto commented that it looked as though JOHN GL8 DOE had "penile adhesions." JOHN GL8 DOE's mother did not notice anything unusual about her son's penis.

143. Barto began rubbing up and down JOHN GL8 DOE's penis, admonishing JOHN GL8 DOE's mother that "you need to keep doing this" and to "make sure you do this at home." Barto further encouraged her to massage her son's penis in the bathtub and informed her that she "should put Vaseline on there," while continuing to demonstrate the prescribed motions on

JOHN GL8 DOE's penis. JOHN GL8 DOE's mother immediately did not feel comfortable with the type of examination being conducted on her son.

144.    At the time, JOHN GL8 DOE's mother also felt unsure whether the diagnosis or prescription were normal, but, as a new mother, she felt she lacked the foundation to doubt a professional physician and pediatrician.

145.    As a result of the abuse by Barto, JOHN GL8 DOE, has suffered emotional distress, including, but not limited to feeling violated, embarrassment, shame, guilt, nausea, and other psychological damages.

146.    At all relevant times stated herein, JOHN GL8 DOE was too young to give lawful consent to any sexual contact. Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification, **in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for these failures the physical and emotional harm here alleged, would not have occurred.** At the time of this Complaint's filing, JOHN GL8 DOE is under the age of 30.

### JANE KK9 DOE
**(vs. Defendants Barto, Johnstown, Laurel, & Conemaugh)**

147.    Utilizing his position of trust, power, and control, Barto, as JANE KK9 DOE's pediatrician, exploited JANE KK9 DOE for years, including, but not limited to, making her sit on his lap for extended periods of time during her routine visits with Barto. While JANE KK9 DOE was seated on Barto's lap, Barto would hug her, holding her tight with his body pressed closely against hers at the Johnstown Pediatrics, 110 Main Street location, in an effort to groom her for future sexual abuse.

148.    In or around 2006, when JANE KK9 DOE was approximately twelve years old, Barto escalated his exploitation and abuse of JANE KK9 DOE, sexually abusing her during the course of a doctor's visit, with JANE KK9 DOE's mother and sister present in the examination room at the Laurel Pediatrics Budfield St. location.

149.    During this visit, Barto sexually abused JANE KK9 DOE under the auspices of an annual check-up.  With JANE KK9 DOE's sister, JANE NC6 DOE, still in the room, Barto told JANE KK9 DOE to sit on the examination table, where Barto then pulled down JANE KK9 DOE's pants and underwear to her ankles.

150.    Without a glove, without any warning to JANE KK9 DOE, and without requesting her informed consent, Barto spread JANE KK9 DOE labia, massaging and caressing her vaginal area for approximately 20 seconds.  Barto then lifted JANE KK9 DOE's shirt to expose her chest, claiming to be checking her "breast bud development."  Barto gripped each side of JANE KK9 DOE's chest, running his fingers along her areolas.

151.    JANE KK9 DOE recalls feeling deeply uncomfortable and scared during this entire process.  JANE KK9 DOE began dressing herself when Barto pulled her onto his lap.  As he had done numerous times before, Barto again inappropriately sat JANE KK9 DOE on his lap, holding her closely while discussing his assessment with her mother.

152.    JANE KK9 DOE was severely disturbed and distraught as a result of the sexual abuse by Barto, including suffering from severe anxiety, particularly separation anxiety from her mother.  She has suffered permanent emotional distress and scarring as a result of the repeated sexual abuse by Barto.  This psychological injury is permanent in nature and requires significant treatment.

153.   At all relevant times mentioned herein, JANE KK9 DOE was too young to have given any lawful consent to any sexual contact.  Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification**, in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for these failures the physical and emotional harm here alleged, would not have occurred.**  At the time of filing this Complaint, JANE KK9 DOE is under the age of 30.

JANE DD10 DOE
**(vs. Defendants Barto, Johnstown, Laurel, & Conemaugh)**

154.   Utilizing his position of trust, power, and control, Barto, while acting as her pediatrician, exploited JANE DD10 DOE.  This exploitation included, but is not limited to, Barto's sexual abuse of JANE DD10 DOE numerous times during both well and sick visits from approximately 1997 – 2004.

155.   During this timeframe JANE DD10 DOE was examined by both Barto and Dr. Lambert, an associate of Barto's however only Barto ever mentioned an erroneous 'problem' with JANE DD10 DOE'S labia.

156.   JANE DD10 DOE's grandmother would accompany her to visits both sick and well visits, and each time that she saw Barto, JANE DD10 DOE's grandmother recalls that regardless of the reason for the visit, Barto always conducted a full body exam, including examination of JANE DD10 DOE's labia.

157.   JANE DD10 DOE was examined on the basis of having a 'abnormal' labia that Barto called 'underdeveloped' upon repeated examination.

158.    Barto would tell JANE DD10 DOE's grandmother that JANE DD10 DOE's 'vagina doesn't look right,' and would fondle JANE DD10 DOE's genitalia under this pretense, without gloves, and once even smelling his finger when he was done.

159.    JANE DD10 DOE has never, nor did she ever, have any diagnosed medical issue with her genitalia, and the examinations of her labia were in fact sexual molestations.

160.    JANE DD10 DOE's grandmother also recalls that Barto would hold JANE DD10 DOE in his lap for an extended period of time while she was naked.  While doing this he would often find reasons to extend the encounter beyond the normal scope of the visit to maximize his time in the grooming and molestation of JANE DD10 DOE.

161.    As a result of the abuse by Barto, JANE DD10 DOE has suffered emotional distress, including, but not limited to feeling violated, nightmares, embarrassment, shame, guilt, nausea, and other psychological damages.

162.    At all relevant times stated herein, JANE DD10 DOE was too young to give lawful consent to any sexual contact.  Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification, **in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for these failures the physical and emotional harm here alleged, would not have occurred.**  At the time of this Complaint's filing, JANE DD10 DOE is under the age of 30.

<u>JANE TS11 DOE</u>
**(vs. Defendants Barto, Johnstown, Laurel, & Conemaugh)**

163.    Utilizing his position of trust, power, and control, Barto, while acting as her pediatrician, exploited JANE TS11 DOE.  This exploitation included, but is not limited to, Barto's sexual abuse of JANE TS11 DONE in or around 2000 or 2001.

164.    JANE TS11 DOE is the sister of Jane BR1 Doe (*supra* paragraphs ~~64-75~~ **73-84**).

165.    As a result of her sister, Jane BR1 Doe's experience being molested by Barto, JANE TS11 DOE's mother continued her practice of demanding that her child not be seen by Barto when she would make appointments for her daughter JANE TS11 DOE.

166.    Upon noticing that her daughter JANE TS11 DOE was likely suffering from an earache she called and made an appointment for JANE TS11 DOE to be seen that same day and again demanded that Barto not be the treating physician.

167.    Once they arrived however, Barto was the only available physician and JANE TS11 DOE's mother ultimately consented to her being seen by Barto for diagnosis and treatment of an earache.

168.    After diagnosing the earache, Barto, using his position of trust and authority, continued to do a full body exam on JANE TS11 DOE despite JANE TS11 DOE's mother's protestations.

169.    JANE TS11 DOE's mother asked Barto why he needed to do a vaginal exam on an infant who only was complaining of an earache.  Barto replied that he "was the doctor," and that it was his job to make sure JANE TS11 DOE received a "thorough exam."

170.    Throughout this office visit and examination, Barto never wore gloves and never washed his hands despite doing a vaginal exam on an infant.

171.    As a result of the abuse by Barto JANE TS11 DOE has suffered emotional distress, including, but not limited to embarrassment, shock, shame, guilt, trust issues, and other psychological damages.

172.    At all relevant times stated herein, JANE TS11 DOE was too young to give lawful consent to any sexual contact.  Barto's abuse was, in fact, illegal, unwarranted, and done

for his sexual gratification, **in conjunction with his, and the other named Defendants'** **simultaneous and repeated failures to exercise specialized medical judgment, adhere to the** **standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for** **these failures the physical and emotional harm here alleged, would not have occurred.** At the time of this Complaint's filing, JANE TS11 DOE is under the age of 30.

<u>JANE JD12 DOE</u>
**(vs. Defendants Barto, Laurel, & Conemaugh)**

173.   Utilizing his position of trust, power, and control, Barto, while acting as her pediatrician, exploited JANE JD12 DOE.  This exploitation included, but is not limited to, Barto's sexual abuse of JANE JD12 DOE in or around January 2012 and in or around August 2012.

174.   JANE JD12 DOE's became a patient at Laurel Pediatric Associates on 323 Budfield Street, in Johnstown, Pennsylvania, in or around January 2011.  There, JANE JD12 DOE was diagnosed by a physician's assistant with a seizure disorder and treated for epilepsy.

175.   In or around January 2012, Barto first began seizing this opportunity to molest JANE JD12 DOE, acting as though, under the auspices of thoroughness, a full-body examination was the only way to assess her well-being and treat JANE JD12 DOE's epileptic symptoms. Under further guise of evaluating JANE JD12 DOE for "tension headaches," Barto used this visit as a pretext to examine JANE JD12 DOE's genitals and breast-area for his own sexual gratification and in dereliction of his duty as her treating physician.

176.   Barto laid JANE JD12 DOE flat on the examination table. Barto angled himself between JANE JD12 DOE and her mother, obstructing her view of the examination. Starting with the top of JANE JD12 DOE's head, Barto worked his way down JANE JD12 DOE's body, spouting medical information to the assistant in the room as he examined her.  During his

examination, without any warning to JANE JD12 DOE and without requesting her informed consent, Barto proceeded to pull down JANE JD12 DOE's pants and underwear, exposing JANE JD12 DOE's vaginal area to conduct a genital examination. Barto spread JANE JD12 DOE's legs and began spreading her labia, without gloves. Barto lingered around JANE JD12 DOE's genitalia for two to three minutes, commenting on the shade of pink inside of her vagina and remarking that she had begun to develop pubic hair. Due to the obstructed view, JANE JD12 DOE's mother needed to look around Barto to see what he was doing to her daughter. Barto then inserted his bare hand beneath JANE JD12 DOE's shirt, massaging her breasts and commenting about her developing breast buds. After completing JANE JD12 DOE's examination, Barto pulled up JANE JD12 DOE's underwear and allowed her to climb off the examination table. JANE JD12 DOE left the appointment feeling distressed.

177.    Several months later, in or around August 2012, JANE JD12 DOE returned to Barto for a check-up relating to JANE JD12 DOE's seizure medication. Only ten years old at the time, JANE JD12 DOE dreaded visiting Barto again, feeling very fearful and anxious about the invasive examination that she thought was standard medical practice and necessary for her epileptic condition. Yet again, under the auspices of thoroughness, Barto conducted a full physical examination with both parents in the room. Yet again, without any warning to JANE JD12 DOE and without requesting her informed consent, Barto proceeded to pull down JANE JD12 DOE's pants and underwear, exposing JANE JD12 DOE's vaginal area to conduct a genital examination. Barto pulled apart JANE JD12 DOE's legs and began spreading her labia, without gloves, and commenting on her development. Barto once again groped JANE JD12 DOE's breasts beneath her shirt, before pulling up her underwear and pants and letting her descend from the examination table.

178.    Following the appointment, JANE JD12 DOE's mother could see that her daughter was visibly uncomfortable and embarrassed.  She refused to allow JANE JD12 DOE to visit Barto again, much to JANE JD12 DOE's relief and gratitude.  JANE JD12 DOE's parents contemplated contacting law enforcement about the invasive, unnecessary examination of their daughter's genitals in relation to JANE JD12 DOE's seizures and related medications, but their extended family members talked them out of it on the basis that Barto was "just thorough."

179.    Following Barto's arrest in or around early 2018, JANE JD12 DOE was interviewed by law enforcement, although she did not provide a Victim Impact Statement.

180.    As a result of the abuse by Barto, JANE JD12 DOE has suffered emotional distress, including, but not limited to, trust issues, especially with male physicians and doctors in general, even withholding medical symptoms from her family to avoid visiting a physician. JANE JD12 DOE also suffers from anxiety, depression, embarrassment, shame, and other psychological damage, which requires significant treatment.  She is currently attending therapy and, for at least a year, has been prescribed daily doses of Buspar, Lexipro, and Lamictal.  She has also experienced nightmares, including but not limited to Barto escaping custody and continuing his sexual abuse.

181.    At all relevant times mentioned herein, JANE JD12 DOE was too young to give lawful consent to any sexual contact.  Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification, **in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for these failures the physical and emotional harm here alleged, would not have occurred.**  At the time of filing this Complaint, JANE JD12 DOE is under the age of 30.

JOHN GM13 DOE
**(vs. Defendants Barto, Laurel, & Conemaugh)**

182.    Utilizing his position of trust, power, and control, Barto, while acting as his pediatrician, exploited JOHN GM13 DOE.  This exploitation included, but is not limited to, Barto's sexual abuse of JOHN GM13 DOE in or around February 2004.

183.    JOHN GM13 DOE was born on February 4, 2004, at Conemaugh Hospital, located on 320 Main Street, in Johnstown, Pennsylvania.   When JOHN GM13 DOE was approximately 1 week old, in or around February 2004, JOHN GM13 DOE's mother made a check-up appointment for her son at Laurel.

184.    In or around February 2004, JOHN GM13 DOE arrived at the appointment with his mother.  Barto began a full-body examination, starting with JOHN GM13 DOE's nose and ears.

185.    As Barto examined his way down JOHN GM13 DOE's body, Barto began repositioning his body to put himself between JOHN GM13 DOE's mother and JOHN GM13 DOE.  Barto angled himself with his back to JOHN GM13 DOE's mother, attempting to obstruct her view of the examination. Peering around Barto's body, JOHN GM13 DOE's mother saw Barto fondling JOHN GM13 DOE's penis, examining JOHN GM13 DOE's genitals for several minutes.

186.    Immediately, JOHN GM13 DOE's mother felt uncomfortable with Barto's behavior during the examination of her son.

187.    After Barto finished the examination, JOHN GM13 DOE's mother informed a member of the staff that they felt there was something 'wrong' with their son's examination, and that they did not wish to see Barto again.  They went on to say that they wanted a female

physician for their son, going forward. The staff member replied, "That's no problem," asking no follow-up questions despite the alarming nature of the disclosure.

188.    Throughout childhood and adolescence, JOHN GM13 DOE's mother felt compelled, in the wake of JOHN GM13 DOE's examination by Barto, to warn JOHN GM13 DOE that it was almost never appropriate for adults, including and especially men, to touch private areas on his body. During a routine check-up from a male health care provider during his adolescence, JOHN GM13 DOE felt incredibly anxious to be physically examined by a man, a feeling of distrust that continues to this day.

189.    As a result of the abuse by Barto, JOHN GM13 DOE has suffered emotional distress, including, but not limited to embarrassment, shock, shame, guilt, trust issues, and other psychological damages.   Resultantly, JOHN GM13 DOE has begun attending counseling to address these injuries.

190.    At all relevant times stated herein, JOHN GM13 DOE was too young to give lawful consent to any sexual contact.   Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification, **in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for these failures the physical and emotional harm here alleged, would not have occurred.**   At the time of this Complaint's filing, JOHN GM13 DOE is under the age of 30.

JANE HP14 DOE<br>
<b>(vs. Defendants Barto, Laurel, Conemaugh, & DLP)</b>

191.    Utilizing his position of trust, power, and control, Barto, while acting as her pediatrician, exploited JANE HP14 DOE.  This exploitation included, but is not limited to,

Barto's sexual grooming and sexual abuse of JANE HP14 DOE from 2006 through approximately December of 2017.

192.     JANE HP14 DOE's mother took JANE HP14 DOE, from infant ages until approximately the age of twelve years old, for standard examinations and/or sick visits at Conemaugh and/or Laurel Pediatric locations, including, but not limited to, locations found at 323 Budfield St., Johnstown, PA 15904.  Barto was JANE HP14 DOE's regular pediatrician.  As such, these examinations and/or visits would occur approximately every three to six months.

193.     During each of these examinations and/or sick visits, regardless of the age of JANE HP14 DOE, Barto would conduct an examination of JANE HP14 DOE's vaginal area, including spreading her labia apart with his fingers.  During each of these examinations and/or sick visits, regardless of the young age of JANE HP14 DOE, Barto would feel for breast tissue on JANE HP14 DOE's breasts.

194.     On certain occasions when Barto was not available for the examinations and/or sick visits for JANE HP14 DOE, JANE HP14 DOE would be seen by Dr. Elaine Confer whom was also affiliated with Conemaugh and Laurel Pediatrics.  During at least one of these visits, JANE HP14 DOE's mother inquired with Dr. Confer as to whether a genital examination was necessary, similar to what Barto had conducted on JANE HP14 DOE for years.  Dr. Confer informed JANE HP14 DOE's mother that a genital examination was unnecessary unless there were issues that needed to be addressed.

195.     On one appointment, in or around December 2017, JANE HP14 DOE visited Barto for a routine medical wellness evaluation.  Per usual, Barto performed an extensive, invasive examination of JANE HP14 DOE's labia, vagina, and breast tissue.  A nurse, a doctor-in-training, and JANE HP14 DOE's mother were present in the room during the examination.

196.    Following the physical examination, the nurse exited the examination room, and the doctor-in-training engaged in conversation with JANE HP14 DOE's mother.  Barto remained in the room, seated at the computer, stating that he was waiting for a prescription to be filled.

197.    Previously, JANE HP14 DOE had expressed interest in one day becoming a physician. Using her aspiration as a pretext, Barto then invited JANE HP14 DOE to sit on his lap and "see how the scripts were sent." Situating JANE HP14 DOE on his knee, Barto held JANE HP14 DOE closely. He inserted his bare hand down her pants and began rubbing his fingers in circles on her vagina, while whispering into JANE HP14 DOE: "Are you ok?" JANE HP14 DOE, frozen in terror and confused, muttered an affirmative response.

198.    Soon thereafter, once JANE HP14 DOE and her mother had departed Laurel Pediatrics, JANE HP14 DOE informed her mother that she had something to tell her.  JANE HP14 DOE recounted that, while her mother was distracted by conversation with the doctor-in-training and Barto had her situated on his lap, Barto had inappropriately rubbed her vagina while she sat frozen with fear.

199.    JANE HP14 DOE's mother called Laurel Pediatrics, although it was now after formal business hours, and she spoke with an administrative staff member.  JANE HP14 DOE's mother explained what her daughter had informed her about Barto's inappropriate touching.  The staff member indicated that the office manager was not in the office at the time.  JANE HP14 DOE's mother then called her brother-in-law, a former law enforcement officer whose child was also a patient of Barto.

200.    Later that same evening, JANE HP14 DOE's mother received a phone call from Barto, himself.  JANE HP14 DOE's mother recalls Barto's demeanor as being even more strange than normal on that phone call.  He asked her, "Do you know why I'm calling?" JANE HP14

DOE's mother repeated what JANE HP14 DOE had told her about the sexual abuse. Barto informed her that "[JANE HP14 DOE] isn't lying" and repeatedly stated, "I just want to make it right for [JANE HP14 DOE]." Barto then told JANE HP14 DOE's mother that "[a] lot of people depend on me." Barto also said that he had received a call from her brother-in-law. Barto then inquired how he could "make it right" for JANE HP14 DOE, to which JANE HP14 DOE's mother said that he could not make things right.

201.    JANE HP14 DOE is informed and believes that, soon thereafter, the brother-in-law of JANE HP14 DOE's mother told Barto to turn himself in and also called the authorities to report suspected child abuse.

202.    Several days later, forensic examiners formally interviewed JANE HP14 DOE about her sexual abuse by Barto and Barto was criminally charged for his sexual assault of JANE HP14 DOE.

203.    As a result of the abuse by Barto, JANE HP14 DOE has suffered emotional distress, including, but not limited to, trust issues, anxiety, shame and other psychological damage, which requires significant treatment.

204.    At all relevant times herein, JANE HP14 DOE was too young to give any lawful consent to any sexual contact. Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification, **in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for these failures the physical and emotional harm here alleged, would not have occurred.** At the time of filing this Complaint, JANE HP14 DOE is under the age of 30.

<u>JANE ET15 DOE</u>
**(vs. Defendants Barto, Laurel, & DLP)**

205.    Utilizing his position of trust, power, and control, Barto, while acting as her pediatrician, exploited JANE ET15 DOE.  This exploitation included, but is not limited to, Barto's sexual abuse of JANE ET15 DOE in October 2016.

206.    JANE ET15 DOE's mother took JANE ET15 DOE, just eight years old at the time, for a follow-up visit at Laurel Pediatric's Budfield St. location after JANE ET15 DOE was seen in the emergency room to treat a laceration in her lung.  JANE ET15 DOE had been suffering excruciating pain and breathing difficulty due to the lung laceration.

207.    JANE ET15 DOE had a regular pediatrician at Laurel Pediatric, Dr. Elaine Confer.  However, Dr. Elaine Confer was not available, and JANE ET15 DOE required an immediate appointment, due to the severity of her injury.  JANE ET15 DOE and her mother were therefore forced to see Barto due to the emergency situation.

208.    Barto seized this opportunity to molest JANE ET15 DOE, insisting that a full-body examination was the only way to assess her breathing problem.  Barto used this visit as a pretext to examine JANE ET15 DOE's genitals for his own sexual gratification and in dereliction of his duty as her treating physician.

209.    Barto made JANE ET15 DOE pull down her pants and proceeded to touch her between her thighs and around her genital area.  Without any warning to JANE ET15 DOE and without requesting her informed consent, Barto massaged her inner thigh and genital area with his index and middle finger for roughly 30 seconds.  Barto then instructed JANE ET15 DOE to lift up her shirt, so he could perform an examination of her breasts.  Barto massaged JANE ET15 DOE's chest for another 30 seconds.

210.   Following the fraudulent examination, Barto made JANE ET15 DOE sit on his lap for an extended period of time while he spoke with her mother.  Barto had his arms wrapped tightly around JANE ET15 DOE during this time, inappropriately pressing his body against hers.

211.   Following JANE ET15 DOE's abuse by Barto, JANE ET15 DOE's mother complained to Laurel Pediatric and, specifically, asked to speak with JANE ET15 DOE's regular pediatrician, Dr. Elaine Confer.  After initially receiving no response, JANE ET15 DOE's mother made additional complaints and ultimately confronted Dr. Elaine Confer regarding Barto's October 2016 abuse and harassment of JANE ET15 DOE.

212.   Dr. Elaine Confer confirmed that she had been informed previously about Barto's inappropriate conduct with children.  She then assured JANE ET15 DOE's mother that they would speak with him again about his "odd bedside manner," but in effect did nothing to prevent ongoing and further acts of abuse by Barto against his minor patients.

213.   As a result of the abuse by Barto, JANE ET15 DOE has suffered emotional distress, including, but not limited to, embarrassment, shame, and permanent psychological damage, which requires significant treatment.

214.   At all relevant times mentioned herein, JANE ET15 DOE was too young to have given any lawful consent to any sexual contact.  Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification, **in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for these failures the physical and emotional harm here alleged, would not have occurred.**  At the time of filing this Complaint, JANE ET15 DOE is under the age of 30.

## JOHN PT16 DOE
**(vs. Defendants Barto, Laurel, & DLP)**

215.    JOHN PT16 DOE is JANE ET15 DOE's brother.  Utilizing his position of trust, power, and control, Barto, while acting as his pediatrician, exploited JOHN PT16 DOE.  This exploitation included, but is not limited to, Barto's sexual abuse of JOHN PT16 DOE in October 2016.

216.    JOHN PT16 DOE's mother took JOHN PT16 DOE, who was ten years old at the time, for a follow-up visit at Laurel Pediatric's Budfield St. location after his sister, JANE ET15 DOE, was seen in the emergency room for a lung laceration.

217.    JOHN PT16 DOE had been suffering from asthma and thus required a visit to Laurel Pediatric.  JOHN PT16 DOE had a regular pediatrician at Laurel Pediatric, Dr. Elaine Confer.  However, Dr. Elaine Confer was not available, and JOHN PT16 DOE required an immediate appointment.

218.    Barto seized this opportunity to abuse and molest JOHN PT16 DOE under the auspices of a full-body physical.  During the examination, without any warning to JOHN PT16 DOE and without requesting his informed consent, Barto slid his hand into JOHN PT16 DOE's underwear and then proceeded to grope and fondle his genitals.

219.    Following JOHN PT16 DOE's abuse by Barto, JOHN PT16 DOE's mother complained to Laurel Pediatric and, specifically, asked to speak with JOHN PT16 DOE's regular pediatrician, Dr. Elaine Confer.  After initially receiving no response, JOHN PT16 DOE's mother made additional complaints and ultimately confronted Dr. Elaine Confer regarding Barto's October 2016 abuse and harassment of JOHN PT16 DOE.

220.    Dr. Elaine Confer confirmed that she had been informed previously about Barto's inappropriate conduct with children.  She then assured JOHN PT16 DOE's mother that they

would speak with him again about his "odd bedside manner," but in effect did nothing to prevent ongoing and further acts of abuse by Barto against his minor patients.

221.    As a result of the abuse by Barto, JOHN PT16 DOE has suffered emotional distress, including, but not limited to, embarrassment, shame, and permanent psychological damage, which requires significant treatment.

222.    At all relevant times mentioned herein, JOHN PT16 DOE was too young to have given any lawful consent to any sexual contact.  Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification, **in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for these failures the physical and emotional harm here alleged, would not have occurred.**  At the time of filing this Complaint, JOHN PT16 DOE is under the age of 30.

JOHN LK17 DOE
**(vs. Defendants Barto, Laurel, & Conemaugh)**

223.    Utilizing his position of trust, power, and control, Barto, while acting as his pediatrician, exploited JOHN LK17 DOE.  This exploitation included, but is not limited to, Barto's sexual abuse of JOHN LK17 DOE in or around early to mid-2006.

224.    JOHN LK17 DOE was born on October 3, 2005, at Conemaugh Hospital, located on 320 Main Street, in Johnstown, Pennsylvania.

225.    When JOHN LK17 DOE was approximately 3 to 4 months old, in or around early to mid-2006, JOHN LK17 DOE's mother made a routine checkup appointment for her son at Laurel Pediatric on 323 Budfield Street in Johnstown, Pennsylvania.  Although JOHN LK17 DOE's mother had already seen other doctors at Laurel, the practice said that they like the

44

doctors to see every patient in rotation.   Thus, JOHN LK17 DOE was assigned to Barto for JOHN LK17 DOE's routine checkup appointment.

226.   JOHN LK17 DOE arrived at the appointment with his father and mother.   Barto immediately and without explanation informed JOHN LK17 DOE's father that he could not be in the examination room during the appointment.   Trusting a licensed physician, JOHN LK17 DOE's father remained seated outside during the examination.

227.   During the examination, Barto started by examining JOHN LK17 DOE's head and face.   As Barto examined his way down JOHN LK17 DOE's body, he began repositioning his body to put himself between JOHN LK17 DOE's mother and JOHN LK17 DOE.   Barto angled himself with his back to JOHN LK17 DOE's mother, attempting to obstruct her view of the examination.

228.   JOHN LK17 DOE's mother peered around Barto and saw that he was unlatching JOHN LK17 DOE's diaper.   When JOHN LK17 DOE's mother asked what Barto was doing, he informed her that he needed to "look down there" and make sure Logan "had two of them." JOHN LK17 DOE's mother recalls Barto lingering with his fingers in JOHN LK17 DOE's unlatched diaper, fondling JOHN LK17 DOE's genitals for approximately 2-3 minutes.   Barto then fastened JOHN LK17 DOE's diaper.

229.   While moving around the examination room, soon thereafter, Barto brushed up against JOHN LK17 DOE's mother's breasts.   Barto gave a tepid apology, but JOHN LK17 DOE's mother felt this was an intimidation technique in retaliation for questioning Barto's treatment of her son.

230.   JOHN LK17 DOE's mother quickly dressed JOHN LK17 DOE, left the office, and immediately approached the receptionist's desk alongside JOHN LK17 DOE's father.

45

231.    JOHN LK17 DOE's mother informed the receptionist that Barto had touched her inappropriately and she felt had also touched her son inappropriately.  The recipient shrugged off the complaints and, to the best of JOHN LK17 DOE's mother's knowledge, nothing further was done.

232.    As a result of the abuse by Barto, JOHN LK17 DOE has suffered emotional distress, including, but not limited to embarrassment, shame, guilt, trust issues, and other psychological damages.

233.    At all relevant times stated herein, JOHN LK17 DOE was too young to give lawful consent to any sexual contact.  Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification, **in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for these failures the physical and emotional harm here alleged, would not have occurred.**  At the time of this Complaint's filing, JOHN LK17 DOE is under the age of 30.

<u>JANE SK18 DOE</u>
**(vs. Defendants Barto, Laurel, & Conemaugh)**

234.    Utilizing his position of trust, power, and control, Barto, while acting as her pediatrician, exploited JANE SK18 DOE.  This exploitation included, but is not limited to, Barto's sexual abuse of JANE SK18 DOE in or around early to mid-2007.

235.    JANE SK18 DOE was born on November 27, 2006.  When JANE SK18 DOE was approximately 2-6 months old, she became very ill.  JANE SK18 DOE's mother attempted to make a doctor's appointment for her daughter with JANE SK18 DOE's regular doctor, at Laurel Pediatric.  However, JANE SK18 DOE's mother was informed that JANE SK18 DOE's usual physician was not in the office and the only available doctor was Barto.

236.    Although JANE SK18 DOE's mother was adamant to never again see Barto, due to her brother's (John LK17 Doe) inappropriate treatment from Barto, JANE SK18 DOE's parents felt the situation was medically urgent.

237.    During the examination, Barto proceeded to conduct a full physical examination of JANE SK18 DOE, even though her symptoms were localized to a fever and sinus problems. Barto began with JANE SK18 DOE's head and examined his way down her body.  While doing so, Barto again repositioned his body between JANE SK18 DOE's parents and JANE SK18 DOE.  Barto angled himself with his back to JANE SK18 DOE's parents, attempting to obstruct their view of the examination.

238.    JANE SK18 DOE's mother peered around Barto to see that he had unlatched JANE SK18 DOE's diaper and inserted his hand down the front, toward her genitals. JANE SK18 DOE's mother could see that Barto was moving his fingers.  When JANE SK18 DOE's mother asked what he was doing, Barto indicated that he just needed to "take a look" before withdrawing his hand, after approximately two minutes of touching beneath JANE SK18 DOE's unlatched diaper.

239.    Shortly thereafter, JANE SK18 DOE and her parents left the appointment without knowing what illness was affecting their daughter.

240.    As a result of the abuse by Barto, JANE SK18 DOE upon learning that she was one of Barto's victim as a young child, has suffered emotional distress, including, but not limited to embarrassment, shame, guilt, trust issues, and other psychological damages.

241.    At all relevant times stated herein, JANE SK18 DOE was too young to give lawful consent to any sexual contact.  Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification, **in conjunction with his, and the other named Defendants'**

**simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for these failures the physical and emotional harm here alleged, would not have occurred.** At the time of this Complaint's filing, JANE SK18 DOE is under the age of 30.

JANE GE19 DOE
**(vs. Defendants Barto, Laurel, & DLP)**

242.    Utilizing his position of trust, power, and control, Barto, while acting as her pediatrician, exploited JANE GE19 DOE.  This exploitation included, but is not limited to, Barto's sexual abuse of JANE GE19 DOE in or around 2018.

243.    JANE GE19 DOE and her brother John TE20 Doe (*infra*) were taken to Laurel Pediatrics by their mother to be assessed and treated for a suspected chest cold.

244.    While they were being examined by Barto, a nurse was also in the room but her back was turned to the exam table and spent the whole visit typing at a computer screen while Barto examined JANE GE19 DOE and her brother, purportedly for chest colds.

245.    As part of his erroneous assessment of their chest colds, Barto pulled down JANE GE19 DOE's pants and fondled her genitalia, and then did the same to her brother.

246.    JANE GE19 DOE's mother was busy with a third child and did not see the fondling but did find it odd that they were being examined in such a manner for chest colds. Upon leaving however, John TE20 Doe said in reference to Barto, "He touched my weiner."

247.    JANE GE19 DOE's mother was alarmed by this and noted that John TE20 Doe was also alarmed by the encounter, but decided she would 'sleep on it,' before taking further action.  When JANE GE19 DOE's mother woke up the next day, she saw a news report that Barto had been arrested, and she then reached out to the authorities to report the molestation of JANE GE19 DOE and John TE20 Doe.

248.    As a result of the abuse by Barto, JANE GE19 DOE has suffered emotional distress, including, but not limited to embarrassment, shame, guilt, trust issues, and other psychological damages.

249.    At all relevant times stated herein, JANE GE19 DOE was too young to give lawful consent to any sexual contact.  Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification, **in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for these failures the physical and emotional harm here alleged, would not have occurred.** At the time of this Complaint's filing, JANE GE19 DOE is under the age of 30.

<u>JOHN TE20 DOE</u>
**(vs. Defendants Barto, Laurel, & DLP)**

250.    Utilizing his position of trust, power, and control, Barto, while acting as his pediatrician, exploited JOHN TE20 DOE.  This exploitation included, but is not limited to, Barto's sexual abuse of JOHN TE20 DOE in or around 2018.

251.    JOHN TE20 DOE and his sister Jane GE19 Doe (*supra*) were taken to Laurel Pediatrics by their mother to be assessed and treated for a suspected chest cold in 2018.

252.    While they were being examined by Barto, a nurse was also in the room but her back was turned to the exam table and spent the whole visit typing at a computer screen while Barto examined JOHN TE20 DOE and his sister, purportedly for chest colds.

253.    As part of his erroneous assessment of their chest colds, Barto pulled down JOHN TE20 DOE's pants and fondled his genitalia.

254.    JOHN TE20 DOE's mother was busy with a third child and did not see the fondling but did find it odd that they were being examined in such a manner for chest colds.

Upon leaving however, JOHN TE20 DOE said in reference to Barto, "He touched my wiener," and this convinced JOHN TE20 DOE's mother that the encounter was, as she feared wildly inappropriate.

255.    JOHN TE20 DOE's mother was alarmed by this, but decided she would 'sleep on it,' before taking further action.  When JANE GE19 DOE's mother woke up the next day, she saw a news report that Barto had been arrested, and she then reached out to the authorities to report the molestation of JOHN TE20 DOE and his sister.

256.    As a result of the abuse by Barto, JOHN TE20 DOE has suffered emotional distress, including, but not limited to embarrassment, shame, guilt, trust issues, and other psychological damages.

257.    At all relevant times stated herein, JOHN TE20 DOE was too young to give lawful consent to any sexual contact.  Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification, **in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for these failures the physical and emotional harm here alleged, would not have occurred.**  At the time of this Complaint's filing, JOHN TE20 DOE is under the age of 30.

<u>JANE PB21 DOE</u>
**(vs. Defendants Barto, Laurel, Conemaugh, &/or DLP)**

258.    Utilizing his position of trust, power, and control, Barto, while acting as his pediatrician, exploited JANE PB21 DOE.  This exploitation included, but is not limited to, Barto's sexual abuse of JANE PB21 DOE in or around 2014 when JANE PB21 DOE was 3 or 4 years old.

259.   JANE PB21 DOE's mother took JANE PB21 DOE to Laurel Pediatrics for a round of immunizations for JANE PB21 DOE.  This was her only visit with Barto.

260.   Although Barto was not JANE PB21 DOE's regular pediatrician, JANE PB21 DOE's mother noticed that unlike at previous office visits with JANE PB21 DOE, her daughter acted out of character while being examined by Barto and was pulling away and kicking at him.

261.   During this same visit with Barto, and despite the fact that they were there at Laurel only for vaccinations, Barto insisted on a full examination in order to administer the vaccines.  He took JANE PB21 DOE diaper off and spread her vagina open with his index and middle fingers.  His thumb was resting on her clitoris.  Barto gave no warning to JANE PB21 DOE or her mother, that he was going to do this, and he was not wearing gloves.

262.   As a result of the abuse by Barto, JANE PB21 DOE has suffered emotional distress, including, but not limited to embarrassment, shame, guilt, trust issues, and other psychological damages.

263.   At all relevant times stated herein, JANE PB21 DOE was too young to give lawful consent to any sexual contact.  Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification, **in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for these failures the physical and emotional harm here alleged, would not have occurred.**  At the time of this Complaint's filing, JANE PB21 DOE is under the age of 30.

<u>JANE ST23 DOE</u>
**(vs. Defendants Barto, Laurel, & DLP)**

264.   Utilizing his position of trust, power, and control, Barto, while acting as her pediatrician, exploited JANE ST23 DOE.  This exploitation included, but is not limited to,

Barto's sexual abuse of JANE ST23 DOE in or around 2016.

265.   JANE ST23 DOE was a patient of Barto and Laurel Pediatric since her birth in 2015, which was premature, and led to significant medical issues in her early life.

266.   JANE ST23 DOE was taken to see Barto specifically on three different occasions but it was on the first visit that he molested JANE ST23 DOE by fondling her genitalia and breasts, and remarkably even distilling this erroneous medical exam into her office visit note.

267.   JANE ST23 DOE's mother took her for a one year check up on March 24, 2016 to Barto, whom she specifically requested because of word-of-mouth recommendation and reputation in the community for being a competent physician.

268.   JANE ST23 DOE wasn't eating much at the time and her mother brought this up to Barto, who felt around her belly button and said she had enough belly fat so that was fine.

269.   Barto then examined the breasts of his one-year old patient, and noted that her breasts were raised which was, according to Barto - not normal to see in a child at 15% percentile in weight.  Barto then said this could be due to a build-up in estrogen and that he needed to check her vagina too find out.

270.   Barto then opened up JANE ST23 DOE's vagina lips to show her mother that inside of vagina wasn't pink which was 'a good sign.' This was the first and only time in one year of JANE ST23 DOE's life that a doctor or medical professional had touched her vagina. Barto was not wearing gloves.

271.   Such an exam on a one year old is not based on any acceptable form of treatment and or diagnosis and was in fact a sexual molestation in part, under the guise of a medical exam.

272.   As a result of the abuse by Barto, JANE ST23 DOE has suffered emotional distress, including, but not limited to embarrassment, shame, guilt, trust issues, and other

psychological damages.

273.   At all relevant times stated herein, JANE ST23 DOE was too young to give lawful consent to any sexual contact.  Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification, **in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for these failures the physical and emotional harm here alleged, would not have occurred.**  At the time of this Complaint's filing, JANE ST23 DOE is under the age of 30.

JANE RR24 DOE
**(vs. Defendants Barto, Laurel, & DLP)**

274.   Utilizing his position of trust, power, and control, Barto, while acting as her pediatrician, exploited JANE RR24 DOE.  This exploitation included, but is not limited to, Barto's sexual abuse of JANE RR24 DOE in or around 2016.

275.   JANE RR24 DOE was a patient of Barto and Laurel Pediatric since her birth in 2016.

276.   JANE RR24 DOE first saw Barto in 2016 at Conemaugh Hospital shortly after her birth.  It was a weekend, and Barto was the only on-call pediatrician.  JANE RR24 DOE's parents needed a pediatrician to examine JANE RR24 DOE in order to be discharged from the hospital.

277.   JANE RR24 DOE's parents knew of Barto from another child's experiences with Laurel Pediatric, and they did not like him as they report that he always gave them a 'bad vibe.'

278.   However, when Barto was the lone option for JANE RR24 DOE to be discharged home that day, JANE RR24 DOE's parents acquiesced to letting Barto examine JANE RR24 DOE.

279.   Barto started the physical exam exhibiting a routine procedure – checking her eyes and ears, etc.  JANE RR24 DOE's mother, father, and grandmother were in the exam room at the time and a nurse was in and out of the room getting the discharge paperwork ready.  The nurse was not watching the exam.

280.   JANE RR24 DOE's mother remembers that when Barto swaddled JANE RR24 DOE, he was holding and cuddling her excessively.  He began rocking JANE RR24 DOE. Becoming increasingly alarmed, JANE RR24 DOE's mother went to reach for her baby and Barto moved away and did not give her back.  JANE RR24 DOE's mother remembers feeling very uncomfortable and anxious as a result of these actions.

281.   Barto resumed with the physical exam and when he got to the genitals, became "fixated" on them.  He opened JANE RR24 DOE's vagina very wide and was pointing different parts out in detail.  JANE RR24 DOE's mother remembers Barto pointing out "white stuff" in several different locations and physically touching (not just pointing) different parts of the vagina.

282.   Barto told her it was normal which confused JANE RR24 DOE's mother as to why he was touching it, and spending so much time pulling her vagina apart.  JANE RR24 DOE's mother reports that he opened JANE RR24 DOE's vagina so wide that the parents could see inside of JANE RR24 DOE.

283.   JANE RR24 DOE's mother always remembered this incident and was distraught by it, but it wasn't until seeing the news reports of Barto on television in 2018 that the reality of this encounter being, not a legitimate medical exam, but an act of sexual assault, sunk in, and she again experienced extreme distress.

284.    As a result of the abuse by Barto, JANE RR24 DOE has suffered emotional distress, including, but not limited to embarrassment, shame, guilt, trust issues, and other psychological damages.

285.    At all relevant times stated herein, JANE RR24 DOE was too young to give lawful consent to any sexual contact.  Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification**, in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for these failures the physical and emotional harm here alleged, would not have occurred.**  At the time of this Complaint's filing, JANE RR24 DOE is under the age of 30.

JANE MH25 DOE
**(vs. Defendants Barto, Laurel, & Conemaugh)**

286.    Utilizing his position of trust, power, and control, Barto, while acting as her pediatrician, exploited JANE MH25 DOE.  This exploitation included, but is not limited to, Barto's sexual abuse of JANE MH25 DOE in or around 2002 to 2006.

287.    JANE MH25 DOE was a patient of Laurel Pediatric from the time she was an infant as her brothers, including John AS26 Doe (see paragraphs ~~301-306~~ **296-301**), were already patients there.

288.    JANE MH25 DOE remembers seeing Barto on her visits to Laurel Pediatric.  She remembers Barto always "being weird" during these visits.  Barto conducted unnecessary vaginal examinations on JANE MH25 DOE multiple times over the years.

289.    JANE MH25 DOE and her brother, John AS26 Doe, were part of an experimental study with Barto involving a nasal spray.  Both JANE MH25 DOE and John AS26 Doe saw

Barto regularly through this nasal spray study. Barto conducted full body examinations on JANE MH25 DOE to check for any alleged allergic reactions to the nasal spray.

290.   During her visits to Laurel Pediatric, Barto made JANE MH25 DOE feel very uncomfortable, but she did not know any better at the time. Two visits in particular stick out in her memory. JANE MH25 DOE's mother was in the examination room both times.

291.   During one of these visits, Barto had JANE MH25 DOE walk like a duck to "check her balance." Barto also had JANE MH25 DOE bend over. Barto then slid his hands down JANE MH25 DOE's back and put his hands between her legs. Barto then inserted his hand underneath JANE MH25 DOE's leggings and between her legs and proceeded to touch her vagina.

292.   JANE MH25 DOE was eleven or twelve years old the last time she saw Barto. During this last visit, Barto spent a lot of time touching and feeling JANE MH25 DOE's breasts. Barto also flicked JANE MH25 DOE's nipples. It did not feel right to JANE MH25 DOE that Barto was caressing her breasts and spending so much time on them. JANE MH25 DOE asked her mother to see a female doctor after this visit.

293.   As a result of the abuse by Barto, JANE MH25 DOE has suffered emotional distress, including, but not limited to, embarrassment, shock, shame, guilt, trust issues, a fear and mistrust of doctors, and other psychological damages.

294.   Starting at eleven years old, JANE MH25 DOE struggled with bulimia. JANE MH25 DOE had a mental breakdown when she was sixteen and began counseling shortly thereafter. From sixteen to nineteen years old, she was at times suicidal. To this day, JANE MH25 DOE is uncomfortable seeking medical treatment and has a fear of male doctors in particular.

295.    At all relevant times stated herein, JANE MH25 DOE was too young to give lawful consent to any sexual contact.  Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification, **in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for these failures the physical and emotional harm here alleged, would not have occurred.**  At the time of this Complaint's filing, JANE MH25 DOE is under the age of 30.

<u>JOHN AS26 DOE</u>
**(vs. Defendants Barto, Laurel, & Conemaugh)**

296.    Utilizing his position of trust, power, and control, Barto, while acting as his pediatrician, exploited JOHN AS26 DOE.  This exploitation included, but is not limited to, Barto's sexual abuse of JOHN AS26 DOE in or around 2000 to 2003.

297.    JOHN AS26 DOE was a patient of Laurel Pediatric from the time he was an infant as his older brothers were already patients there.

298.    JOHN AS26 DOE and his sister, Jane MH25 Doe, were part of an experimental study with Barto involving a nasal spray.  Both JOHN AS26 DOE and Jane MH25 Doe saw Barto regularly through this nasal spray study.

299.    JOHN AS26 DOE vividly remembers one incident in particular that made him feel very uncomfortable.  A nurse was in the room at the time, but her back was to the examination table. JOHN AS26 DOE was laying down on the examination table, and Barto was standing over him.  Barto took an unusual amount of time standing there looking at JOHN AS26 DOE's body.  Barto, who was not wearing gloves at the time, then proceeded to touch JOHN AS26 DOE, holding and maneuvering JOHN AS26 DOE's penis in his hands for a prolonged period of time.  Barto then commented that there was a "good opening for the pee hole."

300.    As a result of the abuse by Barto, JOHN AS26 DOE has suffered emotional distress, including, but not limited to, embarrassment, shock, shame, guilt, trust issues, mistrust of doctors, and other psychological damages.

301.    At all relevant times stated herein, JOHN AS26 DOE was too young to give lawful consent to any sexual contact.  Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification, **in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for these failures the physical and emotional harm here alleged, would not have occurred.**  At the time of this Complaint's filing, JOHN AS26 DOE is under the age of 30.

JANE CW27 DOE
**(vs. Defendants Barto, Johnstown, Laurel, & Conemaugh)**

302.    Utilizing his position of trust, power, and control, Barto, while acting as her pediatrician, exploited JANE CW27 DOE.  This exploitation included, but is not limited to, Barto's sexual abuse of JANE CW27 DOE in or around 1999 to 2003.

303.    JANE CW27 DOE started going to Johnstown and/or Laurel Pediatric immediately after she was born.  For the first six months, JANE CW27 DOE saw whichever doctor was available at the practice.  At about six months, JANE CW27 DOE started seeing Barto regularly.  JANE CW27 DOE saw Barto from birth until she was approximately two and half years old.

304.    Barto would spend an unusual amount of time "checking" JANE CW27 DOE's genitals each time she visited the practice.  Barto would perform these genital examinations without gloves.

305.    As a result of the abuse by Barto, JANE CW27 DOE has suffered emotional distress, including, but not limited to, nightmares, embarrassment, shock, shame, guilt, trust issues, mistrust of both doctors and men, and other psychological damages.

306.    JANE CW27 DOE was in the psychiatric ward at Conemaugh Hospital when she was just fifteen years old.   JANE CW27 DOE is currently in therapy and on psychiatric medication for depression.

307.    At all relevant times stated herein, JANE CW27 DOE was too young to give lawful consent to any sexual contact.   Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification, **in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for these failures the physical and emotional harm here alleged, would not have occurred.**   At the time of this Complaint's filing, JANE CW27 DOE is under the age of 30.

<u>JANE MW28 DOE</u>
**(vs. Defendants Barto, Laurel, & Conemaugh)**

308.    Utilizing his position of trust, power, and control, Barto, while acting as her pediatrician, exploited JANE MW28 DOE.   This exploitation included, but is not limited to, Barto's sexual abuse of JANE MW28 DOE in or around 2001 to 2003.

309.    JANE MW28 DOE started seeing Barto at Laurel Pediatric when she was under a year old.   JANE MW28 DOE's mother was told that as patients at Laurel Pediatric, her daughters would have to see all of the doctors at the practice, depending on who was available at the time.

310.    JANE MW28 DOE saw Barto approximately five times.   Barto conducted full genital examinations on JANE MW28 DOE during each of these visits.

311.    At JANE MW28 DOE's last visit with Barto at Laurel Pediatric, Barto conducted a genital examination on JANE MW28 DOE like he usually did.  JANE MW28 DOE's mother and a friend were in the room during this examination.  The friend told JANE MW28 DOE's mother "that isn't right."

312.    JANE MW28 DOE's mother went to the front desk and spoke to a female receptionist.  JANE MW28 DOE's mother told the receptionist that she did not want to see Barto anymore and that "he is a pervert."  The receptionist told JANE MW28 DOE's mother that she could go to another pediatrician if she would like.

313.    After this visit, JANE MW28 DOE's mother immediately switched JANE MW28 DOE and her sister, Jane CW27 Doe (see paragraphs ~~307-312~~ **302-307**), to another pediatric practice in the area.

314.    As a result of the abuse by Barto, JANE MW28 DOE has suffered emotional distress, including, but not limited to, embarrassment, shock, shame, guilt, trust issues, and other psychological damages.

315.    At all relevant times stated herein, JANE MW28 DOE was too young to give lawful consent to any sexual contact.  Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification**, in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for these failures the physical and emotional harm here alleged, would not have occurred.**  At the time of this Complaint's filing, JANE MW28 DOE is under the age of 30.

<u>JANE RW29 DOE</u>
**(vs. Defendants Barto, Laurel, & Conemaugh)**

316.    Utilizing his position of trust, power, and control, Barto, while acting as her pediatrician, exploited JANE RW29 DOE.  This exploitation included, but is not limited to, Barto's sexual abuse of JANE RW29 DOE in or around 2005 to 2006.

317.    JANE RW29 DOE was born premature at Conemaugh Hospital.  Barto was the doctor assigned to monitor and treat JANE RW29 DOE while she was in the neonatal intensive care unit at Conemaugh Hospital.  Because Barto was the doctor assigned to her case at Conemaugh Hospital, JANE RW29 DOE's mother did not have a choice but to let JANE RW29 DOE see Barto.

318.    JANE RW29 DOE was in the neonatal intensive care unit for approximately one month.  Barto was very helpful during this time, so JANE RW29 DOE's mother ultimately decided to take JANE RW29 DOE to Barto twice for checkups after she was released from the hospital.

319.    During these two visits at Laurel Pediatric, Barto conducted, abusive, and non-medically indicated, genital examinations on JANE RW29 DOE, causing JANE RW29 DOE's mother great shock and alarm.  Because of this, JANE RW29 DOE's mother immediately switched JANE RW29 DOE to another pediatric practice where JANE RW29 DOE's two older sisters went.

320.    As a result of the abuse by Barto, JANE RW29 DOE has suffered emotional distress, including, but not limited to, embarrassment, shock, shame, guilt, trust issues, and other psychological damages.

321.    At all relevant times stated herein, JANE RW29 DOE was too young to give lawful consent to any sexual contact.  Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification, **in conjunction with his, and the other named Defendants'**

simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for these failures the physical and emotional harm here alleged, would not have occurred. At the time of this Complaint's filing, JANE RW29 DOE is under the age of 30.

JOHN JF30 DOE<br>(vs. Defendants Barto, Laurel, Conemaugh, &/or DLP)

322.    Utilizing his position of trust, power, and control, Barto, while acting as his pediatrician, exploited JOHN JF30 DOE. This exploitation included, but is not limited to, Barto's sexual abuse of JOHN JF30 DOE numerous times over the years during both well and sick visits from approximately 2006 until 2018.

323.    JOHN JF30 DOE was born very premature. Barto was instrumental in keeping JOHN JF30 DOE alive and, as a result, JOHN JF30 DOE's parents began to place great trust and faith in Barto as a doctor generally and as JOHN JF30 DOE's pediatrician specifically.

324.    JOHN JF30 DOE developed severe medical problems and is non-verbal. Because of JOHN JF30 DOE's parents' trust in Barto, JOHN JF30 DOE only ever saw Barto at his visits to Laurel Pediatric.

325.    Barto would typically spend between an hour to an hour and a half with JOHN JF30 DOE during his checkups and visits to Laurel Pediatric. At the time, JOHN JF30 DOE's parents thought Barto was just being very thorough. Barto would check JOHN JF30 DOE's penis and testicles at great length during each of his visits, allegedly to see if JOHN JF30 DOE's testicles had "descended."

326.    As a result of the abuse by Barto, JOHN JF30 DOE has suffered emotional distress, including, but not limited to, embarrassment, shock, shame, guilt, trust issues, and other psychological damages.

327.   At all relevant times stated herein, JOHN JF30 DOE was too young to give lawful consent to any sexual contact.  Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification, **in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for these failures the physical and emotional harm here alleged, would not have occurred.**  At the time of this Complaint's filing, JOHN JF30 DOE is under the age of 30.

JANE VF31 DOE<br>**(vs. Defendants Barto, Laurel, Conemaugh, &/or DLP)**

328.   Utilizing his position of trust, power, and control, Barto, while acting as her pediatrician, exploited JANE VF31 DOE.  This exploitation included, but is not limited to, Barto's sexual abuse of JANE VF31 DOE numerous times over the years during both well and sick visits from approximately 2012 until 2018.

329.   JANE VF31 DOE's parents brought her to see Barto at Laurel Pediatric because her older brother, John JF30 Doe (see paragraphs ~~327-332~~ **322-327**), was already a patient of Barto's, and the parents placed great trust in Barto as a pediatrician.

330.   Barto would typically spend between an hour to an hour and a half with JANE VF31 DOE during her checkups and visits to Laurel Pediatric.  At the time, JANE VF31 DOE's parents thought Barto was just being very thorough.

331.   Every single visit, whether for a well check or an illness, Barto would concentrate on JANE VF31 DOE's vagina.  Barto would open up JANE VF31 DOE's vagina each time and have JANE VF31 DOE's father come over to look inside.  Barto would tell JANE VF31 DOE's father that he was "checking for secretions."

332.    As a result of the abuse by Barto, JANE VF31 DOE has suffered emotional distress, including, but not limited to, embarrassment, shock, shame, guilt, trust issues, and other psychological damages.

333.    At all relevant times stated herein, JANE VF31 DOE was too young to give lawful consent to any sexual contact.  Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification, **in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for these failures the physical and emotional harm here alleged, would not have occurred.**  At the time of this Complaint's filing, JANE VF31 DOE is under the age of 30.

JOHN WM32 DOE
**(vs. Defendants Barto, Laurel, Conemaugh, &/or DLP)**

334.    Utilizing his position of trust, power, and control, Barto, while acting as his pediatrician, exploited JOHN WM32 DOE.  This exploitation included, but is not limited to, Barto's sexual abuse of JOHN WM32 DOE numerous times over the years during well checks from approximately 2012 until 2016.

335.    JOHN WM32 DOE was born at Conemaugh Hospital and saw Barto there for his jaundice after birth.  Barto then became JOHN WM32 DOE's primary care doctor.

336.    All of JOHN WM32 DOE's well visits and checkups were with Barto at Laurel Pediatric from approximately 2012 until 2016.  During every one of these visits, Barto would spend an unusual amount of time touching and fondling JOHN WM32 DOE's testicles to "see if they descended."  This erroneous examination was sexual abuse, guised in the trappings of, and in conjunction with, an actual medical exam.

337.    JOHN WM32 DOE's mother switched JOHN WM32 DOE from Laurel Pediatric to another pediatric practice when he was around three or four years old.

338.    As a result of the abuse by Barto, JOHN WM32 DOE has suffered emotional distress, including, but not limited to, embarrassment, shock, shame, guilt, trust issues, and other psychological damages.

339.    At all relevant times stated herein, JOHN WM32 DOE was too young to give lawful consent to any sexual contact. Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification, **in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for these failures the physical and emotional harm here alleged, would not have occurred.** At the time of this Complaint's filing, JOHN WM32 DOE is under the age of 30.

JOHN IM33 DOE
**(vs. Defendants Barto, Laurel, & Conemaugh)**

340.    Utilizing his position of trust, power, and control, Barto, while acting as his pediatrician, exploited JOHN IM33 DOE. This exploitation included, but is not limited to, Barto's sexual abuse of JOHN IM33 DOE numerous times over the years during both well and sick visits from approximately 2007 until 2009.

341.    JOHN IM33 DOE was born with a defect in his lung and was very sick as a newborn. JOHN IMM33 DOE's parents credited Barto with helping JOHN IM33 DOE get better during this time. As a result, JOHN IM33 DOE's parents trusted Barto very much, as a doctor generally and as JOHN IM33 DOE's pediatrician specifically.

342.    From the time JOHN IM33 DOE was born, Barto always conducted a "full body" examination on JOHN IM33 DOE during each visit at Laurel Pediatric. These full body

examinations always included touching and fondling of JOHN IM33 DOE's genitals even though there was no medical necessity or benefit for these fraudulent examinations, which were done for the sexual gratification of Barto.

343.    As a result of the abuse by Barto, JOHN IM33 DOE has suffered emotional distress, including, but not limited to, embarrassment, shock, shame, guilt, trust issues, and other psychological damages.

344.    At all relevant times stated herein, JOHN IM33 DOE was too young to give lawful consent to any sexual contact.  Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification, **in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for these failures the physical and emotional harm here alleged, would not have occurred.**  At the time of this Complaint's filing, JOHN IM33 DOE is under the age of 30.

<u>JANE JM34 DOE</u>
**(vs. Defendants Barto, Laurel, & Conemaugh)**

345.    Utilizing his position of trust, power, and control, Barto, while acting as her pediatrician, exploited JANE JM34 DOE.  This exploitation included, but is not limited to, Barto's sexual abuse of JANE JM34 DOE in or around 2009.

346.    At JANE JM34 DOE's one week well visit at Laurel Pediatric, Barto conducted a full body examination on JANE JM34 DOE.  During the examination, Barto inserted his ungloved finger into JANE JM34 DOE's vagina.  JANE JM34 DOE screamed out in pain as Barto described in great medical detail what he was doing.

347.    Before they left the parking lot, JANE JM34 DOE's mother brought up what had happened to JANE JM34 DOE's father.  Both of JANE JM34 DOE's parents were very upset. After this incident, JANE JM34 DOE's parents tried to never see Barto again at Laurel Pediatric.

348.    As a result of the abuse by Barto, JANE JM34 DOE has suffered emotional distress, including, but not limited to, embarrassment, shock, shame, guilt, trust issues, and other psychological damages.

349.    At all relevant times stated herein, JANE JM34 DOE was too young to give lawful consent to any sexual contact.  Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification, **in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for these failures the physical and emotional harm here alleged, would not have occurred.**  At the time of this Complaint's filing, JANE JM34 DOE is under the age of 30.

<u>JANE KS35 DOE</u>
**(vs. Defendants Barto, Laurel, & Conemaugh)**

350.    Utilizing his position of trust, power, and control, Barto, while acting as her pediatrician, exploited JANE KS35 DOE.  This exploitation included, but is not limited to, Barto's sexual abuse of JANE KS35 DOE numerous times over the years during both well and sick visits beginning in approximately 2005.

351.    Upon birth, JANE KS35 DOE went to Pediatric Care Specialists.  JANE KS35 DOE's parents switched JANE KS35 DOE to Laurel Pediatric when she was approximately two years old.

352.    In or around 2005, when JANE KS35 DOE was approximately two years old, JANE KS35 DOE saw Barto at Laurel Pediatric for a cold and/or ear infection.  Barto placed his

hands around JANE KS35 DOE's waist and backed her bottom up to his crotch area. Barto then had JANE KS35 DOE bend over. Barto then proceeded to lift up JANE KS35 DOE's shirt and told JANE KS35 DOE's mother that he was performing a scoliosis check. When he was finished, JANE KS35 DOE's mother noticed that Barto had an erection.

353.   JANE KS35 DOE saw Barto approximately six to seven times in total.

354.   Barto conducted fraudulent vaginal examinations and penetrated JANE KS35 DOE's vagina without gloves during each of these visits. JANE KS35 DOE's mother would always question Barto about this, and Barto would simply respond that he was following protocol and proper procedure.

355.   Ultimately, JANE KS35 DOE's mother had enough and told a woman named Robyn, who worked at the front desk at Laurel Pediatric, that she did not want JANE KS35 DOE or her sister, Jane KS36 Doe (see paragraphs 365-375 **360-370**), to see Barto again and that Barto was "perverted." Robyn responded by telling JANE KS35 DOE's mother that she would schedule her daughters with someone else at the practice from then on.

356.   From then on, JANE KS35 DOE and her sister, Jane KS36 Doe, saw Brad Callahan at Laurel Pediatric. JANE KS35 DOE's mother explained to Callahan what Barto had been doing and why she switched her daughters from seeing Barto to seeing him instead. JANE KS35 DOE's mother told Callahan that she believed Barto was being perverted with her daughters. JANE KS35 DOE's mother told Callahan that she did not understand why Barto had penetrated either JANE KS35 DOE or Jane KS36 Doe. Callahan shrugged it off.

357.   JANE KS35 DOE's mother ultimately switched both JANE KS35 DOE and Jane KS36 Doe back to Pediatric Care Specialists because no one did anything about Barto's abuse of her daughters.

358.    As a result of the abuse by Barto, JANE KS35 DOE has suffered emotional distress, including, but not limited to, embarrassment, shock, shame, guilt, trust issues, and other psychological damages.

359.    At all relevant times stated herein, JANE KS35 DOE was too young to give lawful consent to any sexual contact.  Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification, **in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for these failures the physical and emotional harm here alleged, would not have occurred.**  At the time of this Complaint's filing, JANE KS35 DOE is under the age of 30.

JANE KS36 DOE
**(vs. Defendants Barto, Laurel, & Conemaugh)**

360.    Utilizing his position of trust, power, and control, Barto, while acting as her pediatrician, exploited JANE KS36 DOE.  This exploitation included, but is not limited to, Barto's sexual abuse of JANE KS36 DOE numerous times over the years during both well and sick visits beginning in approximately 2005.

361.    Upon birth, JANE KS36 DOE went to Pediatric Care Specialists, along with her sister, Jane KS35 Doe (see paragraphs 355-364 **350-359**).  JANE KS36 DOE had lung issues as a newborn.  Hearing that Barto was one of the best doctors around, JANE KS36 DOE's parents switched both JANE KS36 DOE and her sister to Laurel Pediatric in 2004.

362.    JANE KS36 DOE's mother brought JANE KS36 DOE in to Laurel Pediatric to see Barto for the first time when JANE KS36 DOE was three months old.

363.    At this visit, Barto said that he needed to check JANE KS36 DOE's vaginal opening.  Barto then stated that JANE KS36 DOE's vaginal opening was too small.  Without gloves, Barto then proceeded to penetrate JANE KS36 DOE with his pinky finger.

364.    During this visit, Barto also touched and fondled JANE KS36 DOE's nipples. Barto did so under the pretense of a fraudulent breast examination.  When JANE KS36 DOE's mother asked Barto what he was doing and why he was doing it, Barto said that it was "protocol" since JANE KS36 DOE was on a drug called Premarin and it could cause breast lumps.

365.    JANE KS36 DOE saw Barto approximately six to seven times in total.  The fraudulent vaginal examinations and vaginal penetration happened during every one of these visits.  JANE KS36 DOE's mother would always question Barto about this, and Barto would simply respond that he was following protocol and proper procedure.

366.    Ultimately, JANE KS36 DOE's mother had enough and told a woman named Robyn, who worked at the front desk at Laurel Pediatric, that she did not want her daughters to see Barto again and that Barto was "perverted."  Robyn responded by telling JANE KS36 DOE's mother that she would schedule her daughters with someone else at the practice from then on. Upon information and belief, nothing else was done to protect JANE KS36 DOE, her sister, or any other minor patient of Barto's subsequent to this clear an unambiguous report of sexual abuse under the guise of, and in connection with medical treatment.

367.    From then on, JANE KS36 DOE and her sister, Jane KS35 Doe, saw Brad Callahan at Laurel Pediatric.  JANE KS36 DOE's mother explained to Callahan what Barto had been doing and why she switched her daughters from seeing Barto to seeing him instead.  JANE KS36 DOE's mother told Callahan that she believed Barto was being perverted with her daughters.  JANE KS36 DOE's mother told Callahan that she did not understand why Barto had

penetrated either JANE KS36 DOE or Jane KS35 Doe.  Callahan shrugged it off.

368.    JANE KS36 DOE's mother ultimately switched both JANE KS36 DOE and Jane KS35 Doe back to Pediatric Care Specialists because no one did anything about Barto's abuse of her daughters.

369.    As a result of the abuse by Barto, JANE KS36 DOE has suffered emotional distress, including, but not limited to, embarrassment, shock, shame, guilt, trust issues, and other psychological damages.

370.    At all relevant times stated herein, JANE KS36 DOE was too young to give lawful consent to any sexual contact.  Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification, **in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for these failures the physical and emotional harm here alleged, would not have occurred.**  At the time of this Complaint's filing, JANE KS36 DOE is under the age of 30.

JANE AH37 DOE
**(vs. Defendants Barto, Laurel, & DLP)**

371.    Utilizing his position of trust, power, and control, Barto, while acting as her pediatrician, exploited JANE AH37 DOE.  This exploitation included, but is not limited to, Barto's sexual abuse of JANE AH37 DOE in or around 2016.

372.    JANE AH37 DOE became a patient at Laurel Pediatric in or around 2014, when she was approximately two years old.  JANE AH37 DOE mostly saw Brad Callahan or Sarah (both physician assistants) at visits to Laurel Pediatric, but she would at times see Barto.

373.    JANE AH37 DOE saw Barto for the first time in or around 2016, when she was approximately four years old.  JANE AH37 DOE was scheduled with Barto for a follow-up

appointment for her Lyme's Disease. At this follow-up appointment, JANE AH37 DOE was supposed to have her blood work results reviewed.

374.    Barto came in and sat down in one of the chairs. He picked JANE AH37 DOE up and put her on his lap to straddle him. Barto then laid JANE AH37 DOE back on a rolling chair and pulled her pants down to her knees. Barto proceeded to check JANE AH37 DOE's vaginal area with his ungloved thumb and said, "I need to make sure there is no tick inside of her." Barto then spread JANE AH37 DOE's legs completely open and proceeded to open up JANE AH37 DOE's vagina with his ungloved hands.

375.    Barto conducted this fraudulent vaginal exam in plain view of JANE AH37 DOE's parents and grandmother, even though there was no reason for a physical exam whatsoever, especially to check for a tick. There was also a medical assistant in the room during the fraudulent examination, who would occasionally watch what Barto was doing and type into the computer.

376.    As a result of the abuse by Barto, JANE AH37 DOE has suffered emotional distress, including, but not limited to, embarrassment, shock, shame, guilt, trust issues, and other psychological damages.

377.    At all relevant times stated herein, JANE AH37 DOE was too young to give lawful consent to any sexual contact. Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification, **in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for these failures the physical and emotional harm here alleged, would not have occurred.** At the time of this Complaint's filing, JANE AH37 DOE is under the age of 30.

## JANE AL38 DOE
### (vs. Defendants Barto, Johnstown, Laurel, & Conemaugh)

378.   Utilizing his position of trust, power, and control, Barto, while acting as her pediatrician, exploited JANE AL38 DOE.  This exploitation included, but is not limited to, Barto's sexual abuse of JANE AL38 DOE between 1996 and in or around 2010 or 2011.

379.   JANE AL38 DOE was born on July 1, 1996, at Conemaugh Hospital, located on 320 Main Street, in Johnstown, Pennsylvania.  Following her discharge from the hospital, JANE AL38 DOE's mother took JANE AL38 DOE for routine checkups at Johnstown Pediatric Associates, located on 110 Main Street in Johnstown, Pennsylvania.

380.   During JANE AL38 DOE's examinations at Johnstown, between 1996 and in or around 1999, Barto would sit uncomfortably close to JANE AL38 DOE's mother, intertwining his legs with hers, and sitting JANE AL38 DOE between them.  During every appointment, Barto conducted a full-body examination of JANE AL38 DOE, including a genital exam.  JANE AL38 DOE's mother recalls that Barto would also examine JANE AL38 DOE on the examination table.  Barto kept his back to JANE AL38 DOE's mother, obstructing her view.  JANE AL38 DOE recalls at least three or four visits to Barto between 1996 and in or around 1999, where the aforementioned events occurred.

381.   Beginning in or around 1999 or 2000 and continuing until in and around 2011, JANE AL38 DOE continued seeing Barto intermittently at Laurel Pediatric Associates at the Eisenhower Boulevard location in Johnstown, Pennsylvania.  Although JANE AL38 DOE mostly saw Brad Callahan, Barto occasionally saw JANE AL38 DOE, primarily for walk-in appointments, including recurrent ear infections.  During each appointment, regardless of the reason for the visit, Barto would insist upon a full-body examination, including a genital examination.

382.    As a result of the abuse by Barto, JANE AL38 DOE has suffered emotional distress, including, but not limited to: embarrassment, humiliation, trust issues, and difficulty processing her emotions. JANE AL38 DOE also suffers from anxiety, shame, and other psychological damage, which has required professional psychological treatment.

383.    At all relevant times mentioned herein, JANE AL38 DOE was too young to have given any lawful consent to any sexual contact.  Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification, in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for these failures the physical and emotional harm here alleged, would not have occurred.  At the time of filing this Complaint, JANE AL38 DOE is under the age of 30.

<u>JOHN DK39 DOE</u>
(vs. Defendants Barto, Laurel, & Conemaugh)

384.    Utilizing his position of trust, power, and control, Barto, while acting as his pediatrician, exploited JOHN DK39 DOE.  This exploitation included, but is not limited to, Barto's sexual abuse of JOHN DK39 DOE in or around mid-to-late 2002.

385.    JOHN DK39 DOE was born on September 8, 2002, at Conemaugh Hospital, located on 320 Main Street, in Johnstown, Pennsylvania.  When JOHN DK39 DOE was born, Barto was the doctor on-call.  During his initial examination, JOHN DK39 DOE's mother recalls Barto describing her son as "a perfect 10" and performing a lengthy full body examination, including a prolonged assessment of JOHN DK39 DOE's genitals. Barto also performed JOHN DK39 DOE's circumcision.  After the circumcision, the nurses

informed JOHN DK39 DOE's parents that Barto had commented to them how "well-endowed" their son was, immediately following his procedure.

386.   JOHN DK39 DOE's parents took their son to Barto for his one-week visit at Laurel Pediatric at 323 Budfield Street in Johnstown, Pennsylvania.  Barto directed JOHN DK39 DOE's mother to keep JOHN DK39 DOE on her lap, inched his chair closer to JOHN DK39 DOE's mother, and interlocked his legs with hers under the auspices that this would ensure that JOHN DK39 DOE would not fall while being examined.

387.   During this one-week visit, Barto gave JOHN DK39 DOE another lengthy, full-body examination.  Barto examined down JOHN DK39 DOE's body before spending a prolonged period of time touching JOHN DK39 DOE's testicles.  Barto justified this examination by stating that he was "checking for fluid in [JOHN DK39 DOE]'s testicles" which required an extensive assessment.

388.   Barto again subjected JOHN DK39 DOE to an unnecessary prolonged genital examination during his next wellness visit at Laurel Pediatric, approximately two weeks later.  Therein, Barto once again directed JOHN DK39 DOE's mother to keep JOHN DK39 DOE on her lap, inched his chair closer to JOHN DK39 DOE's mother, and interlocked his legs with hers.  Barto then removed JOHN DK39 DOE's diaper and extensively fondled JOHN DK39 DOE's testicles for a prolonged time, stating he was checking for fluid.

389.   Prior to JOHN DK39 DOE's two-month visit at Laurel Pediatric in or around late-2002 JOHN DK39 DOE's mother noticed soft spots forming at the top of JOHN DK39 DOE's head.  JOHN DK39 DOE's mother and father raised this concern with Barto during their two-month visit.  During the examination, Barto squeezed these spots,

causing JOHN DK39 DOE to cry hysterically.  A nurse entered the examination room, took down some information, and left.   Barto then proceeded to conduct a full body examination, once against subjecting JOHN DK39 DOE to a prolonged, unnecessary genital examination.

390.   A week later, JOHN DK39 DOE's mother returned to Barto at Laurel Pediatric alongside JOHN DK39 DOE's grandmother.  Barto proceeded to perform a full-body examination, once again with another unnecessarily prolonged genital exam.

391.   As a result of the abuse by Barto, JOHN DK39 DOE, upon learning that he was one of Barto's victim as a young child, has suffered emotional distress, including, but not limited to embarrassment, shame, guilt, trust issues, and other psychological damages. JOHN DK39 DOE suffers from anxiety, and he also has an intense fear of doctors that resulted in conflict between JOHN DK39 DOE and his family whenever he had to visit a physician throughout his childhood.

392.   At all relevant times stated herein, JOHN DK39 DOE was too young to give lawful consent to any sexual contact.  Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification, in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for these failures the physical and emotional harm here alleged, would not have occurred.  At the time of this Complaint's filing, JOHN DK39 DOE is under the age of 30.

### JANE AW40 DOE
**(vs. Defendants Barto, Laurel, Conemaugh, & DLP)**

393.   Utilizing his position of trust, power, and control, Barto, while acting as her pediatrician, exploited JANE AW40 DOE.  This exploitation included, but is not limited to, Barto's sexual abuse of JANE AW40 DOE between 2012 and in or around 2017.

394.   JANE AW40 DOE was born on April 12, 2012, at Conemaugh Memorial Medical Center, located at 320 Main Street, in Johnstown, Pennsylvania. Shortly after her discharge from Conemaugh's Neonatal Intensive Care Unit (NICU), JANE AW40 DOE's mother took her to Laurel Pediatric at 323 Budfield Street in Johnstown, Pennsylvania. There, JANE AW40 DOE was seen by Barto, who informed JANE AW40 DOE's parents that he saw JANE AW40 DOE on numerous nights in the Conemaugh NICU.

395.   During JANE AW40 DOE's examinations, between 2012 and 2017, Barto would sit uncomfortably close to JANE AW40 DOE's mother, intertwining his legs with hers, and sitting JANE AW40 DOE between them.  During every appointment, Barto conducted a full-body examination of JANE AW40 DOE, including a genital exam. Whenever an attendant nurse was in the room, Barto would ensure that the nurse's back faced Barto.  Occasionally, the attendant was a nursing student.

396.   JANE AW40 DOE does not recall Barto ever wearing gloves while examining JANE AW40 DOE, including the genital exam.   Following each exam, Barto would continue to hold JANE AW40 DOE on his lap, pulling her closely against his chest, crossing his arms across JANE AW40 DOE's torso, and placing a hand on each of JANE AW40 DOE's thighs.   In this position, Barto would then spin JANE AW40 DOE on his chair. Both JANE AW40 DOE and her mother would feel uncomfortable, but Barto continued to hold JANE AW40 DOE until she and her mother left the appointment.

397.   Throughout these examinations, Barto often told stories to JANE AW40 DOE's mother, particularly about his memories of her husband when he was a little boy growing up in Johnstown.   JANE AW40 DOE's mother felt Barto was showcasing his personal relationship with her husband's family to foster trust and mitigate suspicion of his misconduct towards JANE AW40 DOE.

398.   When JANE AW40 DOE was around 4 years old, in or around 2016, she experienced appendicitis.   Barto was not on-call when JANE AW40 DOE's father rushed her to Conemaugh.   Barto visited JANE AW40 DOE in the hospital, during his off-hours. Barto conducted a full body examination, including, again, an unnecessary examination of JANE AW40 DOE's genitals.

399.   In or around 2017, JANE AW40 DOE, then 5 years old, was seen by Barto at Laurel Pediatric, due to her symptoms of strep throat.   Barto once again conducted an unnecessary full-body examination of JANE AW40 DOE, including pulling down her pants and spreading her labia.

400.   Upon returning home, JANE AW40 DOE's father asserted to JANE AW40 DOE's mother that JANE AW40 DOE would no longer be visiting Barto.   On subsequent appointments at Laurel Pediatric, JANE AW40 DOE's parents would insist that their daughter see another physician.   No one at Laurel Pediatric made any attempt to investigate or even inquire further as to the reason for this request.

401.   JANE AW40 DOE's mother estimates that between 2012 and 2017, JANE AW40 DOE was seen by Barto between eight and twelve times per year, or between 40 and 60 times in total.

402.     As a result of the abuse by Barto, JANE AW40 DOE fears visiting the doctor, never wanting to return for a physical examination after her final appointment with Barto in or around 2017.   JANE AW40 DOE now begs her parents to not be seen by a "boy doctor." Whenever JANE AW40 DOE sees a male physician, her parents must console her and affirm that they will not "touch you there" and will "just look at what is hurting." Due to her young age, the full scope of Plaintiff JANE AW40 DOE's emotional damages has yet to be determined and will be the subject of further expert testimony and opinion.

403.     At all relevant times stated herein, JANE AW40 DOE was too young to give lawful consent to any sexual contact.   Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification, in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for these failures the physical and emotional harm here alleged, would not have occurred.   At the time of this Complaint's filing, JANE AW40 DOE is under the age of 30.

<u>JANE AW41 DOE</u>
(vs. Defendants Barto, Laurel, Conemaugh, & DLP)

404.     Utilizing his position of trust, power, and control, Barto, while acting as her pediatrician, exploited JANE AW41 DOE.   This exploitation included, but is not limited to, Barto's sexual abuse of JANE AW41 DOE in 2014 and in or around 2017.

405.     JANE AW41 DOE was born on February 4, 2014, at Conemaugh Memorial Medical Center, located at 320 Main Street, in Johnstown, Pennsylvania.   JANE AW41 DOE's mother is informed and believes that Barto examined JANE AW41 DOE during JANE AW41 DOE's mother's post-delivery stay at Conemaugh.

406.    During JANE AW41 DOE's examinations, between 2014 and 2017, Barto would sit uncomfortably close to JANE AW41 DOE's mother, intertwining his legs with hers.  Barto would position JANE AW41 DOE between them.  Barto would conduct a full-body examination of JANE AW41 DOE, including a genital examination.  Whenever a nurse was in the room, Barto would ensure that the nurse's back faced Barto.

407.    JANE AW41 DOE's mother does not recall Barto ever wearing gloves while examining JANE AW41 DOE, including during genital exams.  Following the exam, Barto would continue to hold JANE AW41 DOE in his lap, pulling JANE AW41 DOE tightly against his chest, crossing his arms across her torso, and placing a hand on each of JANE AW41 DOE's thighs.  In this position, Barto would then spin JANE AW41 DOE on his chair.  Both JANE AW41 DOE and her mother would feel uncomfortable, but Barto continued to hold JANE AW41 DOE until she and her mother left the appointment.

408.    Throughout these examinations, like during Barto's examinations of JANE AW41 DOE's sister (Jane AW40 Doe), Barto often told stories to JANE AW41 DOE's mother, showcasing his relationship with her husband's family.  JANE AW41 DOE's mother felt Barto was illustrating his personal relationship with her husband's family to foster trust and mitigate suspicion of Barto's misconduct.

409.    Following a genital examination of JANE AW41 DOE's sister (Jane AW40 Doe) for symptoms of strep throat in or around 2017, JANE AW41 DOE's parents no longer allowed Barto to see her during their visits to Laurel.  No one at Laurel Pediatric made any attempt to investigate or even inquire further as to the reason for this.

410.    JANE AW41 DOE's mother estimates that between 2014 and 2017, JANE AW41 DOE saw Barto in excess of a dozen times, with Barto conducting unnecessary genital examinations on every occasion.

411.    As a result of the abuse by Barto, JANE AW41 DOE has and will suffer emotional distress upon learning additional details of her sexual abuse by Barto. Due to her young age, the full scope of Plaintiff JANE AW41 DOE's emotional damages has yet to be determined and will be the subject of further expert testimony and opinion.

412.    At all relevant times stated herein, JANE AW41 DOE was too young to give lawful consent to any sexual contact. Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification, in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for these failures the physical and emotional harm here alleged, would not have occurred. At the time of this Complaint's filing, JANE AW41 DOE is under the age of 30.

## JANE JR42 DOE
### (vs. Defendants Barto, Laurel, Conemaugh, & DLP)

413.    Utilizing his position of trust, power, and control, Barto, while acting as her pediatrician, exploited JANE JR42 DOE. This exploitation included, but is not limited to, Barto's sexual abuse of JANE JR42 DOE between 2007 and in or around 2018.

414.    JANE JR42 DOE was born on August 10, 2007. Twelve hours after her birth, JANE JR42 DOE began experiencing health complications. JANE JR42 DOE was transported via ambulance to Conemaugh Hospital, located at 320 Main Street, in Johnstown, Pennsylvania. Barto personally treated JANE JR42 DOE in the ambulance and at Conemaugh's Neonatal Intensive Care Unit (NICU), where JANE JR42 DOE

received treatment from Barto for fluid buildup in her lungs, requiring vacuum extraction. Once JANE JR42 DOE was healthy enough to no longer rely on specialists in Pittsburgh, JANE JR42 DOE's mother took her to Laurel Pediatric at 323 Budfield Street in Johnstown, Pennsylvania, and Barto became JANE JR42 DOE's primary care physician.

415.    Beginning when JANE JR42 DOE was six months old, in or around 2008, Barto would routinely greet JANE JR42 DOE and her mother at her appointments with "This is my ECMO baby!" in reference to the extracorporeal membrane oxygenation (ECMO) procedure that JANE JR42 DOE received as a newborn, and Barto would emphasize how he saved JANE JR42 DOE's life.

416.    Between in or around 2008 and in or around 2018, Barto routinely gave full-body examinations to JANE JR42 DOE at every visit, which included inspection of JANE JR42 DOE's genitals, regardless of the reason for the visit.  JANE JR42 DOE's mother never recalls Barto wearing gloves during these examinations.

417.    Whenever an attendant nurse was in the room, the nurse would face the computer, away from Barto and never turning around.  Barto would also position himself between JANE JR42 DOE and her mother, obstructing her view of the examination.  After the examination, Barto would hold JANE JR42 DOE tightly against his body, his hand resting between her legs, and spin her around on his swivel chair.

418.    When JANE JR42 DOE was a baby and toddler, Barto would lift her legs and examine JANE JR42 DOE's vagina under the auspices that he was "checking her reflexes." He admonished JANE JR42 DOE's mother to put her in gymnastics, because "she's so flexible."

419.    In or around 2015, when JANE JR42 DOE was only approximately 8 years old, Barto gave JANE JR42 DOE what resembled a full gynecological examination.  He performed a breast examination, and Barto inspected her labia and vagina.  Barto stated that he had to check JANE JR42 DOE's tissue color in her genital region to see if she would begin her period soon.

420.    Thereafter, JANE JR42 DOE's mother would try to schedule an appointment with another physician at Laurel Pediatric whenever possible.  No one at Laurel Pediatric made any attempt to investigate or even inquire further as to why JANE JR42 DOE's mother openly avoided scheduling appointments with Barto.

421.    When Barto was the only physician available, he would perform the same full-body examinations, including breast and vaginal inspections, even when JANE JR42 DOE visited Laurel Pediatric for wholly unrelated reasons, including her asthma or a cold.

422.    Following Barto's arrest, JANE JR42 DOE's mother called Laurel Pediatric to ask about its plans for then-current patients of Barto.  JANE JR42 DOE's mother felt Laurel Pediatric did not have an answer, downplaying concern for former Barto patients.  Thereafter, JANE JR42 DOE left Laurel Pediatric.

423.    As a result of the abuse by Barto, JANE JR42 DOE feels uncomfortable visiting the doctor, and she is significantly more at ease when seeing a female physician.  JANE JR42 DOE's guidance counselors have noted JANE JR42 DOE's extreme passivity, need for assertiveness, and inability to say "no." She has trouble interacting with her peers and largely keeps to herself.  Due to her young age, the full scope of Plaintiff JANE JR42 DOE's emotional damages has yet to be determined and will be the subject of further expert testimony and opinion.

424.    At all relevant times stated herein, JANE JR42 DOE was too young to give lawful consent to any sexual contact.  Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification, in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for these failures the physical and emotional harm here alleged, would not have occurred.  At the time of this Complaint's filing, JANE JR42 DOE is under the age of 30.

### JANE AM43 DOE
(vs. Defendants Barto, Laurel, Conemaugh, & DLP)

425.    Utilizing his position of trust, power, and control, Barto, while acting as her pediatrician, exploited JANE AM43 DOE.  This exploitation included, but is not limited to, Barto's sexual abuse of JANE AM43 DOE between 2009 to in or around 2018.

426.    JANE AM43 DOE was born on July 10, 2009, at Conemaugh Hospital, located at 320 Main Street, in Johnstown, Pennsylvania.  JANE AM43 DOE saw Barto at Conemaugh before being discharged.  Shortly after JANE AM43 DOE's discharge from Conemaugh, JANE AM43 DOE's mother took her to Laurel Pediatric at 323 Budfield Street in Johnstown, Pennsylvania.  There, JANE AM43 DOE again began seeing Barto.

427.    During JANE AM43 DOE's examinations, between 2009 and in or around 2018, Barto would conduct a full-body examination on JANE AM43 DOE, including of her genitals, regardless of the purpose of her visit.  JANE AM43 DOE's mother recalls Barto even conducting a genital exam when JANE AM43 DOE visited Laurel Pediatric for a cold. Barto would open JANE AM43 DOE's legs and fondle her vagina.  A nurse was almost always present, facing the computer in the examination room with her back to Barto and

the examination. JANE AM43 DOE's mother recalls that Barto never wore gloves during any of these examinations.

428.     Throughout these examinations, JANE AM43 DOE's mother often felt uncomfortable about Barto's examination of her daughter's genitals, but JANE AM43 DOE's mother thought of Barto's full-body examinations, regardless of the visit's purpose, as Barto just being "thorough."

429.     In or around 2016, JANE AM43 DOE's grandmother would begin asking for any doctor but Barto when taking JANE AM43 DOE to visit Laurel Pediatric. No one at Laurel Pediatric made any attempt to investigate or even inquire further as to the reason for this request. If no other doctors were available, JANE AM43 DOE would see Barto, again being subjected to a full-body examination, including inspection of her genitals.

430.     As a result of the abuse by Barto, JANE AM43 DOE fears visiting the doctor, trying to run away and hide whenever she has a doctor's appointment. She is very distrustful of others, especially boys, and JANE AM43 DOE has been diagnosed with oppositional defiant disorder and ADHD. Due to her young age, the full scope of Plaintiff JANE AM43 DOE's emotional damages has yet to be determined and will be the subject of further expert testimony and opinion.

431.     At all relevant times stated herein, JANE AM43 DOE was too young to give lawful consent to any sexual contact. Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification, in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for

these failures the physical and emotional harm here alleged, would not have occurred.  At the time of this Complaint's filing, JANE AM43 DOE is under the age of 30.

JOHN JM44 DOE
(vs. Defendants Barto, Laurel, Conemaugh, & DLP)

432.    Utilizing his position of trust, power, and control, Barto, while acting as his pediatrician, exploited JOHN JM44 DOE.  This exploitation included, but is not limited to, Barto's sexual abuse of JOHN JM44 DOE from 2011 to in or around 2018.

433.    JOHN JM44 DOE was born on July 29, 2011, at Conemaugh Hospital, located at 320 Main Street, in Johnstown, Pennsylvania.  Shortly after his discharge from Conemaugh, JOHN JM44 DOE's mother took him to Laurel Pediatric at 323 Budfield Street in Johnstown, Pennsylvania.  There JOHN JM44 DOE began seeing Barto.

434.    During JOHN JM44 DOE's examinations, between 2011 and in or around 2018, Barto would conduct a full-body examination on JOHN JM44 DOE, including of his genitals, regardless of the purpose of his visit.  Barto would squeeze JOHN JM44 DOE's testicles until JOHN JM44 DOE began to sob.  JOHN JM44 DOE's mother even recalls Barto performing a full-body examination, including of JOHN JM44 DOE's genitals, during a visit to treat a cold.  During multiple appointments, Barto would ask JOHN JM44 DOE to stand up and bend over to touch his toes while not wearing any pants.  During the examinations, a nurse was almost always present, facing the computer in the examination room with the nurse's back to both Barto and the examination.  JOHN JM44 DOE's mother recalls that Barto never wore gloves during any of these examinations.

435.    In or around 2014 or 2015, Barto said that JOHN JM44 DOE needed to see a specialist in Pittsburgh, because the opening of his urethra was supposedly too small.  Barto said that JOHN JM44 DOE needed to have his urethral opening "stretched."  Barto

86

discussed this over several appointments and would spend extra time examining JOHN JM44 DOE's testicles and penis, including holding the shaft of JOHN JM44 DOE's penis and rolling it with both hands. Other doctors, however, said that as long as JOHN JM44 DOE did not have any pain during urination, he did not need to see a pediatric urologist or comparable specialist for further evaluation.

436.     Throughout these examinations, JOHN JM44 DOE's mother often felt uncomfortable about Barto's examination of her son's genitals, but JOHN JM44 DOE's mother thought of Barto's full-body examinations, regardless of the visit's purpose, as Barto being "thorough."

437.     As a result of the abuse by Barto, JOHN JM44 DOE has and will suffer emotional distress upon learning additional details of his sexual abuse by Barto. He emotionally shuts down during any conversations about his body and has difficulty socializing, keeping to himself when around other children. Due to his young age, the full scope of Plaintiff JOHN JM44 DOE's emotional damages has yet to be determined and will be the subject of further expert testimony and opinion.

438.     At all relevant times stated herein, JOHN JM44 DOE was too young to give lawful consent to any sexual contact. Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification, in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for these failures the physical and emotional harm here alleged, would not have occurred. At the time of this Complaint's filing, JOHN JM44 DOE is under the age of 30.

<u>JANE TL45 DOE</u>
(vs. Defendants Barto, Laurel, Conemaugh, & DLP)

439.    Utilizing his position of trust, power, and control, Barto, while acting as her pediatrician, exploited JANE TL45 DOE.  This exploitation included, but is not limited to, Barto's sexual abuse of JANE TL45 DOE between 2013 and in or around 2018.

440.    JANE TL45 DOE was born on November 2, 2013, at Conemaugh Hospital, located at 320 Main Street, in Johnstown, Pennsylvania.  Shortly after JANE TL45 DOE's discharge from Conemaugh, JANE TL45 DOE's mother took her to Laurel Pediatric at 323 Budfield Street in Johnstown, Pennsylvania.  There, JANE TL45 DOE began seeing Barto.

441.    During JANE TL45 DOE's visits to Laurel Pediatric, between 2013 and in or around 2018, Barto would conduct a full-body examination on JANE TL45 DOE, including of her genitals, regardless of the purpose of her visit.  Barto would spread open JANE TL45 DOE's legs and fondle her vagina.  A nurse was almost always present, facing the computer in the examination room with her back to Barto and examination.  JANE TL45 DOE's mother recalls that Barto never wore gloves during any of these examinations.

442.    Throughout these examinations, JANE TL45 DOE's mother often felt uncomfortable about Barto's examination of her daughter's genitals, but JANE TL45 DOE's mother thought of Barto's full-body examinations, regardless of the visit's purpose, as Barto being "thorough."

443.    In or around late 2017 to mid-2018, JANE TL45 DOE's mother and father took JANE TL45 DOE to visit Barto for bronchitis.  Barto took down her pants and fondled her vagina.  Following this examination, JANE TL45 DOE's mother called the main office at Laurel Pediatric, speaking to a woman named "Robin." JANE TL45 DOE's mother asked whether it was protocol to pull apart a child's labia when being evaluated for

bronchitis. Robin stated, "absolutely not." JANE TL45 DOE's mother was so upset that she hung up the phone. Following this incident, neither JANE TL45 DOE nor her siblings (Jane AM43 Doe and John JM44 Doe) were taken to see Barto. No one at Laurel Pediatric made any attempt to investigate or even inquire further as to the reason for this.

444.    As a result of the abuse by Barto, JANE TL45 DOE fears visiting the doctor, particularly male doctors. JANE TL45 DOE recently required treatment in the emergency room for a vaginal abscess. She began crying hysterically upon learning that a male doctor would examine her. JANE TL45 DOE has trust issues, and she refuses to allow anyone to dress her but her mother. Due to her young age, the full scope of Plaintiff JANE TL45 DOE's emotional damages has yet to be determined and will be the subject of further expert testimony and opinion.

445.    At all relevant times stated herein, JANE TL45 DOE was too young to give lawful consent to any sexual contact. Barto's abuse was, in fact, illegal, unwarranted, and done for his sexual gratification, in conjunction with his, and the other named Defendants' simultaneous and repeated failures to exercise specialized medical judgment, adhere to the standard of care, and/or appropriately diagnose, treat, and care for Plaintiff; and but-for these failures the physical and emotional harm here alleged, would not have occurred. At the time of this Complaint's filing, JANE TL45 DOE is under the age of 30.

**COUNT I**
**CHILDHOOD SEXUAL ABUSE AND VICARIOUS LIABILITY**
**(Plaintiffs v. Defendants Laurel Pediatric, Johnstown, Conemaugh and/or DLP, and Barto)**

446.    Plaintiffs incorporate by reference each and every allegation from all of the proceeding paragraphs of this Complaint as though fully set forth within this Count.

447.   At all relevant times alleged herein and during his employment with Laurel Pediatric, Johnstown, Conemaugh, and DLP, Barto engaged in unpermitted, harmful, and offensive sexual conduct and contact upon the persons of Plaintiffs, in violation of Pennsylvania state law.  This conduct was undertaken while Barto was, at all times, under the supervision and authority of Laurel Pediatric and Johnstown, as well as under the supervision and authority of Conemaugh and DLP, where he regularly saw patients, and held privileges.

448.   The conduct by Barto was committed during the course and scope of his employment with co-defendants Laurel Pediatric, Johnstown, and DLP, who are also vicariously liable for his conduct and the abuse suffered by Plaintiffs.

449.   Prior to the abuse of Plaintiffs, Defendants Laurel Pediatric, Johnstown, Conemaugh, and DLP knew or should have known that Barto posed an unreasonably high risk of harm to minors, including Plaintiffs.  **Their failures to prevent Barto's access to minor patients were 'acts,' and 'omissions' by licensed medical professionals, that required an exercise of medical judgment and observance of their special duty of care to each of the named Plaintiffs, which they breached.**

450.   As a result of the acts and omissions by Defendants, Plaintiffs suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life; have sustained and will continue to sustain loss of earnings and earning capacity; and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy and counseling.

WHEREFORE, Plaintiffs demand judgment for compensatory and punitive damages against each Defendant, jointly and severally, together with interest and costs of suit and in excess of any jurisdictional amount requiring compulsory arbitration.

## COUNT II
## NEGLIGENCE – HIRING/RETENTION
### (Plaintiffs v. Defendants Laurel Pediatric, Johnstown, Conemaugh and/or DLP)

451.    Plaintiffs incorporate by reference each and every allegation from all of the proceeding paragraphs of this Complaint as though fully set forth within this Count.

452.    Laurel Pediatric, Johnstown, Conemaugh and DLP each had a duty to protect minor Plaintiffs when they were entrusted to physicians within their care by Plaintiffs' parents. Plaintiffs' care, welfare, and/or physical custody were temporarily entrusted to Laurel Pediatric, Johnstown, Conemaugh and DLP when Plaintiffs received evaluations under the auspices of these entities' provision of medical services. Laurel Pediatric, Johnstown, Conemaugh, and DLP solicited, and voluntarily accepted, the entrusted care of Plaintiffs. Consequently, Laurel Pediatric, Johnstown, Conemaugh, and DLP owed Plaintiffs, minor children, special duties of care, in addition to a duty of ordinary care, and owed Plaintiffs the high duty of care to protect children from harm that is owed to them by adults supervising children within their care and control. Plaintiffs were owed by each of Laurel Pediatric, Johnstown, Conemaugh, and DLP, a duty to be protected from harm inflicted upon the Plaintiffs by Barto when Plaintiffs received services from these entities, given while Plaintiffs were on their premises.

453.    Defendants Johnstown and Laurel Pediatric, by and through its agents, servants and/or employees, had actual knowledge, knew, or reasonably should have known of Barto's dangerous and exploitative propensities and/or that Barto was an unfit agent because of his sexual interest in children. It was reasonably foreseeable that if Laurel Pediatric and/or

Johnstown did not adequately exercise or provide the duty of care owed to children in its control and care, including but not limited to Plaintiffs, the children entrusted to the care of Johnstown and Laurel Pediatric would be vulnerable to sexual abuse by Johnstown and Laurel Pediatric agents, servants and/or employees, including Barto.

454.   Defendant Conemaugh and/or DLP, by and through its agents, servants and/or employees, had actual knowledge, knew or reasonably should have known of Barto's dangerous and exploitative propensities and/or that Barto was an unfit agent because of his sexual interest in children.  It was reasonably foreseeable that if Conemaugh did not adequately exercise or provide the duty of care owed to children within its control and care, including but not limited to Plaintiffs, the children entrusted to the care of Conemaugh would be vulnerable to sexual abuse by Conemaugh agents, servants and/or employees, including Barto.

455.   Defendants Laurel Pediatric, Johnstown, Conemaugh, and DLP each breached the duty of care owed to the minor Plaintiffs by failing to protect them from foreseeable harm of sexual misconduct of its employees or personnel, including Barto.  **Each of these failures were 'acts,' and 'omissions' by licensed medical professionals, that required an exercise of medical judgment and observance of their special duty of care to each of the named Plaintiffs, which they breached.**

456.   As a result of the above-described conduct, Plaintiffs have suffered, and continue to suffer, great pain of mind and body, shock, emotional distress discomfort, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life; have sustained and will

continue to sustain loss of earnings and earning capacity; and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

WHEREFORE, Plaintiffs demand judgment for compensatory and punitive damages against each Defendant, jointly and severally, together with interest and costs of suit and in excess of any jurisdictional amount requiring compulsory arbitration.

## COUNT III
## NEGLIGENT SUPERVISION
**(Plaintiffs v. Defendants Laurel Pediatric, Johnstown, Conemaugh, and DLP)**

457.   Plaintiffs incorporate by reference each and every allegation from all of the proceeding paragraphs of this Complaint as though fully set forth within this Count.

458.   Laurel Pediatric, Johnstown, Conemaugh, and DLP each had a duty to provide reasonable supervision of their employee and agent, Defendant Barto, when he interacted with minor patients and to follow up on any reports of misconduct.

459.   It was reasonably foreseeable that those employees and agents of Laurel Pediatric, Johnstown, and/or Conemaugh and/or DLP who have a sexual interest in children, including Barto, would sexually abuse children, including the Plaintiffs, unless properly supervised.

460.   Laurel Pediatric, Johnstown, and/or Conemaugh and/or DLP, by and through each entity's respective agents, servants and/or employees, had actual knowledge, knew, or reasonably should have known, of Barto's dangerous and exploitative propensities and/or that Barto was an unfit agent due to his sexual interest in children.

461.   Despite such knowledge, Defendants Laurel Pediatric, Johnstown, Conemaugh, and DLP each breached their duty to provide reasonable supervision of Barto.  These failures enabled Barto, who was in a position of ready access to children, to sexually abuse Plaintiffs. **Each of these failures were 'acts,' and 'omissions' by licensed medical professionals, that**

**required an exercise of medical judgment and observance of their special duty of care to each of the named Plaintiffs, which they breached.**

462.    At all times relevant hereto, including, but not limited to, during the sexual abuse of minor patients, Barto was acting in the course and scope of his employment with Defendants Laurel Pediatric, Johnstown, Conemaugh, and DLP as their agent, apparent agent, servant and/or employee.

463.    As a result of the above-described conduct, Plaintiffs have suffered, and continue to suffer, great pain of mind and body, shock, emotional distress discomfort, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life; have sustained and will continue to sustain loss of earnings and earning capacity; and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

WHEREFORE, Plaintiffs demand judgment for compensatory and punitive damages against each Defendant, jointly and severally, together with interest and costs of suit and in excess of any jurisdictional amount requiring compulsory arbitration.

## ~~COUNT IV~~
### ~~PREMISES LIABILITY~~
#### ~~(Plaintiffs v. Defendants Laurel Pediatric, Johnstown, and DLP Conemaugh)~~

464.    ~~Plaintiffs incorporate by reference each and every allegation from all of the proceeding paragraphs of this Complaint as though fully set forth within this Count.~~

465.    ~~Defendants Laurel Pediatric, Johnstown and DLP Conemaugh each owed a duty to Plaintiffs.~~

466.    By holding its premises or functions open to the public and inviting Plaintiffs onto its premises or functions for the purposes of business activities relating to pediatrics, Laurel Pediatric, Johnstown and DLP Conemaugh each assumed a duty of care to Plaintiffs as their business invitees.

467.    By allowing Defendant Barto to represent himself as physician affiliated with Laurel Pediatric, who saw patients on Laurel Pediatric's premises, Laurel Pediatric assumed a duty to Plaintiffs.

468.    Laurel Pediatric, Johnstown and DLP Conemaugh each assumed a duty to Plaintiff that each would take reasonable precaution against harmful third-party conduct on its premises, or relating to its business, that it could reasonably anticipate.

469.    Laurel Pediatric, Johnstown and DLP Conemaugh each breached this duty when it failed to exercise reasonable care to discover that Defendant Barto utilized its premises and/or its public image relating to pediatric business to commit sexual abuse against minor children.

470.    Laurel Pediatric, Johnstown, and DLP Conemaugh each also breached its duty when it failed to exercise reasonable care in giving adequate warning to Plaintiffs that Barto was a danger to children.

471.    As a result of the above-described conduct, Plaintiffs have suffered, and continue to suffer, great pain of mind and body, shock, emotional distress discomfort, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life; have sustained and will continue to sustain loss of earnings and earning capacity; and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

~~WHEREFORE, Plaintiffs demand judgment for compensatory and punitive damages against each Defendant, jointly and severally, together with interest and costs of suit and in excess of any jurisdictional amount requiring compulsory arbitration.~~

## COUNT V
## NEGLIGENT MISREPRESENTATION
**(Plaintiffs v. Defendants Laurel Pediatric, Johnstown, Conemaugh, and DLP)**

472.   Plaintiffs incorporate by reference each and every allegation from all of the proceeding paragraphs of this Complaint as though fully set forth within this Count.

473.   Laurel Pediatric, Johnstown, Conemaugh, and DLP, by and through its officials, each represented to Plaintiffs and their families that Barto did not have a history of molesting children.  Laurel Pediatric, Johnstown, Conemaugh, and DLP also represented to Plaintiffs and their families that Barto was not a danger to children.  Laurel Pediatric, Johnstown, Conemaugh, and DLP also represented to Plaintiffs and their families that each had taken reasonable precautions to ensure that children under their medical care and on their premises would be safe.

474.   Each of these representations were material.  **Each of these representations (concurrently 'acts,' and 'omissions') involved a degree of specialized knowledge and skill by licensed medical professionals, that required an exercise of medical judgment and observance of their special duty of care to each of the named Plaintiffs, which they breached.**

475.   In addition to the representations being made directly to Plaintiffs, Laurel Pediatric, Johnstown, Conemaugh, and DLP through their administration, personnel, agents, and/or employees, made these representations with knowledge and intent that they would be communicated to the minor Plaintiffs and their parents/caregivers.  Laurel Pediatric, Johnstown, Conemaugh, and DLP also had reason to believe that the representations made to Plaintiffs and

their parents/caregivers would influence their willingness to patronize Laurel Pediatric, Johnstown, Conemaugh, and DLP and, by extension, minor Plaintiffs' amount and time spent alone with Defendant Barto, Barto's access to Plaintiffs, and Barto's ability to molest Plaintiffs.

476.    Laurel Pediatric, Johnstown, Conemaugh, and DLP's representation to Plaintiff JANE KW3 DOE started in or before 2007 and continued as representations until 2018.

477.    Laurel Pediatric, Johnstown, Conemaugh, and DLP's representation to Plaintiffs JANE KK9 DOE and JANE NC6 DOE started in or before 2006 and continued as representations until 2018.

478.    Laurel Pediatric, Johnstown, Conemaugh, and DLP's representation to Plaintiffs JANE ET15 DOE and JOHN PT16 DOE started in or before 2016 and continued as representations until 2018.

479.    Laurel Pediatric, Johnstown, Conemaugh, and DLP's representation to Plaintiffs JANE SW7 DOE started in or before 1993 and continued as representations until 2018.

480.    Barto had a history of sexually molesting children.  Barto was a constant danger to children.  Laurel Pediatric, Johnstown, Conemaugh, and DLP did not take any reasonable precautions to ensure that the children within their care would be safe.

481.    Laurel Pediatric, Johnstown, Conemaugh, and DLP should have known that its representations were false.

482.    Laurel Pediatric, Johnstown, Conemaugh, and DLP owed a duty of care to Plaintiffs, because each should have known that Barto would have access to children, including Plaintiffs, should have known that Barto was a danger to children, should have known that Barto had molested children before molesting Plaintiffs, and should have known that parents and children would place the utmost trust in Barto.

483.    Laurel Pediatric, Johnstown, Conemaugh, and DLP, through their administration, personnel, agents, and/or employees, in acts separate from and before its representation, failed to use ordinary care in making the representation or in ascertaining the facts related to Barto. Laurel Pediatric, Johnstown, Conemaugh, and DLP reasonably should have foreseen that its representations would subject Plaintiffs to an unreasonable risk of harm.

484.    Laurel Pediatric, Johnstown, Conemaugh, and DLP failed to use ordinary care to determine Barto's history of molesting children and whether he was safe to work with children before either entity made its representations about Barto.

485.    Laurel Pediatric, Johnstown, Conemaugh, and DLP's failures include but are not limited to: failure to ask Barto whether he molested children or whether there were any credible bases for concern, failure to investigate Barto's interest in children, failure to implement and/or maintain a sufficient system to determine whether Barto molested children, failure to train Barto regarding his conduct with patients, failure to train its employees and/or agents to properly identify signs of child molestation by fellow employees, and failure to investigate warning signs about Barto, including but not limited to the aftermath of his medical license suspension in 2000 following allegations that Barto had inappropriately touched two minor girls. Laurel Pediatric, Johnstown, Conemaugh, and DLP failed to institute reasonable procedures, policies, and/or rules regarding the monitoring and supervision of children under the care of its personnel, employees, and/or agents, including Barto.

486.    Plaintiffs and their parents/caregivers believed and justifiably relied upon Laurel Pediatric, Johnstown, Conemaugh, and DLP's representation, causing them to endure sexual molestation and suffer the damages described herein.

487.    As a result of the above-described conduct, Plaintiffs have suffered, and continue to suffer, great pain of mind and body, shock, emotional distress discomfort, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life; have sustained and will continue to sustain loss of earnings and earning capacity; and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

WHEREFORE, Plaintiffs demand judgment for compensatory and punitive damages against each Defendant, jointly and severally, together with interest and costs of suit and in excess of any jurisdictional amount requiring compulsory arbitration.

### ~~COUNT VI~~
### ~~NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS~~
### ~~(Plaintiffs v. Defendants Laurel Pediatric, Johnstown, Conemaugh, and DLP)~~

488.    ~~Plaintiffs incorporate by reference each and every allegation from all of the proceeding paragraphs of this Complaint as though fully set forth within this Count.~~

489.    ~~By employing Barto, by choosing to place Barto in a position wherein he would work directly and/or unsupervised with children, by allowing Barto to use their facilities for pediatric services, where he accessed and sexually abused numerous children in front of their parents, and caused Plaintiffs to be sexually abused as children, Laurel Pediatric, Johnstown, Conemaugh, and DLP negligently placed Plaintiffs in danger of bodily harm and caused Plaintiffs' parents to suffer extreme emotional distress as a result.~~

490.    ~~Laurel Pediatric, Johnstown, Conemaugh, and DLP's repeated failures in employing and continuing to employ Barto, holding out its premises as a safe environment for children, despite having reason to know of the potential dangers to children, thereby subjected~~

Plaintiffs to sexual abuse and harassment at the hands of Barto; in many cases the abuse was witnessed first-hand by the parents.

491.   By employing Barto to work unsupervised with children and/or allowing him to use their facilities for pediatric services, Laurel Pediatric, Johnstown, Conemaugh, and DLP subjected Plaintiffs to sexual abuse and harassment at the hands of Barto by allowing him to have ready, unfettered access to minor patients with whom to gratify his prurient desires, including Plaintiffs.

492.   Plaintiffs and their parents suffered severe emotional distress, including severe mental anguish, due to Laurel Pediatric, Johnstown, Conemaugh, and DLP's negligence and extreme recklessness.

WHEREFORE, Plaintiffs demand judgment for compensatory and punitive damages against each Defendant, jointly and severally, together with interest and costs of suit and in excess of any jurisdictional amount requiring compulsory arbitration.

## COUNT VII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**(Plaintiffs v. Defendants Laurel Pediatric, Johnstown, Conemaugh and/or DLP, and Barto)**

493.   Plaintiffs incorporate by reference each and every allegation from all of the proceeding paragraphs of this Complaint as though fully set forth within this Count.

494.   By employing Barto, by choosing to place Barto in a position wherein he would work directly and/or unsupervised with children, by allowing Barto to use their facilities for pediatric services, where he accessed and sexually abused numerous children, and caused Plaintiffs to be sexually abused as children, Laurel Pediatric, Johnstown, Conemaugh, and DLP acted with extreme and outrageous conduct, which intentionally and/or recklessly caused severe emotional distress and bodily harm to Plaintiffs.

495.    Laurel Pediatric, Johnstown, Conemaugh, and DLP's representation to Plaintiffs started in or before 1990 and continued as representations until 2018, and Laurel Pediatric, Johnstown, Conemaugh, and DLP's conduct in employing Barto, holding out its premises as a safe environment for children, despite having reason to know of the potential dangers to children, and thereby subjecting Plaintiffs to sexual abuse and harassment by Barto, collectively constituted extreme and outrageous conduct. This conduct was atrocious and transcended all bounds of decency, such that this conduct would be utterly intolerable in a civilized society.

496.    Laurel Pediatric, Johnstown, DLP, and Conemaugh acted intentionally and/or recklessly in employing Barto to work unsupervised with children and/or allowing him to use their facilities for pediatric services.  These actions subjected Plaintiffs to sexual abuse and harassment by Barto by allowing him to ready, unfettered access to children with whom to gratify his prurient desires, including Plaintiffs.

497.    Plaintiffs suffered severe emotional distress, including severe mental anguish, due to Laurel Pediatric, Johnstown, DLP, and Conemaugh, and Barto's intentional and/or reckless, extreme, and/or outrageous conduct.

WHEREFORE, Plaintiffs demand judgment for compensatory and punitive damages against each Defendant, jointly and severally, together with interest and costs of suit and in excess of any jurisdictional amount requiring compulsory arbitration.

## COUNT VIII
## INTENTIONAL MISREPRESENTATION
### (Plaintiffs v. Defendants Laurel Pediatric Johnstown and DLP Conemaugh)

498.    Plaintiffs incorporate by reference each and every allegation from all of the proceeding paragraphs of this Complaint as though fully set forth within this Count.

499.   ~~Laurel Pediatric, Johnstown, and DLP Conemaugh each affirmatively represented to Plaintiffs and their families that their facilities and programs were safe environments for children.~~

500.   ~~Laurel Pediatric, Johnstown and DLP Conemaugh each affirmatively represented to Plaintiffs and their families that they had sufficient policies and procedures in place to ensure that children were safe in their facilities and programs.~~

501.   ~~Laurel Pediatric, Johnstown, and DLP Conemaugh affirmatively represented to Plaintiffs and their families that Barto did not have a history of harassing and/or molesting children, that Laurel Pediatric, Johnstown, and DLP Conemaugh did not know or suspect that Barto had a history of molesting children and/or that Laurel Pediatric, Johnstown, and DLP Conemaugh did not know that Barto was a danger to children.~~

502.   ~~Each representation was material and false.~~

503.   ~~In addition to the representation being made directly to Plaintiffs, Laurel Pediatric Johnstown and DLP Conemaugh, through its officials, made these representations with knowledge and intent that they would be communicated to the Plaintiffs through their parents/caregivers' words and actions.  Laurel Pediatric, Johnstown, and DLP Conemaugh also had reason to believe that the representations would influence the amount and type of time spent in close proximity with Barto, Barto's access to Plaintiffs, and Barto's ability to molest Plaintiffs.~~

504.   ~~Laurel Pediatric, Johnstown, and DLP Conemaugh's representation to Plaintiff Jane KW Doe started in or before 2007 and continued as representations until 2018.~~

505. ~~Laurel Pediatric, Johnstown, and DLP Conemaugh's representation to Plaintiffs Jane KK Doe and Jane NC Doe started in or before 2006 and continued as representations until 2018.~~

506. ~~Laurel Pediatric, Johnstown, and DLP Conemaugh's representation to Plaintiffs Jane ET Doe John PT16 Doe started in or before 2016 and continued as representations until 2018.~~

507. ~~Laurel Pediatric, Johnstown, and DLP Conemaugh's representation to Plaintiffs Jane SW Doe started in or before 1993 and continued as representations until 2018.~~

508. ~~Barto had a history of molesting children. Laurel Pediatric, Johnstown, and DLP Conemaugh should have known that Barto had a history of sexually molesting children and/or that posed a danger to children.~~

509. ~~Laurel Pediatric, Johnstown, and DLP Conemaugh knew or should have known that its facilities and programs were not safe environments for children.~~

510. ~~Plaintiffs justifiably relied upon Laurel Pediatric, Johnstown, and DLP Conemaugh's misrepresentations, which caused them to suffer harassment and sexual abuse by Barto as well as suffer other damages described herein.~~

511. ~~Laurel Pediatric, Johnstown, and DLP Conemaugh knew that its misrepresentations were false or at least were reckless without care of whether these representations were true or false.~~

512. ~~Laurel Pediatric, Johnstown, and DLP Conemaugh made the misrepresentations with the intent to deceive Plaintiffs and to induce them to act on the misrepresentations to their detriment.~~

513.    ~~Plaintiffs' injuries were proximately caused by their reliance on the representations.~~

514.    ~~As a result of the above-described conduct, Plaintiffs have suffered, and continue to suffer, great pain of mind and body, shock, emotional distress discomfort, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life; have sustained and will continue to sustain loss of earnings and earning capacity; and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.~~

~~WHEREFORE, Plaintiffs demand judgment for compensatory and punitive damages against each Defendant, jointly and severally, together with interest and costs of suit and in excess of any jurisdictional amount requiring compulsory arbitration.~~

## COUNT IX
## CIVIL CONSPIRACY TO PROTECT REPUTATION AND FINANCES
**(Plaintiffs v. Defendants Laurel Pediatric, Johnstown, Conemaugh and/or DLP, and Barto)**

515.    Plaintiffs incorporate by reference each and every allegation from all of the proceeding paragraphs of this Complaint as though fully set forth within this Count.

516.    Defendants Laurel Pediatric, Johnstown, Conemaugh and/or DLP, and Barto, along with individuals at Laurel Pediatric, Johnstown, Conemaugh, and DLP not currently named as defendants, acted with a common purpose, and conspired to protect their reputations and finances at the cost of endangering the welfare of children, including the Plaintiffs, in violation of Pennsylvania law.

517.    In Pennsylvania there is a cause of action for a civil claim when a combination of two or more persons do a lawful act by unlawful means.    Laurel Pediatric, Johnstown,

Conemaugh and/or DLP, and Barto conspired to do a lawful act of protecting their reputations and finances but did so through unlawful means of fraudulently failing to disclose that their intentional acts placed plaintiffs in harm's way and risked additional harms later in life.

518.    Plaintiffs have standing to bring this claim, because they were, collectively and individually, the children who were sexually abused as a result of this conspiracy to protect Laurel Pediatric, Johnstown, Conemaugh and/or DLP, and Barto's reputations and finances.

519.    Individuals at Laurel Pediatric, Johnstown, Conemaugh, and DLP, and Barto, each had or should have had information about Barto's sexual interest in children but maintained silence, along with Barto.

520.    Individuals at Laurel Pediatric, Johnstown, Conemaugh, and DLP each had information or should have had information that its facilities and programs were not safe environments for children and that they lacked adequate measure to protect children.  Despite this, each entity-maintained silence, so as to enable Barto to act on his sexual interest in children.

521.    The collective silence of various individuals in addition to the Defendants constituted overt acts committed in pursuance of the common purpose to endanger the welfare of children protecting each defendants' reputation and finances.

522.    Defendants each concealed Barto's sexual interest in children from Plaintiffs, as well as concealed information about their unsafe environments, and/or their inadequate measure to protect children.

523.    This concealment directly injured Plaintiffs, because Laurel Pediatric, Johnstown, Conemaugh, and DLP's silence regarding unsafe environments and inadequate measures, prior incidents of sexual abuse by Barto, and the risk Barto represented, were hidden from Plaintiffs and their families.  **Each of these representations (concurrently 'acts,' and 'omissions')**

**involved a degree of specialized knowledge and skill by licensed medical professionals, that required an exercise of medical judgment and observance of their special duty of care to each of the named Plaintiffs, which they breached.** Barto was, therefore, able to gain intimate access to Plaintiffs to engage in numerous acts of sexual abuse as a result.

524.    This concealment also directly injured Plaintiffs, because the concealment by the Defendants and third persons created a false public impression that Barto did not pose a risk to children and, in fact, was a safe person, when he was not. It also created the impression that Laurel Pediatric, Johnstown, Conemaugh, and DLP operated as safe environments with adequate measures to protect children. This active concealment caused the Plaintiffs and their families to allow Defendant Barto to gain unsupervised access to the Plaintiffs and ultimately sexually abuse the Plaintiffs and others. These active concealments allowed Laurel Pediatric, Johnstown, Conemaugh and/or DLP, and Barto to protect their reputations and finances.

525.    When reports about Barto sexually abusing children were initially made, the reports were largely ignored, resulting in an insufficient investigation by Laurel Pediatric, Johnstown, Conemaugh, and DLP to ascertain if Barto had other victims of sexual misconduct, or continued his abuse.

526.    Instead of protecting children, including Plaintiffs, from sexual abuse by Barto, Defendants Laurel Pediatric, Johnstown, Conemaugh, and DLP, and third persons shielded Barto from criminal detection, attempted to shield Laurel Pediatric, Johnstown, Conemaugh, and DLP from financial liability, and attempted to protect their reputations rather than protecting children. These acts of shielding directly injured Plaintiffs, because Defendants' unsafe environment, inadequate child protection measures, and prior incidents of sexual abuse by Defendant Barto were hidden from Plaintiffs. Defendant Barto managed to gain unsupervised access to Plaintiffs

as a result.  In addition, Plaintiffs' statuses as victims of Barto was concealed, and no assistance or compensation was provided to them.  The concealment by the Defendants and others created a false public impression that Laurel Pediatric, Johnstown, Conemaugh, and DLP were safe for children, when they, in fact, were not.  This caused the Plaintiffs and, ultimately, the opportunity to sexually abuse the Plaintiffs.

527.   Said acts were committed with malice and with the intention of protecting Laurel Pediatric, Johnstown, Conemaugh, and DLP from the inevitable financial and reputational harm derived from employing and leaving minor patients in the care of a sexually abusive physician.

528.   As a result of the above-described conduct, Plaintiffs have suffered, and continue to suffer, great pain of mind and body, shock, emotional distress discomfort, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life; have sustained and will continue to sustain loss of earnings and earning capacity; and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

WHEREFORE, Plaintiffs demand judgment for compensatory and punitive damages against each Defendant, jointly and severally, together with interest and costs of suit and in excess of any jurisdictional amount requiring compulsory arbitration.

## COUNT X
## MEDICAL NEGLIGENCE
**(Plaintiffs v. Defendants Laurel Pediatric, Johnstown, Conemaugh and/or DLP, and Barto)**

529.   Plaintiffs incorporate by reference each and every allegation from all of the proceeding paragraphs of this Complaint as though fully set forth within this Count.

530.    Plaintiffs consulted with Defendants Laurel Pediatric, Johnstown, Conemaugh and/or DLP, and Barto, and each of them, inclusive and each of them, to receive examination, diagnosis, treatment, and/or receive medical care from the nurses, staff, and physician assistant's along with their pediatrician, Barto.

531.    Defendants Laurel Pediatric, Johnstown, Conemaugh and/or DLP, and Barto, inclusive and each of them, owed a duty to Plaintiffs to exercise the degree of knowledge, skill, prudence, and diligence as other members of their respective professions commonly possess and exercise.

532.    Defendants Laurel Pediatric, Johnstown, Conemaugh and/or DLP, and Barto, inclusive and each of them, breached their respective duties to Plaintiffs in their respective examinations.

533.    Defendants Laurel Pediatric, Johnstown, Conemaugh and/or DLP, and Barto, inclusive and each of them, saw, evaluated, and treated Plaintiffs between ~~2006~~ 1993 and 2016.

534.    Defendants Laurel Pediatric, Johnstown, Conemaugh and/or DLP, and Barto, inclusive and each of them, attempted to perform examinations and/or treatments on Plaintiffs.

535.    Defendants Laurel Pediatric, Johnstown, Conemaugh and/or DLP, and Barto, inclusive and each of them, failed to perform these treatments at the level meeting the standard of care in this community.  Namely, Barto's molestation and abuse of Plaintiffs fell beneath the standard of care, causing severe injuries to Plaintiffs.   These injuries were completely preventable.  The failures by Defendants Laurel Pediatric, Johnstown, Conemaugh and/or DLP, and Barto, inclusive and each of them, to identify and avoid injuring Plaintiffs resulted in lasting injuries.   **Each of these failures were 'acts,' and 'omissions' by licensed medical**

**professionals, that required an exercise of medical judgment and observance of their special duty of care to each of the named Plaintiffs, which they breached.**

536.    As a result of the above-described conduct, Plaintiffs have suffered, and continue to suffer, great pain of mind and body, shock, emotional distress discomfort, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life; have sustained and will continue to sustain loss of earnings and earning capacity; and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

WHEREFORE, Plaintiffs demand judgment for compensatory and punitive damages against each Defendant, jointly and severally, together with interest and costs of suit and in excess of any jurisdictional amount requiring compulsory arbitration.

## COUNT XI
## ASSAULT
### (Plaintiffs v. Defendant Barto)

537.    Plaintiffs incorporate by reference each and every allegation from all of the proceeding paragraphs of this Complaint as though fully set forth within this Count.

538.    Defendant Barto's physical molestation and abuse of Plaintiffs was entirely unjustified and constitute intentional assaults upon Plaintiffs.

WHEREFORE, Plaintiffs demand judgment for compensatory and punitive damages against each Defendant, jointly and severally, together with interest and costs of suit and in excess of any jurisdictional amount requiring compulsory arbitration.

## COUNT XII
## BATTERY
### (Plaintiffs v. Defendant Barto)

539.   Plaintiffs incorporate by reference each and every allegation from all of the proceeding paragraphs of this Complaint as though fully set forth within this Count.

540.   Defendant Barto's physical molestation and abuse of Plaintiffs were entirely unjustified and constitutes an intentional battery upon Plaintiffs.

WHEREFORE, Plaintiffs demand judgment for compensatory and punitive damages against each Defendant, jointly and severally, together with interest and costs of suit and in excess of any jurisdictional amount requiring compulsory arbitration.

## COUNT XIII
## VIOLATIONS OF TITLE IX 20 U.S.C. §1681(a), et seq.
### (Defendants Conemaugh and DLP)

541.   Plaintiffs incorporate by reference each and every allegation from all of the proceeding paragraphs of this Complaint as though fully set forth within this Count.

542.   Plaintiffs are "persons" under the Title IX statutory language.

543.   Defendant DLP Healthcare d/b/a Duke Lifepoint, receives federal financial assistance for its education program and is therefore subject to the provisions of Title IX of the Education Act of 1972, 20 U.S.C.§1681(a), et seq.

544.   Defendant DLP Healthcare is required under Title IX to investigate allegations of sexual assault, sexual abuse, and sexual harassment.

545.   The U.S. Department of Education's Office of Civil Rights has explained that Title IX covers all programs of a school, and extends to sexual harassment and assault by employees, students and third parties.

546.   Defendant Barto's actions and conduct were carried out under one of Defendant DLP Healthcare's programs, which provides medical treatment to the public.

547.    Defendant Barto's conduct and actions toward Plaintiffs, that being nonconsensual digital vaginal penetration, touching of Plaintiffs vaginal area, and touching of Plaintiffs breasts constitutes sex discrimination under Title IX.

548.    As of at least the early 1990s and/or 2000, an "appropriate person" at Defendant DLP Healthcare had actual knowledge of the sexual assault, abuse, and molestation committed by Defendant Barto.

549.    Specifically, DLP Healthcare were notified about Defendant Barto's sexual abuse and molestation by JANE SW7 DOE in the early 1990s after her mother reported her abuse to another pediatrician at the Lee Campus of Conemaugh Memorial.

550.    Furthermore, the Medical Board's Disciplinary actions taken in and around 2000, contained ample notice that a Title IX duty to investigate, and prevent further abuses by Barto was triggered however there is no indication that DLP Healthcare ever conducted any investigation or took any action to comply with this statutory duty.

551.    Defendant DLP Healthcare acted with deliberate indifference to known acts of sexual assault, abuse, and molestation on its premises by:

   a.    failing to investigate and address JANE SW7 DOE'S allegations as required by Title IX;

   b.    failing to adequately investigate and address the 2000 complaint resulting in a license suspension and other disciplinary action with respect to Defendant Barto's conduct; and,

   c.    failing to institute corrective measures to prevent Defendant Barto from violating and sexually abusing other students and individuals, including minors.

552.    Defendant DLP Healthcare acted with deliberate indifference as its lack of response to the allegations of sexual assault, abuse, and molestation was clearly unreasonable in light of the known circumstances, Defendant Barto's actions with minor patients, and his continued access to minor patients.

553.     Defendant DLP Healthcare's failure to promptly and appropriately investigate, remedy, and respond to the sexual assaults after they received notice subjected Plaintiffs to further harassment and a sexually hostile environment, effectively denying them all access to effective medical care.

554.     As a direct and/or proximate result of Defendant DLP Healthcare's actions and/or inactions, Plaintiffs have suffered and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

WHEREFORE, Plaintiffs demand judgment for compensatory and punitive damages against each Defendant, jointly and severally, together with interest and costs of suit and in excess of any jurisdictional amount requiring compulsory arbitration.

## COUNT XIV
## CORPORATE NEGLIGENCE (AKA: Negligent Credentialing)
### (Plaintiffs v. Defendants Laurel Pediatric, Johnstown, Conemaugh, and/or DLP)

555.     Plaintiffs incorporate by reference each and every allegation from all of the proceeding paragraphs of this Complaint as though fully set forth within this Count.

556.     Laurel Pediatric, Johnstown, Conemaugh, and DLP each had a duty to ensure the patient's safety and well-being while under their care.  To ensure patient safety Laurel Pediatric, Johnstown, Conemaugh, and DLP had four distinct duties: (1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) a duty to select and retain only competent physicians; (3) a duty to oversee all persons who practice medicine within its

walls as to patient care; and (4) a duty to formulate, adopt, and enforce adequate rules and policies to ensure quality care for the patients.

557.   Laurel Pediatric, Johnstown, Conemaugh, and DLP, by and through each entity's respective agents, servants and/or employees, had actual knowledge, knew, or reasonably should have known, of Barto's dangerous and exploitative propensities and/or that Barto was unfit to practice due to his sexual interest in children.  Laurel Pediatric, Johnstown, Conemaugh, and DLP knew or should have known that not investigating or addressing Barto's sexual interest in children breached all four above listed duties and the breach of these duties harmed and injured minor patients.

558.   Laurel Pediatric, Johnstown, Conemaugh, and DLP's failure to implement and enforce adequate policies as well as their inactivity in responding to parents' reported concerns breached their duties to ensure: (1) the maintenance of a safe facility, (2) the selection and retention of competent physicians, (3) proper oversight over physicians' on-site patient care, and (4) the formulation and adoption of rules to ensure quality care for the patients.  **Each of these failures were 'acts,' and 'omissions' by licensed medical professionals, that required an exercise of medical judgment and observance of their special duty of care to each of the named Plaintiffs, which they breached.**

559.   Laurel Pediatric, Johnstown, Conemaugh, and DLP's failures include but are not limited to: failure to implement and enforce policies ensuring the selection and retention of competent physicians, failure ascertain during the hiring and credentialing process if Barto had molested children or whether there were any credible bases for concern, failure to investigate Barto's interest in children, failure to implement and/or maintain a sufficient system to determine whether Barto molested children, failure to train Barto regarding his conduct with patients,

failure to train its employees and/or agents to properly identify signs of child molestation by fellow employees, and failure to investigate warning signs about Barto throughout his medical career, including but not limited to the aftermath of his medical license suspension in 2000 following allegations that Barto had inappropriately touched two minor girls.

560.    Laurel Pediatric, Johnstown, Conemaugh, and DLP failed to institute reasonable procedures, policies, health care provider bylaws, and/or rules regarding the monitoring and supervision of children under the care of its personnel, employees, and/or agents, including Barto. The failure to establish and enforce reasonable procedures, policies, health care provider bylaws, and/or rules allowed for Barto to be credentialed and recredentialed throughout his medical career.   Defendants' failure to establish and enforce reasonable procedures, policies, health care provider bylaws, and/or rules allowed Barto to conduct medical procedures outside the scope of what he was privileged to do for patient care based on the credentials granted to Barto's and Barto's past performance.

561.    Laurel Pediatric, Johnstown, Conemaugh, and DLP had a duty under 28 Pa. Code § 9.761 to establish a credentialing system with policies and procedures regarding initial credentialing and recredentialing at least every three years.   Section 9.761(a)(4) requires the recredentialing review examine the enrollee's quality assurance and satisfaction data.   Laurel Pediatric, Johnstown, Conemaugh, and DLP had duties under §9.761(a)(8) to establish policies and procedures evaluating the credentials of providers who may be accessed for obstetrical or gynecological care, and upon hearing reports that Barto was examining minor patients' vaginas should have recognized Barto was not properly credentialed to be privileged to provide such care.

562. Laurel Pediatric, Johnstown, Conemaugh, and DLP's failure to formulate, adopt, and enforce adequate rules, medical bylaws, and policies resulted in the continuous and systemic sexual abuse of minor patients on Laurel Pediatric, Johnstown, Conemaugh, and DLP's premises by one of their agents.

563. As a result of the above-described conduct, Plaintiffs have suffered, and continue to suffer, great pain of mind and body, shock, emotional distress discomfort, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life; have sustained and will continue to sustain loss of earnings and earning capacity; and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

WHEREFORE, Plaintiffs demand judgment for compensatory and punitive damages against each Defendant, jointly and severally, together with interest and costs of suit and in excess of any jurisdictional amount requiring compulsory arbitration.

Dalton & Associates, P.A.

Andrew C. Dalton, Esq.
Pa. Identification No. 315550
Megan N. Kinley, Esq.
Pa. Identification No. 328196
Cool Spring Meeting House
1106 West Tenth Street
Wilmington, DE 19806
(302) 652-2050
ADalton@BDaltonlaw.com
*Attorneys for Plaintiffs*

DATED:     ~~March 10, 2020~~
           **September 18, 2020**

DALTON & ASSOCIATES, P.A.
By:  Andrew C. Dalton, Esquire
Pa. Identification No. 315550
Megan N. Kinley, Esquire
Pa. Identification No. 328196
Cool Spring Meeting House
1106 West Tenth Street
Wilmington, DE  19806
(302) 652-2050
ADalton@BDaltonlaw.com

Attorneys for Plaintiffs

| | |
|---|---|
| JANE BR1 DOE; JANE JM2 DOE; JANE KW3 DOE; JANE AF4 DOE; JANE SN5 DOE; JANE NC6 DOE; JANE SW7 DOE; JOHN GL8 DOE; JANE KK9 DOE; JANE DD10 DOE; JANE TS11 DOE; | : <br> : <br> : <br> : <br> : <br> : |
| & | : |
| JANE KD DOE as Parent, Guardian, and Next Friend of JANE JD12 DOE a minor; JANE SM DOE as Parent, Guardian, and Next Friend of JOHN GM13 DOE a minor; JANE KP DOE as Parent, Guardian, and Next Friend of JANE HP14 DOE a minor; JANE RT DOE as Parent, Guardian and Next Friend of a minor JANE ET15 DOE and JOHN PT16 DOE minors; JOHN JK DOE and JANE MK DOE as Parents, Guardians, and Next Friends of JOHN LK17 DOE and JANE SK18 DOE minors; JOHN KE DOE and JANE AE DOE as Parents, Guardians, and Next Friends of JANE GE19 DOE and JOHN TE20 DOE minors; JANE KB DOE as Parent, Guardian, and Next Friend of JANE PB21 DOE a minor; JANE CT DOE as Parent, Guardian, and Next Friend of JANE ST23 DOE a minor, JANE JR DOE as Parent, Guardian, and Next Friend of JANE RR24 DOE a minor; | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |
| & | : |
| JANE MH25 DOE; JOHN AS26 DOE; JANE CW27 DOE; JANE MW28 DOE; | : <br> : |
| & | : |
| JANE KW DOE as Parent, Guardian, and Next Friend of JANE RW29 DOE a minor; JOHN JF DOE as Parent, Guardian, and Next Friend of JOHN JF30 DOE and JANE VF31 DOE minors; | : <br> : <br> : <br> : |

IN THE COURT OF COMMON PLEAS
OF CAMBRIA COUNTY – CIVIL
ACTION – MEDICAL PROFESSIONAL
LIABILITY ACTION

JURY TRIAL DEMANDED

NO. 2019-2172

JANE DM DOE as Parent, Guardian, and Next                    :
Friend of JOHN WM32 DOE a minor; JANE                        :
LM DOE as Parent, Guardian, and Next Friend                  :
of JOHN IM33 DOE and JANE JM34 DOE                           :
minors; JANE PL DOE as Parent, Guardian,                     :
and Next Friend of JANE KS35 DOE and                         :
JANE KS36 DOE minors; JOHN BH DOE and                        :
JANE DH DOE as Parents, Guardians, and                       :
Next Friends of JANE AH37 DOE a minor;                       :
        **&**                                                          :
**JANE AL38 DOE; JOHN DK39 DOE;**                            :
        **&**                                                          :
**JOHN RW DOE and JANE DW DOE as**                           :
**Parents, Guardians, and Next Friends of**                  :
**JANE AW40 DOE and JANE AW41 DOE**                          :
**minors; JANE WR DOE as Parent, Guardian,**                 :
**and Next Friend of JANE JR42 DOE a minor;**                :
**JANE AL DOE as Parent, Guardian, and**                     :
**Next Friend of JANE AM43 DOE, JOHN JM44**                  :
**DOE, and JANE TL45 DOE minors;**                           :
                                                             :
                Plaintiffs,                                 :
                                                             :
      v.                                                    :
                                                             :
LAUREL PEDIATRIC ASSOCIATES, INC.                            :
d/b/a LAUREL PEDIATRIC ASSOCIATES,                           :
323 Budfield Street, Johnstown, PA 15904                     :
        and                                               :
JOHNSTOWN PEDIATRIC ASSOCIATES,                              :
INC., d/b/a Johnstown Pediatric Associates,                  :
209 West Sea Spray Road,                                     :
Ocean City, New Jersey, 08226                                :
        and                                               :
CONEMAUGH VALLEY MEMORIAL                                    :
HOSPITAL d/b/a MEMORIAL MEDICAL                              :
CENTER,                                                      :
Registered Agent at 1086 Franklin-MMC, Inc.,                 :
4 Valley Pike, Johnstown, PA 15905                           :
        and                                               :
DLP CONEMAUGH MEMORIAL MEDICAL                               :
CENTER, LLC d/b/a CONEMAUGH HEALTH                           :
SYSTEM and CONEMAUGH MEMORIAL                                :
MEDICAL CENTER LEE CAMPUS,                                   :
320 Main Street, Johnstown, PA 15901                         :
        and                                               :

DLP Healthcare, LLC d/b/a Duke LifePoint          :
Healthcare, 1209 Orange Street, Wilmington,        :
DE 19801                                            :
     and                                              :
JOHNNIE W. BARTO, M.D.,                             :
Inmate Number: NU4531                              :
SCI Waymart                                         :
Pennsylvania Department of Corrections;            :
                                                   :
    Defendants.                             :

## CERTIFICATE OF MERIT AS TO DEFENDANT LAUREL PEDIATRIC ASSOCIATES, INC. d/b/a LAUREL PEDIATRIC ASSOCIATES

I, Andrew C. Dalton, Esquire, certify that an appropriately licensed professional has supplied a written statement to the undersigned that:

(1)     there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the complaint fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm; and

(2)     there is a basis to conclude that the care, skill, or knowledge exercised or exhibited, by licensed professionals for whom this defendant is responsible, in the treatment, practice, or work that is the subject of the complaint fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm (vicarious liability claim).

DALTON & ASSOCIATES, P.A.

BY:

Andrew C. Dalton, Esquire
Attorney for Plaintiffs

Date:  September 18, 2020

DALTON & ASSOCIATES, P.A.
By:  Andrew C. Dalton, Esquire
Pa. Identification No. 315550
Megan N. Kinley, Esquire
Pa. Identification No. 328196
Cool Spring Meeting House
1106 West Tenth Street
Wilmington, DE  19806
(302) 652-2050
ADalton@BDaltonlaw.com

Attorneys for Plaintiffs

| | |
|---|---|
| JANE BR1 DOE; JANE JM2 DOE; JANE KW3 DOE; JANE AF4 DOE; JANE SN5 DOE; JANE NC6 DOE; JANE SW7 DOE; JOHN GL8 DOE; JANE KK9 DOE; JANE DD10 DOE; JANE TS11 DOE; | : : : : : : |
| & | : |
| JANE KD DOE as Parent, Guardian, and Next Friend of JANE JD12 DOE a minor; JANE SM DOE as Parent, Guardian, and Next Friend of JOHN GM13 DOE a minor; JANE KP DOE as Parent, Guardian, and Next Friend of JANE HP14 DOE a minor; JANE RT DOE as Parent, Guardian and Next Friend of a minor JANE ET15 DOE and JOHN PT16 DOE minors; JOHN JK DOE and JANE MK DOE as Parents, Guardians, and Next Friends of JOHN LK17 DOE and JANE SK18 DOE minors; JOHN KE DOE and JANE AE DOE as Parents, Guardians, and Next Friends of JANE GE19 DOE and JOHN TE20 DOE minors; JANE KB DOE as Parent, Guardian, and Next Friend of JANE PB21 DOE a minor; JANE CT DOE as Parent, Guardian, and Next Friend of JANE ST23 DOE a minor, JANE JR DOE as Parent, Guardian, and Next Friend of JANE RR24 DOE a minor; | : : : : : : : : : : : : : : : : : : : : |
| & | : |
| JANE MH25 DOE; JOHN AS26 DOE; JANE CW27 DOE; JANE MW28 DOE; | : : |
| & | : |
| JANE KW DOE as Parent, Guardian, and Next Friend of JANE RW29 DOE a minor; JOHN JF DOE as Parent, Guardian, and Next Friend of JOHN JF30 DOE and JANE VF31 DOE minors; | : : : |

IN THE COURT OF COMMON PLEAS
OF CAMBRIA COUNTY – CIVIL
ACTION – MEDICAL PROFESSIONAL
LIABILITY ACTION

JURY TRIAL DEMANDED

NO. 2019-2172

JANE DM DOE as Parent, Guardian, and Next
Friend of JOHN WM32 DOE a minor; JANE
LM DOE as Parent, Guardian, and Next Friend
of JOHN IM33 DOE and JANE JM34 DOE
minors; JANE PL DOE as Parent, Guardian,
and Next Friend of JANE KS35 DOE and
JANE KS36 DOE minors; JOHN BH DOE and
JANE DH DOE as Parents, Guardians, and
Next Friends of JANE AH37 DOE a minor;
        **&**

**JANE AL38 DOE; JOHN DK39 DOE;**
        **&**

**JOHN RW DOE and JANE DW DOE as**
**Parents, Guardians, and Next Friends of**
**JANE AW40 DOE and JANE AW41 DOE**
**minors; JANE WR DOE as Parent, Guardian,**
**and Next Friend of JANE JR42 DOE a minor;**
**JANE AL DOE as Parent, Guardian, and**
**Next Friend of JANE AM43 DOE, JOHN JM44**
**DOE, and JANE TL45 DOE minors;**

            Plaintiffs,

      v.

LAUREL PEDIATRIC ASSOCIATES, INC.
d/b/a LAUREL PEDIATRIC ASSOCIATES,
323 Budfield Street, Johnstown, PA 15904
        and
JOHNSTOWN PEDIATRIC ASSOCIATES,
INC., d/b/a Johnstown Pediatric Associates,
209 West Sea Spray Road,
Ocean City, New Jersey, 08226
        and
CONEMAUGH VALLEY MEMORIAL
HOSPITAL d/b/a MEMORIAL MEDICAL
CENTER,
Registered Agent at 1086 Franklin-MMC, Inc.,
4 Valley Pike, Johnstown, PA 15905
        and
DLP CONEMAUGH MEMORIAL MEDICAL
CENTER, LLC d/b/a CONEMAUGH HEALTH
SYSTEM and CONEMAUGH MEMORIAL
MEDICAL CENTER LEE CAMPUS,
320 Main Street, Johnstown, PA 15901
        and

DLP Healthcare, LLC d/b/a Duke LifePoint          :
Healthcare, 1209 Orange Street, Wilmington,       :
DE 19801                                          :
     and                 :
JOHNNIE W. BARTO, M.D.,                           :
Inmate Number: NU4531                             :
SCI Waymart                                       :
Pennsylvania Department of Corrections;           :
                                                  :
     Defendants.          :

## CERTIFICATE OF MERIT AS TO DEFENDANT JOHNSTOWN PEDIATRIC ASSOCIATES, INC., D/B/A JOHNSTOWN PEDIATRIC ASSOCIATES

I, Andrew C. Dalton, Esquire, certify that an appropriately licensed professional has supplied a written statement to the undersigned that:

(1)    there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the complaint fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm; and

(2)    there is a basis to conclude that the care, skill, or knowledge exercised or exhibited, by licensed professionals for whom this defendant is responsible, in the treatment, practice, or work that is the subject of the complaint fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm (vicarious liability claim).

DALTON & ASSOCIATES, P.A.

BY:

Andrew C. Dalton, Esquire
Attorney for Plaintiffs

Date:  September 18, 2020

DALTON & ASSOCIATES, P.A.
By:  Andrew C. Dalton, Esquire
Pa. Identification No. 315550
Megan N. Kinley, Esquire
Pa. Identification No. 328196
Cool Spring Meeting House
1106 West Tenth Street
Wilmington, DE  19806
(302) 652-2050
ADalton@BDaltonlaw.com

Attorneys for Plaintiffs

| | |
|---|---|
| JANE BR1 DOE; JANE JM2 DOE; JANE KW3 DOE; JANE AF4 DOE; JANE SN5 DOE; JANE NC6 DOE; JANE SW7 DOE; JOHN GL8 DOE; JANE KK9 DOE; JANE DD10 DOE; JANE TS11 DOE;<br>&<br>JANE KD DOE as Parent, Guardian, and Next Friend of JANE JD12 DOE a minor; JANE SM DOE as Parent, Guardian, and Next Friend of JOHN GM13 DOE a minor; JANE KP DOE as Parent, Guardian, and Next Friend of JANE HP14 DOE a minor; JANE RT DOE as Parent, Guardian and Next Friend of a minor JANE ET15 DOE and JOHN PT16 DOE minors; JOHN JK DOE and JANE MK DOE as Parents, Guardians, and Next Friends of JOHN LK17 DOE and JANE SK18 DOE minors; JOHN KE DOE and JANE AE DOE as Parents, Guardians, and Next Friends of JANE GE19 DOE and JOHN TE20 DOE minors; JANE KB DOE as Parent, Guardian, and Next Friend of JANE PB21 DOE a minor; JANE CT DOE as Parent, Guardian, and Next Friend of JANE ST23 DOE a minor, JANE JR DOE as Parent, Guardian, and Next Friend of JANE RR24 DOE a minor;<br>&<br>JANE MH25 DOE; JOHN AS26 DOE; JANE CW27 DOE; JANE MW28 DOE;<br>&<br>JANE KW DOE as Parent, Guardian, and Next Friend of JANE RW29 DOE a minor; JOHN JF DOE as Parent, Guardian, and Next Friend of JOHN JF30 DOE and JANE VF31 DOE minors; | IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY – CIVIL ACTION – MEDICAL PROFESSIONAL LIABILITY ACTION<br><br>JURY TRIAL DEMANDED<br><br><br>NO. 2019-2172 |

JANE DM DOE as Parent, Guardian, and Next   :
Friend of JOHN WM32 DOE a minor; JANE   :
LM DOE as Parent, Guardian, and Next Friend   :
of JOHN IM33 DOE and JANE JM34 DOE   :
minors; JANE PL DOE as Parent, Guardian,   :
and Next Friend of JANE KS35 DOE and   :
JANE KS36 DOE minors; JOHN BH DOE and   :
JANE DH DOE as Parents, Guardians, and   :
Next Friends of JANE AH37 DOE a minor;   :
   **&**
**JANE AL38 DOE; JOHN DK39 DOE;**   :
   **&**
**JOHN RW DOE and JANE DW DOE as**   :
**Parents, Guardians, and Next Friends of**   :
**JANE AW40 DOE and JANE AW41 DOE**   :
**minors; JANE WR DOE as Parent, Guardian,**   :
**and Next Friend of JANE JR42 DOE a minor;**   :
**JANE AL DOE as Parent, Guardian, and**   :
**Next Friend of JANE AM43 DOE, JOHN JM44**   :
**DOE, and JANE TL45 DOE minors;**   :

   Plaintiffs,   :

   v.   :

LAUREL PEDIATRIC ASSOCIATES, INC.   :
d/b/a LAUREL PEDIATRIC ASSOCIATES,   :
323 Budfield Street, Johnstown, PA 15904   :
   and   :
JOHNSTOWN PEDIATRIC ASSOCIATES,   :
INC., d/b/a Johnstown Pediatric Associates,   :
209 West Sea Spray Road,   :
Ocean City, New Jersey, 08226   :
   and   :
CONEMAUGH VALLEY MEMORIAL   :
HOSPITAL d/b/a MEMORIAL MEDICAL   :
CENTER,   :
Registered Agent at 1086 Franklin-MMC, Inc.,   :
4 Valley Pike, Johnstown, PA 15905   :
   and   :
DLP CONEMAUGH MEMORIAL MEDICAL   :
CENTER, LLC d/b/a CONEMAUGH HEALTH   :
SYSTEM and CONEMAUGH MEMORIAL   :
MEDICAL CENTER LEE CAMPUS,   :
320 Main Street, Johnstown, PA 15901   :
   and   :

DLP Healthcare, LLC d/b/a Duke LifePoint          :
Healthcare, 1209 Orange Street, Wilmington,       :
DE 19801                                          :
     and                 :
JOHNNIE W. BARTO, M.D.,                           :
Inmate Number: NU4531                             :
SCI Waymart                                       :
Pennsylvania Department of Corrections;           :
                                             :
     Defendants.          :

## CERTIFICATE OF MERIT AS TO DEFENDANT CONEMAUGH VALLEY MEMORIAL HOSPITAL d/b/a MEMORIAL MEDICAL CENTER

I, Andrew C. Dalton, Esquire, certify that an appropriately licensed professional has supplied a written statement to the undersigned that:

(1)    there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the complaint fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm; and

(2)    there is a basis to conclude that the care, skill, or knowledge exercised or exhibited, by licensed professionals for whom this defendant is responsible, in the treatment, practice, or work that is the subject of the complaint fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm (vicarious liability claim).

DALTON & ASSOCIATES, P.A.

BY: _____

Andrew C. Dalton, Esquire
Attorney for Plaintiffs

Date:  September 18, 2020

DALTON & ASSOCIATES, P.A.
By:  Andrew C. Dalton, Esquire
Pa. Identification No. 315550
Megan N. Kinley, Esquire
Pa. Identification No. 328196
Cool Spring Meeting House
1106 West Tenth Street
Wilmington, DE  19806
(302) 652-2050
ADalton@BDaltonlaw.com

Attorneys for Plaintiffs

| | |
|---|---|
| JANE BR1 DOE; JANE JM2 DOE; JANE KW3 DOE; JANE AF4 DOE; JANE SN5 DOE; JANE NC6 DOE; JANE SW7 DOE; JOHN GL8 DOE; JANE KK9 DOE; JANE DD10 DOE; JANE TS11 DOE; <br> & <br> JANE KD DOE as Parent, Guardian, and Next Friend of JANE JD12 DOE a minor; JANE SM DOE as Parent, Guardian, and Next Friend of JOHN GM13 DOE a minor; JANE KP DOE as Parent, Guardian, and Next Friend of JANE HP14 DOE a minor; JANE RT DOE as Parent, Guardian and Next Friend of a minor JANE ET15 DOE and JOHN PT16 DOE minors; JOHN JK DOE and JANE MK DOE as Parents, Guardians, and Next Friends of JOHN LK17 DOE and JANE SK18 DOE minors; JOHN KE DOE and JANE AE DOE as Parents, Guardians, and Next Friends of JANE GE19 DOE and JOHN TE20 DOE minors; JANE KB DOE as Parent, Guardian, and Next Friend of JANE PB21 DOE a minor; JANE CT DOE as Parent, Guardian, and Next Friend of JANE ST23 DOE a minor, JANE JR DOE as Parent, Guardian, and Next Friend of JANE RR24 DOE a minor; <br> & <br> JANE MH25 DOE; JOHN AS26 DOE; JANE CW27 DOE; JANE MW28 DOE; <br> & <br> JANE KW DOE as Parent, Guardian, and Next Friend of JANE RW29 DOE a minor; JOHN JF DOE as Parent, Guardian, and Next Friend of JOHN JF30 DOE and JANE VF31 DOE minors; | IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY – CIVIL ACTION – MEDICAL PROFESSIONAL LIABILITY ACTION <br><br> JURY TRIAL DEMANDED <br><br><br> NO. 2019-2172 |

JANE DM DOE as Parent, Guardian, and Next
Friend of JOHN WM32 DOE a minor; JANE
LM DOE as Parent, Guardian, and Next Friend
of JOHN IM33 DOE and JANE JM34 DOE
minors; JANE PL DOE as Parent, Guardian,
and Next Friend of JANE KS35 DOE and
JANE KS36 DOE minors; JOHN BH DOE and
JANE DH DOE as Parents, Guardians, and
Next Friends of JANE AH37 DOE a minor;
          **&**
**JANE AL38 DOE; JOHN DK39 DOE;**
          **&**
**JOHN RW DOE and JANE DW DOE as**
**Parents, Guardians, and Next Friends of**
**JANE AW40 DOE and JANE AW41 DOE**
**minors; JANE WR DOE as Parent, Guardian,**
**and Next Friend of JANE JR42 DOE a minor;**
**JANE AL DOE as Parent, Guardian, and**
**Next Friend of JANE AM43 DOE, JOHN JM44**
**DOE, and JANE TL45 DOE minors;**

          Plaintiffs,

     v.

LAUREL PEDIATRIC ASSOCIATES, INC.
d/b/a LAUREL PEDIATRIC ASSOCIATES,
323 Budfield Street, Johnstown, PA 15904
          and
JOHNSTOWN PEDIATRIC ASSOCIATES,
INC., d/b/a Johnstown Pediatric Associates,
209 West Sea Spray Road,
Ocean City, New Jersey, 08226
          and
CONEMAUGH VALLEY MEMORIAL
HOSPITAL d/b/a MEMORIAL MEDICAL
CENTER,
Registered Agent at 1086 Franklin-MMC, Inc.,
4 Valley Pike, Johnstown, PA 15905
          and
DLP CONEMAUGH MEMORIAL MEDICAL
CENTER, LLC d/b/a CONEMAUGH HEALTH
SYSTEM and CONEMAUGH MEMORIAL
MEDICAL CENTER LEE CAMPUS,
320 Main Street, Johnstown, PA 15901
          and

DLP Healthcare, LLC d/b/a Duke LifePoint          :
Healthcare, 1209 Orange Street, Wilmington,       :
DE 19801                                          :
     and                 :
JOHNNIE W. BARTO, M.D.,                           :
Inmate Number: NU4531                             :
SCI Waymart                                       :
Pennsylvania Department of Corrections;           :
                                                  :
    Defendants.                :

---

## CERTIFICATE OF MERIT AS TO DEFENDANT DLP CONEMAUGH MEMORIAL MEDICAL CENTER, LLC d/b/a CONEMAUGH HEALTH SYSTEM and CONEMAUGH MEMORIAL MEDICAL CENTER LEE CAMPUS

I, Andrew C. Dalton, Esquire, certify that an appropriately licensed professional has supplied a written statement to the undersigned that:

(1)     there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the complaint fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm; and

(2)     there is a basis to conclude that the care, skill, or knowledge exercised or exhibited, by licensed professionals for whom this defendant is responsible, in the treatment, practice, or work that is the subject of the complaint fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm (vicarious liability claim).

DALTON & ASSOCIATES, P.A.

BY: _____
     Andrew C. Dalton, Esquire
     Attorney for Plaintiffs

Date:  September 18, 2020

DALTON & ASSOCIATES, P.A.
By:  Andrew C. Dalton, Esquire
Pa. Identification No. 315550
Megan N. Kinley, Esquire
Pa. Identification No. 328196
Cool Spring Meeting House
1106 West Tenth Street
Wilmington, DE  19806
(302) 652-2050
ADalton@BDaltonlaw.com

Attorneys for Plaintiffs

| | |
|---|---|
| JANE BR1 DOE; JANE JM2 DOE; JANE KW3 DOE; JANE AF4 DOE; JANE SN5 DOE; JANE NC6 DOE; JANE SW7 DOE; JOHN GL8 DOE; JANE KK9 DOE; JANE DD10 DOE; JANE TS11 DOE; | IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY – CIVIL ACTION – MEDICAL PROFESSIONAL LIABILITY ACTION |

:
:
:
:
:
:

&

JANE KD DOE as Parent, Guardian, and Next
Friend of JANE JD12 DOE a minor; JANE SM
DOE as Parent, Guardian, and Next Friend of
JOHN GM13 DOE a minor; JANE KP DOE as
Parent, Guardian, and Next Friend of JANE
HP14 DOE a minor; JANE RT DOE as Parent,
Guardian and Next Friend of a minor JANE ET15
DOE and JOHN PT16 DOE minors; JOHN JK
DOE and JANE MK DOE as Parents,
Guardians, and Next Friends of JOHN LK17
DOE and JANE SK18 DOE minors; JOHN KE
DOE and JANE AE DOE as Parents,
Guardians, and Next Friends of JANE GE19
DOE and JOHN TE20 DOE minors; JANE KB
DOE as Parent, Guardian, and Next Friend of
JANE PB21 DOE a minor; JANE CT DOE
as Parent, Guardian, and Next Friend of
JANE ST23 DOE a minor, JANE JR DOE
as Parent, Guardian, and Next Friend of
JANE RR24 DOE a minor;

&

JANE MH25 DOE; JOHN AS26 DOE; JANE
CW27 DOE; JANE MW28 DOE;

&

JANE KW DOE as Parent, Guardian, and Next
Friend of JANE RW29 DOE a minor; JOHN JF
DOE as Parent, Guardian, and Next Friend of
JOHN JF30 DOE and JANE VF31 DOE minors;

JURY TRIAL DEMANDED

NO. 2019-2172

JANE DM DOE as Parent, Guardian, and Next    :
Friend of JOHN WM32 DOE a minor; JANE    :
LM DOE as Parent, Guardian, and Next Friend    :
of JOHN IM33 DOE and JANE JM34 DOE    :
minors; JANE PL DOE as Parent, Guardian,    :
and Next Friend of JANE KS35 DOE and    :
JANE KS36 DOE minors; JOHN BH DOE and    :
JANE DH DOE as Parents, Guardians, and    :
Next Friends of JANE AH37 DOE a minor;    :
        **&**    :
**JANE AL38 DOE; JOHN DK39 DOE;**    :
        **&**    :
**JOHN RW DOE and JANE DW DOE as**    :
**Parents, Guardians, and Next Friends of**    :
**JANE AW40 DOE and JANE AW41 DOE**    :
**minors; JANE WR DOE as Parent, Guardian,**    :
**and Next Friend of JANE JR42 DOE a minor;**    :
**JANE AL DOE as Parent, Guardian, and**    :
**Next Friend of JANE AM43 DOE, JOHN JM44**    :
**DOE, and JANE TL45 DOE minors;**    :
    :
        Plaintiffs,    :
    :
    v.    :
    :
LAUREL PEDIATRIC ASSOCIATES, INC.    :
d/b/a LAUREL PEDIATRIC ASSOCIATES,    :
323 Budfield Street, Johnstown, PA 15904    :
    and    :
JOHNSTOWN PEDIATRIC ASSOCIATES,    :
INC., d/b/a Johnstown Pediatric Associates,    :
209 West Sea Spray Road,    :
Ocean City, New Jersey, 08226    :
    and    :
CONEMAUGH VALLEY MEMORIAL    :
HOSPITAL d/b/a MEMORIAL MEDICAL    :
CENTER,    :
Registered Agent at 1086 Franklin-MMC, Inc.,    :
4 Valley Pike, Johnstown, PA 15905    :
    and    :
DLP CONEMAUGH MEMORIAL MEDICAL    :
CENTER, LLC d/b/a CONEMAUGH HEALTH    :
SYSTEM and CONEMAUGH MEMORIAL    :
MEDICAL CENTER LEE CAMPUS,    :
320 Main Street, Johnstown, PA 15901    :
    and    :

DLP Healthcare, LLC d/b/a Duke LifePoint          :
Healthcare, 1209 Orange Street, Wilmington,        :
DE 19801                                           :
    and                        :
JOHNNIE W. BARTO, M.D.,                            :
Inmate Number: NU4531                              :
SCI Waymart                                        :
Pennsylvania Department of Corrections;            :
                                               :
       Defendants.  :

## CERTIFICATE OF MERIT AS TO DEFENDANT DLP HEALTHCARE, LLC D/B/A DUKE LIFEPOINT HEALTHCARE

I, Andrew C. Dalton, Esquire, certify that an appropriately licensed professional has supplied a written statement to the undersigned that:

(1)     there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the complaint fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm; and

(2)     there is a basis to conclude that the care, skill, or knowledge exercised or exhibited, by licensed professionals for whom this defendant is responsible, in the treatment, practice, or work that is the subject of the complaint fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm (vicarious liability claim).

DALTON & ASSOCIATES, P.A.

BY:     Andrew C. Dalton, Esquire
        Attorney for Plaintiffs

Date:   September 18, 2020

DALTON & ASSOCIATES, P.A.
By: Andrew C. Dalton, Esquire
Pa. Identification No. 315550
Megan N. Kinley, Esquire
Pa. Identification No. 328196
Cool Spring Meeting House
1106 West Tenth Street
Wilmington, DE 19806
(302) 652-2050
ADalton@BDaltonlaw.com

Attorneys for Plaintiffs

JANE BR1 DOE; JANE JM2 DOE; JANE KW3
DOE; JANE AF4 DOE; JANE SN5 DOE; JANE
NC6 DOE; JANE SW7 DOE; JOHN GL8 DOE;
JANE KK9 DOE; JANE DD10 DOE; JANE TS11
DOE;
                  **&**
JANE KD DOE as Parent, Guardian, and Next
Friend of JANE JD12 DOE a minor; JANE SM
DOE as Parent, Guardian, and Next Friend of
JOHN GM13 DOE a minor; JANE KP DOE as
Parent, Guardian, and Next Friend of JANE
HP14 DOE a minor; JANE RT DOE as Parent,
Guardian and Next Friend of a minor JANE ET15
DOE and JOHN PT16 DOE minors; JOHN JK
DOE and JANE MK DOE as Parents,
Guardians, and Next Friends of JOHN LK17
DOE and JANE SK18 DOE minors; JOHN KE
DOE and JANE AE DOE as Parents,
Guardians, and Next Friends of JANE GE19
DOE and JOHN TE20 DOE minors; JANE KB
DOE as Parent, Guardian, and Next Friend of
JANE PB21 DOE a minor; JANE CT DOE
as Parent, Guardian, and Next Friend of
JANE ST23 DOE a minor, JANE JR DOE
as Parent, Guardian, and Next Friend of
JANE RR24 DOE a minor;
                  **&**
JANE MH25 DOE; JOHN AS26 DOE; JANE
CW27 DOE; JANE MW28 DOE;
                  **&**
JANE KW DOE as Parent, Guardian, and Next
Friend of JANE RW29 DOE a minor; JOHN JF
DOE as Parent, Guardian, and Next Friend of
JOHN JF30 DOE and JANE VF31 DOE minors;

IN THE COURT OF COMMON PLEAS
OF CAMBRIA COUNTY – CIVIL
ACTION – MEDICAL PROFESSIONAL
LIABILITY ACTION

JURY TRIAL DEMANDED

NO. 2019-2172

JANE DM DOE as Parent, Guardian, and Next
Friend of JOHN WM32 DOE a minor; JANE
LM DOE as Parent, Guardian, and Next Friend
of JOHN IM33 DOE and JANE JM34 DOE
minors; JANE PL DOE as Parent, Guardian,
and Next Friend of JANE KS35 DOE and
JANE KS36 DOE minors; JOHN BH DOE and
JANE DH DOE as Parents, Guardians, and
Next Friends of JANE AH37 DOE a minor;
      **&**
**JANE AL38 DOE; JOHN DK39 DOE;**
      **&**
**JOHN RW DOE and JANE DW DOE as**
**Parents, Guardians, and Next Friends of**
**JANE AW40 DOE and JANE AW41 DOE**
**minors; JANE WR DOE as Parent, Guardian,**
**and Next Friend of JANE JR42 DOE a minor;**
**JANE AL DOE as Parent, Guardian, and**
**Next Friend of JANE AM43 DOE, JOHN JM44**
**DOE, and JANE TL45 DOE minors;**

        Plaintiffs,

      v.

LAUREL PEDIATRIC ASSOCIATES, INC.
d/b/a LAUREL PEDIATRIC ASSOCIATES,
323 Budfield Street, Johnstown, PA 15904
     and
JOHNSTOWN PEDIATRIC ASSOCIATES,
INC., d/b/a Johnstown Pediatric Associates,
209 West Sea Spray Road,
Ocean City, New Jersey, 08226
     and
CONEMAUGH VALLEY MEMORIAL
HOSPITAL d/b/a MEMORIAL MEDICAL
CENTER,
Registered Agent at 1086 Franklin-MMC, Inc.,
4 Valley Pike, Johnstown, PA 15905
     and
DLP CONEMAUGH MEMORIAL MEDICAL
CENTER, LLC d/b/a CONEMAUGH HEALTH
SYSTEM and CONEMAUGH MEMORIAL
MEDICAL CENTER LEE CAMPUS,
320 Main Street, Johnstown, PA 15901
     and

DLP Healthcare, LLC d/b/a Duke LifePoint      :
Healthcare, 1209 Orange Street, Wilmington,    :
DE 19801                                 :
        and
JOHNNIE W. BARTO, M.D.,            :
Inmate Number: NU4531              :
SCI Waymart
Pennsylvania Department of Corrections;    :
                                          :
         Defendants.                :

## CERTIFICATE OF MERIT AS TO DEFENDANT JOHNNIE W. BARTO, M.D.

I, Andrew C. Dalton, Esquire, certify that an appropriately licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice, or work that is the subject of the complaint fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm.

DALTON & ASSOCIATES, P.A.

BY: _____

Andrew C. Dalton, Esquire
Attorney for Plaintiffs

Date: September 18, 2020

## CERTIFICATE OF SERVICE

I, Andrew C. Dalton, Esquire, do hereby certify that a true and correct copy of the foregoing

**Fourth Amended Complaint – Civil Action – Medical Professional Liability Action** was

served by Electronic and/or United States first class mail, postage prepaid, this 18th day of

September, 2020, upon the following:

> Paula A. Koczan, Esq.
> Michael C. Hamilton, Esq.
> Weber Gallagher
> Four PPG Place, 5th Floor
> Pittsburgh, PA 15222
> pkoczan@wglaw.com
> mhamilton@wglaw.com
>
> Lynn E. Bell, Esq.
> Davies, McFarland & Carroll
> One Gateway Center, 10th Floor
> Pittsburgh, PA 15222
> lbell@dmcpc.com
>
> Robert G. Devine, Esq.
> Michael W. Horner, Esq.
> White & Williams LLP
> 1650 Market Street
> One Liberty Place, Suite 1800
> Philadelphia, PA 19103
> deviner@whiteandwilliams.com
> hornerm@whiteandwilliams.com
>
> Eugene A. Giotto, Esq.
> Laura L. Reinhart, Esq.
> Cozen O'Connor
> One Oxford Centre
> 301 Grant Street, 41st Floor
> Pittsburgh, PA 15219
> egiotto@cozen.com
> lreinhart@cozen.com
>
> Christopher C. Rulis, Esq.
> Rulis & Bochicchio, LLC
> 555 Grant Street, Suite 120
> Pittsburgh, PA 15219
> crulis@rubollc.com

David M. Chmiel, Esq.
Matis Baum O'Connor P.C.
912 Fort Duquesne Blvd.
Pittsburgh, PA 15222
dchmiel@mbo-pc.com

and

H. Marc Tepper, Esq.
Buchanan Ingersoll & Rooney P.C.
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102
marc.tepper@bipc.com


DALTON & ASSOCIATES, P.A.

BY: _____
Andrew C. Dalton, Esq.
Attorney for Plaintiffs

Dated: September 18, 2020