IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NORCAL MUTUAL INSURANCE COMPANY, | ) ) | Case No. 3:21-cv-66 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | JUDGE KIM R. GIBSON |
| LAUREL PEDIATRIC ASSOCIATES, INC., d/b/a LAUREL PEDIATRIC ASSOCIATES, | ) ) ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff NORCAL Mutual Insurance Company ("NORCAL") brought the present action against Laurel Pediatric Associates, Inc., ("Laurel"), seeking a declaration that NORCAL has neither the duty to indemnify nor the duty to defend Laurel in an ongoing lawsuit in state court. (ECF No. 1 at ¶¶ 1, 7, 47–59).

Presently before the Court is Laurel's Motion to Dismiss NORCAL's declaratory judgement action on the basis that this Court's jurisdiction over the case is discretionary and the Court should decline to exercise its jurisdiction because the claims and issues are matters of state law. (ECF No. 11 at 1). The Motion is fully briefed (ECF Nos. 12, 14, 22, 25, 28) and ripe for disposition. For the following reasons, the Court **DENIES** the Motion.

## I. Background

### A. Factual Background

NORCAL is an insurance company organized under California law with its principal place of business in California. (ECF No. 1 at ¶ 2). Laurel is a corporation organized under Pennsylvania law with its principal place of business in Johnstown, Pennsylvania. (*Id.* at ¶ 3).

Johnnie W. Barto, M.D., ("Dr. Barto"), is a pediatrician who (1) worked at Laurel; (2) plead no contest to charges of aggravated indecent assault, indecent assault, and endangering the welfare of a child; and (3) had his medical license suspended in January 2018. (*Id.* at ¶¶7–10; ECF No. 12 at 1).

The relationship among the parties stems from the fact that NORCAL issued a medical professional liability insurance policy (the "NORCAL Policy") to Laurel for the period of January 1, 2016, to January 1, 2017. (ECF No. 1 at ¶¶ 17–18). Dr. Barto was listed as an "Insured" under the NORCAL Policy. (*Id.* at ¶ 19).

On May 14, 2019, several minor Jane Doe and John Doe plaintiffs instituted a suit against Laurel and others in the Court of Common Pleas of Cambria County, Pennsylvania (the "Underlying Action"). (*Id.* at ¶ 7). Over 40 plaintiffs have joined the Underlying Action, alleging sexual misconduct on the part of Dr. Barto during medical appointments that took place between 1991 and 2018. (*Id.* at ¶ 8).  In plaintiffs' most recent complaint, they brought the following claims against Laurel: (1) Childhood Sexual Abuse and Vicarious Liability, (2) Negligence— Hiring/Retention, (3) Negligent Supervision, (4) Negligent Misrepresentation, (5) Intentional Infliction of Emotional Distress, (6) Civil Conspiracy to Protect Reputation and Finances, (7) Medical Negligence, and (8) Corporate Negligence. (*Id.* at ¶ 7; ECF No. 1-2 at 94–120).

Laurel submitted plaintiffs' claims to its professional liability insurance carriers, including, as is relevant here, NORCAL and Physician's Insurance Program Exchange ("PIPE"). (ECF No. 12 at 1–3; ECF No. 14 at 1–4).

On July 18, 2019, NORCAL informed Laurel that it would provide a defense in the Underlying Action, but it would do so subject to a reservation of rights, and it would seek a

judicial determination that no coverage was available for the then-operative complaint in the Underlying Action. (ECF No. 1 at ¶ 31). On November 10, 2020, after the plaintiffs filed the Fourth Amended Complaint in the Underlying Action, NORCAL informed Laurel that it was not withdrawing its defense against the Underlying Action. (*Id.* at ¶¶ 32–34).[1]

For its part, PIPE denied all coverage of Laurel in connection with the Underlying Action. (ECF No. 12 at 3). Accordingly, in June of 2020, Laurel brought a complaint against PIPE for breach of contract and declaratory relief (the "Laurel/PIPE Action"). (*Id.*; ECF No. 14 at 3-4).

## B.  Procedural History

On April 12, 2021, NORCAL filed suit against Laurel before this Court. (ECF No. 1). As noted earlier, NORCAL seeks a declaration that it does not have a duty to defend or indemnify Laurel in the Underlying Action under the NORCAL Policy. (*Id.* at ¶¶ 1, 47–59). NORCAL contends that coverage is not owed under the NORCAL Policy because (1) the Underlying Action does not allege a "Medical Incident" during the "Policy Period[,]" and (2) the relevant exclusions bar coverage. (*Id.* at ¶¶ 35–46).

On May 13, 2021, Laurel filed a Motion to Dismiss, and a Brief in Support, requesting that the Court decline to exercise its jurisdiction over this matter and defer to the state courts.  (ECF Nos. 11, 12). On June 3, 2021, NORCAL filed a Brief in Opposition to Laurel's Motion to Dismiss. (ECF No. 14). On June 23, 2021, Laurel responded with a Reply in Support of its Motion to Dismiss. (ECF No. 22). On July 9, 2021, NORCAL submitted its Sur-Reply. (ECF No. 25). On

---

[1] On September 23, 2020, two subsequent suits were filed against Dr. Barto and his employers in the Court of Common Pleas of Cambria County, Pennsylvania. (ECF No. 1 at ¶ 33; ECF No. 12 at 2–3). NORCAL denied coverage of the claims against Laurel in these two subsequent lawsuits. (ECF No. 1 at ¶¶ 32–34; ECF No. 12 at 2-3).

August 19, 2021, NORCAL submitted a Notice of Supplemental Authority, referring the Court to the Third Circuit's decision in *DiAnoia's Eatery, LLC v. Motorists Mut. Ins. Co.*, 10 F.4th 192 (3d Cir. 2021). (ECF. No. 28). Finally, on December 9, 2021, Laurel submitted a Notice that it had filed a Motion for Partial Judgment on the Pleadings in the Laurel/PIPE Action. (ECF No. 32).

## II. Legal Standard

Generally, "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996); *see also Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (federal courts have "virtually unflagging obligation . . . to exercise the jurisdiction given them"). Declaratory judgment actions implicate an exception to this rule. *DiAnoia's Eatery, LLC*, 10 F.4th at 196 (citing *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 134–35 (3d Cir. 2014)). The Declaratory Judgment Act ("DJA") provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, . . . *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). The "Supreme Court has long held that the DJA's 'textual commitment to discretion'—*i.e.*, 'may'—'confer[s] . . . unique and substantial discretion' upon district courts to decide whether to exercise jurisdiction in declaratory judgment actions." *DiAnoia's Eatery, LLC*, 10 F.4th at 196 (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–87 (1995)); *see also Reifer*, 751 F.3d at 139. In other words, "a district court may abstain from hearing a declaratory judgment action that is properly within the court's subject matter jurisdiction." *DiAnoia's Eatery, LLC*, 10 F.4th at 196.

However, a district court's discretion under the DJA is not absolute. *Id.* It is "bounded and reviewable." *Reifer*, 751 F.3d at 140 (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942); *Wilton*, 515 U.S. 277). Over the years, the Third Circuit has articulated several factors that district courts should consider when exercising discretion under the DJA. *Id.* In the Third Circuit's most comprehensive discussion of these factors, *Reifer*, the court "began by noting that the 'existence or non-existence of pending parallel state proceedings [to the declaratory judgment action],' while not dispositive, is a factor that 'militates significantly' in favor of either declining or exercising jurisdiction, respectively." *DiAnoia's Eatery, LLC*, 10 F.4th at 196 (quoting *Reifer*, 751 F.3d at 144–45). The *Reifer* court then enumerated eight factors that a district court should consider, to the extent they are relevant:

(1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;

(2) the convenience of the parties;

(3) the public interest in settlement of the uncertainty of obligation;

(4) the availability and relative convenience of other remedies;

(5) a general policy of restraint when the same issues are pending in a state court;

(6) avoidance of duplicative litigation;

(7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata; and

(8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

5

*Id.* at 196–97 (citing *Reifer*, 751 F.3d at 146).

The eight *Reifer* factors are not exhaustive. *Reifer*, 751 F.3d at 146. There is also "additional guidance" from *State Auto Insurance Cos. v. Summy*, 234 F.3d 131 (3d Cir. 2000), as amended (Jan. 30, 2001), that is applicable in the insurance context. *Reifer*, 751 F.3d at 146–47. *Summy*'s additional guidance includes the recommendation that "when applicable state law is 'uncertain or undetermined, district courts should be particularly reluctant' to exercise DJA jurisdiction." *Id.* at 141 (quoting *Summy*, 234 F.3d at 135). Further, "[t]he fact that district courts are limited to predicting—rather than establishing—state law requires 'serious consideration' and is 'especially important in insurance coverage cases.'" *Id.* at 148 (quoting *Summy*, 234 F.3d at 135). Yet, the Third Circuit has cautioned that there can be no *per se* dismissal of insurance declaratory judgment actions, in part because "[f]ederal and state courts are equally capable of applying settled state law to a difficult set of facts." *Id.* at 147 (alteration in original) (quoting *Heritage Farms Inc. v. Solebury Twp.*, 671 F.2d 743, 747 (3d Cir. 1982)).

In weighing these factors, "district courts declining jurisdiction\should be rigorous in ensuring themselves that the lack of pending parallel state proceedings is outweighed by opposing factors." *Id.* at 144. With respect to state law claims, district courts should "squarely address" the alleged novelty or undetermined nature of state law issues. *Id.* at 149. Finally, "[t]he weighing of these factors should be articulated in a record sufficient to enable [the Third Circuit's] abuse of discretion review." *Id.* at 147.

## III. Discussion

### A. The Absence of a Parallel State Court Proceeding and the Eight *Reifer* Factors Indicate that this Court Should Exercise Jurisdiction

In determining whether to exercise discretionary jurisdiction, courts should first explore whether there is a parallel state proceeding, and then move to an evaluation of the other relevant factors to decide if those factors weigh for or against retaining jurisdiction. *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 282 (3d Cir. 2017).

The Court therefore begins its analysis by examining whether there is a parallel state proceeding.

### 1. The Parties' Arguments

Laurel contends that while "there is no 'parallel' state court proceeding between NORCAL and Laurel, there are pending state court proceedings in which both parties are involved that will invariably touch upon the issues embraced by this case." (ECF No. 22 at 3). Specifically, with respect to the Underlying Action, Laurel states that "whether and to what extent Laurel may be liable on Medical Negligence claims of the type covered by NORCAL's professional liability policy will be determined in that action." (*Id.*). Further, "[p]erhaps even more clearly, there is a pending declaratory judgment action in [state court] between Laurel and … PIPE, raising materially indistinguishable issues." (*Id.*).

In response, NORCAL notes Laurel's concession that there is no parallel state court proceeding between NORCAL and Laurel. (ECF No. 25 at 2). Further, with respect to the Laurel/PIPE Action, NORCAL contends that it is not a parallel state court proceeding because it involves "different parties and different language from the NORCAL [P]olicy." (*Id.* at 3).

### 2.  Legal Standard

A "parallel state proceeding is a pending matter 'involving the same parties and presenting [the] opportunity for ventilation of the same state law issues.'" *Kelly*, 868 F.3d at 284 (quoting *Wilton*, 515 U.S. at 283). Germane factors include "the scope of the state court proceeding, the claims and defenses asserted, and whether necessary parties [have] been or could be joined." *Id.* Such "analysis contemplates comparing the state and federal action as they contemporaneously exist, not as they might eventually be." *Id.* Indeed, the "mere potential or possibility that two proceedings will resolve related claims between the same parties is not sufficient to make those proceedings parallel; rather, there must be a substantial similarity in issues and parties between contemporaneously pending proceedings." *Id.* at 283–84. "[S]ubstantial similarity" means "that the parties involved are closely related and that the resolution of an issue in one [case] will necessarily settle the matter in the other." *Id.* at 284 n.8.

### 3.  No Parallel State Court Proceeding Exists

Here, given Laurel's submissions to the Court, (ECF Nos. 12, 22), there are two possible parallel state court proceedings: (1) the Underlying Action and (2) the Laurel/PIPE Action.

Turning first to the Underlying Action, NORCAL is not a party to that dispute. (ECF No. 1 at ¶¶ 7–8). Moreover, Laurel has offered no timely, specific argument that the issues in the Underlying Action are the same as the issues now before this Court. (*See* ECF Nos. 11, 12).[2]

---

[2] In Laurel's initial submissions relative to its Motion to Dismiss, (ECF Nos. 11, 12), Laurel asserted that (1) the Pennsylvania state court system is "already adjudicating *numerous actions* involving the same issues attendant to" the case now before this Court and (2) there are "related pending state court *proceedings*." (ECF No. 12 at 2, 5) (emphasis added). Laurel offered no timely, specific argument that the Underlying Action presents the same issues as the case now before this Court. (ECF Nos. 11, 12). Rather, Laurel focused primarily on its argument that the Laurel/PIPE Action presents "materially identical issues" as those presented by the case before this Court. (ECF No. 12 at 5–6).

Therefore, the Court holds that the Underlying Action does not constitute a parallel state court proceeding. *Kelly*, 868 F.3d at 287.[3]

Turning next to the Laurel/PIPE Action, NORCAL is once again not a party to that dispute. (ECF No. 11-3 at 1; ECF No. 12 at 3).

With respect to the issues in the Laurel/PIPE Action on the one hand, and this case on the other hand, although Laurel contends that the language in the NORCAL policy is substantially similar to the language in the policies that Laurel obtained from PIPE, Laurel admits that the

---

Laurel's most developed argument on this subject came in its Reply Brief, where it argued that this Court should stay this case because "the extent to which NORCAL is obligated to indemnify Laurel for its liability in the [U]nderlying [A]ction cannot be decided until the [Underlying Action] proceeds to judgment and it is first determined whether Laurel is liable, and on what grounds." (*Id.* at 6).

As the Court explains in more detail below, *see infra* Section III.D, because Laurel only raised the issue of staying the case in a reply brief, the Court will not decide that issue at this time. Further, because Laurel did not advance a specific argument that the Underlying Action presents substantially similar issues to those now before this Court in its initial submissions on its Motion to Dismiss, (ECF Nos. 11, 12), Laurel has likely waived that argument for purposes of the present motion. *See Kitchen and Bath Concepts of Pittsburgh, LLC v. Eddy Homes, Inc.*, No. 16-CV-589, 2017 WL 1001598, at *2 (W.D. Pa. Mar. 15, 2017) (stating that legal arguments not raised in an initial motion are generally deemed waived). However, the Court will permit Laurel to raise the issue of the similarities between the Underlying Action and the case before this Court in a motion to stay, should Laurel see fit to file such a motion.

In this vein, the Third Circuit has explained that it is possible that, "in certain circumstances, determining the issue of coverage will rely on questions central to the underlying liability proceeding … [e]ven if the proceedings are not parallel as we have defined it, such may be the type of situation which nevertheless warrants a court's abstention." *Kelly*, 868 F.3d at 287 n.12. By way of example, the Third Circuit cited a district court decision staying a declaratory action "in which the insurer disclaimed coverage on the basis that the plaintiffs were the defendant's employees, an issue already in dispute in a pending state lawsuit." *Id.* (citing *Nationwide Mut. Ins. Co. v. Lowe*, 95 F. Supp. 2d 274, 276–77 (E.D. Pa. 2000)).

[3] The two lawsuits that were filed against Laurel and Dr. Barto (among others) in September of 2020 are not parallel state court proceedings for the same reasons that the Underlying Action is not a parallel state court proceeding—NORCAL is not a party to those actions (ECF No. 11-1; ECF No. 11-2) and Laurel offered no specific argument, in its initial submissions on its Motion to Dismiss, (ECF Nos. 11, 12), that the two lawsuits filed in September of 2020 present the same issues as the action now before this Court.

language in the policies "may differ ever so slightly." (ECF No. 22 at 4).[4] Moreover, to clearly state

what the Court has already heavily implied, the insurance policies that PIPE issued to Laurel

(ECF No. 11-3 at 6) are separate policies from the NORCAL Policy that NORCAL issued to Laurel.

(*See* ECF No. 1-3). Therefore, the central issue in the Laurel/PIPE Action is whether the *PIPE*

*policies* provide coverage to Laurel in the Underlying Action, (*see* ECF No. 11-3 at 3–12), whereas

the central issue in this action is whether the *NORCAL Policy* provides coverage to Laurel in the

Underlying Action. (*See* ECF No. 1); *Kelly*, 868 F.3d at 287 (defining the question presented by the

declaratory judgment action as whether the "insurance policy [between the insurer and the

insured] covers the [insured's] potential liability"). Accordingly, the Laurel/PIPE Action and the

suit now before this Court do not involve the same legal issues.

Indeed, regardless of any similarities between the policies issued by PIPE and NORCAL,

a state court determination in the Laurel/PIPE Action will not settle the matter of how the

NORCAL Policy operates relative to the Underlying Action. *Kelly*, 868 F.3d at 284 n.8. A separate

court will still need to decide how the NORCAL Policy applies given the specific text and dates

of that Policy and the facts and circumstances of the Underlying Action.

Therefore, the Court holds that the Laurel/PIPE Action is also not a parallel state court

action. *Reifer*, 751 F.3d at 137 n.9 ("The Supreme Court has described a 'parallel' proceeding as

'another proceeding … pending in a state court in which all the matters in controversy between

the parties could be fully adjudicated.'") (quoting *Brillhart*, 316 U.S. at 495).

---

[4] Because NORCAL is not a party to the Laurel/PIPE Action, and because the Laurel/PIPE Action deals with different policies than this action, the Laurel/PIPE Action is not a parallel state court proceeding, *Kelly*, 868 F.3d at 284, and the Court need not go into great detail regarding the similarity between the PIPE policies and the NORCAL Policy. However, based on the Court's review of the record, the Court does find that there are differences between the policies that PIPE issued and the NORCAL Policy.

Because there is no parallel state court proceeding, this factor weighs significantly in favor of the Court exercising jurisdiction over NORCAL's lawsuit. *Id.* at 144 ("[T]he absence of pending parallel state proceedings militates significantly in favor of exercising jurisdiction, although it alone does not require such an exercise."). The Court now turns to the other factors that inform the Court's resolution of Laurel's Motion.

**B.  The Eight *Reifer* Factors Support This Court Retaining Jurisdiction**

### 1.  The Likelihood That a Federal Court Declaration Will Resolve the Uncertainty of Obligation Which Gave Rise to the Controversy

Laurel argues that this factor weighs against the Court exercising jurisdiction because (1) the appropriate course of action would be to stay this case pending resolution of the Underlying Action, and (2) a state court could equally adjudicate this dispute. (ECF 22 at 9–10).

In response, NORCAL argues that this factor weighs in favor of the Court exercising jurisdiction because declaratory judgment actions resolve "uncertainty regarding whether an insurer must defend and indemnify its insured in an underlying tort action." (ECF 25 at 5).

The Third Circuit recently clarified this factor, stating that it "captures whether a declaration would bring about a complete termination of the controversy between the parties and thereby avoid duplicative, piecemeal litigation." *DiAnoia's Eatery, LLC,* 10 F.4th at 205 (internal quotation marks and citation omitted). The Third Circuit recognized two general types of situations that may make it unlikely that a declaration will prevent further litigation: "(1) when one or more persons have not been joined, but have an interest in the outcome of the action, and (2) when one or more issues have not been raised, but are a part of the controversy or uncertainty." *Id.* at 205–06 (internal quotation marks and citation omitted).

Here, the Court is unaware of any persons who have not been joined to this action but have an interest in its outcome (as defined by the Third Circuit).[5] Further, Laurel has not referenced, (ECF Nos. 12, 22), and the Court is not aware of, any issues that have not been raised but are a part of the controversy now before the Court. Indeed, a declaratory judgment by this

---

[5] Laurel contends that under the Pennsylvania Declaratory Judgment Act, if NORCAL had filed this action in Pennsylvania state court, NORCAL would have been required to name the plaintiffs in the Underlying Action as parties. (ECF No. 12 at 6). Laurel argues that the plaintiffs in the Underlying Action are mandatory parties because they "clearly have an interest in maximizing the extent of insurance coverage available to the Defendants in the [U]nderlying [A]ction[.]" (*Id.*). Because Laurel has raised the issue of the plaintiffs in the Underlying Action, the Court now turns to whether those plaintiffs are persons who "have not been joined" to this action, but who nonetheless have "an interest" in its outcome. *DiAnoia's Eatery, LLC,* 10 F.4th at 205.

In determining whether the plaintiffs in the Underlying Action have an interest in the outcome of this action, the Court first notes that Pennsylvania law does not govern how this Court answers this question. In *Vale Chem. Co. v. Hartford Accident and Indemn. Co.,* 516 A.2d 684 (1986), the Pennsylvania Supreme Court held, under the Pennsylvania Declaratory Judgment Act, that where "claims are asserted against an insured, those asserting the claims are indispensable parties in a declaratory judgment action to determine coverage between the insured and the insurer." *Liberty Mut. Ins. Co. v. Treesdale, Inc.,* 419 F.3d 216, 228 (3d Cir. 2005). However, the Third Circuit has held that "*Vale* is a procedural and jurisdictional ruling," meaning that it does not constitute a substantive rule of law that federal courts must apply in diversity cases. *Id.* at 228–29. In other words, the fact that Pennsylvania law calls the plaintiffs in the Underlying Action interested parties does not automatically mean that the plaintiffs in the Underlying Action are interested parties in the action before this Court.

The Court thus turns to the Third Circuit's guidance on this issue. In doing so, the Court stresses that the first *Reifer* factor "captures whether a declaration would bring about a complete termination of the controversy between the parties and *thereby avoid duplicative, piecemeal litigation.*" *Id.* (emphasis added) (internal quotation marks and citation omitted). Because this factor is concerned with duplicative litigation, the Court finds it highly unlikely that the plaintiffs in the Underlying Action, who only appear to have an economic interest in the outcome of this action, are the type of interested parties whom the Third Circuit was referencing in *DiAnoia's Eatery, LLC.* Indeed, the plaintiffs in the Underlying Action are not insureds under the NORCAL Policy, (*see* ECF No. 1-3), and Laurel has not averred that the plaintiffs have any other interest in this action that would enable them to sue Laurel or NORCAL regarding the subject of this action, i.e., NORCAL's duty to defend or indemnify. *Cf. Treesdale, Inc.,* 419 F.3d at 230 (stating, in the context of Rule 19(a)(2) of the Federal Rules of Civil Procedure, that in order for a party to be a necessary party to an action, that party must have an interest that relates to the subject of the action—i.e., a party is only "necessary if it has a legally protected interest, and not merely a financial interest, in the action.") (internal quotation marks and citations omitted). Therefore, the Court finds that there are no parties who have not been joined to this action but have an interest in its outcome, as defined by the Third Circuit.

Court would "clarify and settle the dispute regarding" NORCAL's obligations to Laurel under the NORCAL Policy. *Kelly*, 868 F.3d at 288. Therefore, the Court finds that this factor weighs in favor of exercising jurisdiction.[6]

### 2. Convenience of the Parties

Laurel argues that, "[i]f anything," this factor weighs in favor of abstention given both parties' participation in the state court proceedings. (ECF No. 22 at 10).

For its part, NORCAL argues that neither party would be inconvenienced by federal court proceedings, as (1) both parties are participating in lawsuits in western Pennsylvania, (2) Laurel is a citizen of the forum state and resides in the district in which this Court sits, and (3) the diverse party (NORCAL) is asking this Court to retain jurisdiction. (ECF No. 25 at 5).

Here, Laurel has its principal place of business in Johnstown, Pennsylvania, which is the city in which this Court sits. (ECF No. 1 at ¶ 3). Further, Laurel sued PIPE in Cambria County, (ECF No. 11-3 at 1), and all three of the suits that Laurel is presently defending were filed in Cambria County, (ECF No. 1-2 at 6; ECF No. 12 at 2–3), the same county in which this Court sits. Finally, NORCAL chose to file suit in this Court. For these reasons, the Court easily finds that "none of the parties will be inconvenienced by having this matter adjudicated in the federal forum." *Kelly*, 868 F.3d at 280, 288 (holding that plaintiffs, who were involved in a separate action

---

[6] With respect to Laurel's argument regarding staying this case, the Court will address that contention below. *See infra* Section III.D. Further, although a state court could equally adjudicate this dispute, the first factor "captures whether a declaration would bring about a complete termination of the controversy between the parties and thereby avoid duplicative, piecemeal litigation." *DiAnoia's Eatery, LLC*, 10 F.4th at 205 (internal quotation marks and citation omitted). Because a declaratory judgment by this Court would bring about a complete termination of the controversy between NORCAL and Laurel, the first factor weighs in favor of exercising jurisdiction, even given the existence of a state court as a potential forum for this litigation.

in state court and filed a motion to remand the federal declaratory action to state court, would not be inconvenienced by litigating the declaratory action in federal court). Accordingly, this factor does not weigh against exercising jurisdiction.

### 3. The Public Interest in Settlement of the Uncertainty of Obligation

Laurel argues that the third *Reifer* factor favors abstention because the public interest will not be better served by a federal court hearing an insurance coverage issue when a state court, which has more familiarity with the issues, can also hear the issue. (ECF No. 22 at 10). Along these lines, Laurel contends that the state law issues implicated in this case are nuanced. (*Id.* at 9).

In response, NORCAL argues that the public interest is served by determining whether an insurer must defend and indemnify its insured against an underlying claim. (ECF No. 25 at 5). Further, NORCAL contends that the Third Circuit "has held that the 'fair adjudication of legal disputes' is a public interest for which a federal district court is 'well-equipped to address.'" (*Id.* at 6) (citing *Kelly*, 868 F.3d at 289).

The Third Circuit recently clarified the third *Reifer* factor, stating that "[w]hile we have suggested that district courts should be reluctant to exercise DJA jurisdiction where state law is uncertain or undetermined, we have instructed district courts exercising discretion under the DJA to squarely address the alleged novelty of . . . state law claims." *DiAnoia's Eatery, LLC*, 10 F.4th at 207 (internal quotation marks and citation omitted). Indeed, in the context of this factor, the Third Circuit has explained that absent the presence of an "unsettled question of state law or important policy issues implicated by the coverage claims," there is "little reason for a federal court to be reluctant about deciding" an insurance case. *Kelly*, 868 F.3d at 288 n.13.

Here, outside Laurel's largely unexplained and wholly unsubstantiated statement that the state law issues are "nuanced," (ECF No. 22 at 9), the parties have not alleged that the action now before this Court implicates any unsettled questions of state law or important policy issues. (ECF Nos. 12, 14, 22, 25). Indeed, this action involves the interpretation of the NORCAL Policy, (*see* ECF No. 1), which is a contract. *DiAnoia's Eatery, LLC*, 10 F.4th at 210. And "sister-state courts and federal courts are equally capable of applying state contract law." *Id.*

Further, as this Court has previously held, "it is in the public's interest to resolve the uncertainty of whether [NORCAL] must continue to defend and indemnify [Laurel]. Similarly, requiring [NORCAL] to file a separate declaratory judgment [action] raising the same issues in state court is not in the public's interest for purposes of judicial economy." *Employers Mut. Cas. Co. v. Black's Home Sales*, 3:15-CV-07, 2015 WL 6738087, at *6 (W.D. Pa. Nov. 4, 2015).

Therefore, because the parties do not "aver that any public interest is at stake other than the usual interest in the fair adjudication of legal disputes, an interest which [this] Court" can address, *Kelly*, 868 F.3d at 288, and because the public interest supports this Court retaining jurisdiction and deciding the issues before it, the Court finds that the third factor weighs in favor of exercising jurisdiction.

### 4. The Availability and Relative Convenience of Other Remedies

Laurel does not address the availability or relative convenience of any other remedies in this matter. (ECF Nos. 12, 22). NORCAL argues that the Third Circuit has held that both state and federal courts are equally able to grant effective relief in insurance coverage declaratory judgment actions. (ECF No. 25 at 6). Further, NORCAL contends that this factor weighs in favor of this Court exercising jurisdiction because requiring NORCAL to file a new action in state court or

wait for a garnishment proceeding to commence would neither be convenient for the parties nor promote judicial economy. (*Id.*).

Here, other than continuing to litigate before this Court, the only remedies available to NORCAL would be to engage in a declaratory judgment action in state court or wait for a garnishment action to be filed against it after the Underlying Action concludes. Such "circumstances would not be convenient to the parties, and they would not promote judicial economy." *Employers Mut. Cas. Co.*, 2015 WL 6738087, at *6. Therefore, this factor also weighs in favor of exercising jurisdiction.

### 5. A General Policy of Restraint When the Same Issues are Pending in a State Court

Laurel argues that the issues before this Court are "materially identical" to those pending in state court, largely referencing the Laurel/PIPE Action. (ECF No. 22 at 3–5, 10).

For its part, NORCAL contends that because there is no parallel state action, "the issue of NORCAL's obligations under the NORCAL policy is not pending in state court." (ECF No. 25 at 6). Further, because NORCAL is not a party in the pending state court action, "there is no concern about duplicative litigation and the general policy of restraint does not apply in this case." (*Id.* at 6–7).

In *DiAnoia's Eatery, LLC*, the Third Circuit clarified the fifth *Reifer* factor, stating that the "fifth factor's 'policy of restraint' is applicable only when the 'same issues' are pending in state court between the same parties, not when the 'same issues' are merely the same legal questions pending in any state proceeding."10 F.4th at 206. Furthermore, it would undercut the "policy and purpose of diversity jurisdiction—prevent[ion of] apprehended discrimination in state courts against those not citizens of the State—if a party were unable to seek a declaratory judgment in

federal court because that declaration would require the unbiased application of a settled question of state law." *Id.* (internal quotation marks and citation omitted).

As stated above, there is no state court action between NORCAL and Laurel involving the same issues as those currently before this Court. *See supra* Section III.A.3. Therefore, at this juncture of this case, the "policy of restraint" is not applicable, and this factor does not weigh against exercising jurisdiction.

### 6. Avoidance of Duplicative Litigation

Laurel does not address the sixth *Reifer* factor. (ECF Nos. 12, 22). NORCAL again argues that there is no threat of duplicative litigation because there is no parallel state court proceeding. (ECF No. 25 at 7).

Here, with respect to the Underlying Action, Laurel has not offered a timely, specific argument that the issues in that Action are the same as the issues now before this Court. (ECF Nos. 11, 12).[7] Further, as the Court has previously explained, the issue of whether the NORCAL Policy covers Laurel in the context of the Underlying Action is not before the Court in the PIPE/Laurel Action. *See supra* Section III.A.3. Accordingly, for purposes of the present motion, the Court finds that the issues in this case are distinct from the issues in the state court proceedings. *Kelly*, 868 F.3d at 289. Thus, the Court holds that the sixth factor does not weigh against exercising jurisdiction.

---

[7] Once again, for the reasons outlined above, the Court will defer consideration of Laurel's argument regarding the similarities between the Underlying Action and the action before this Court until Laurel files a motion to stay, should Laurel file such a motion. Therefore, the Court stresses that its holding on this issue is limited to the context of Laurel's Motion to Dismiss.

7. **Prevention of the Use of the Declaratory Action as a Method of Procedural Fencing or to Provide Another Forum in a Race for *Res Judicata***

Laurel states that no procedural fencing has occurred in the present matter. (ECF No. 22 at 8). NORCAL argues that because there is no evidence of procedural fencing or forum selection influencing NORCAL's decision to file suit before this Court, the seventh *Reifer* factor cannot weigh against this Court exercising jurisdiction. (ECF No. 25 at 7).

Indeed, there is neither any evidence nor any contention by the parties that procedural fencing or racing for *res judicata* has occurred in this case. (ECF Nos. 12, 14, 22, 25). Therefore, the seventh factor also does not weigh against exercising jurisdiction.[8]

8. **(In the Insurance Context), an Inherent Conflict of Interest Between an Insurer's Duty to Defend in a State Court and its Attempt to Characterize that Suit in Federal Court as Falling Within the Scope of a Policy Exclusion.**

Laurel argues that there is an "inherent conflict of interest" between "NORCAL's defense in state court and its attempt to characterize that suit here as falling within the scope of a policy exclusion." (ECF No. 22 at 10). Specifically, Laurel contends that NORCAL's appointed "defense counsel will be incentivized to portray the claims asserted against Laurel in the [Underlying

---

[8] As the Court noted earlier, Laurel contends that NORCAL filed suit in federal court to evade Pennsylvania's requirement that the plaintiffs in the Underlying Action be joined to NORCAL's declaratory judgment action. (ECF No. 12 at 6). However, the Court does not deem this an improper motive for two reasons, working together. *Kelly*, 868 F.3d at 289 (considering, in the context of the seventh factor, whether the party that brought the case into federal court acted pursuant to an "improper motive").

First, Laurel's statement that NORCAL sought to evade the requirements of state law is a simple allegation—Laurel has not averred that it has any evidence to support its claim. (ECF No. 12 at 6). Second, Laurel offers no caselaw to support the argument that NORCAL seeking to avoid the requirements of Pennsylvania state law on this issue constitutes an *improper* motive that this Court should find weighs against exercising jurisdiction. Indeed, the federal forum stands open to diverse parties whose suits satisfy the amount in controversy requirement, and NORCAL, a California corporation, (ECF No. 1 at ¶ 2), may have elected to file its declaratory action in this Court for some reason completely unrelated to Pennsylvania's requirements with respect to indispensable parties. Therefore, the Court finds that this factor does not weigh against exercising jurisdiction.

Action] as not involving a 'Medical Incident[.]'" (*Id.* at 8). The implication of Laurel's argument being that if the claims against Laurel do not involve a "Medical Incident," then the NORCAL Policy does not afford coverage to Laurel in the Underlying Action. Laurel states that this issue "has already arisen in the [Underlying Action] as between Laurel and NORCAL's appointed counsel." (*Id.*).

In response, NORCAL states that courts in the Third Circuit "recognize that an insurer's request for declaratory relief does not create a conflict of interest because the issues in a declaratory judgment action concern the scope of coverage[,] not whether the insured is liable for the underlying allegations." (ECF No. 25 at 7) (internal quotation marks and citations omitted). NORCAL argues that Laurel's approach would punish an insurer who chooses to provide a defense to its insured and then seeks a declaratory judgment. (*Id.* at 8).

The Court need not delve too deeply into this issue at this juncture, because even assuming without deciding that this factor weighs against exercising jurisdiction, the balance of the factors and the record before the Court support the Court's decision to exercise its jurisdiction over NORCAL's suit and provide NORCAL with access to a federal forum, in accordance with the Constitution's provision of diversity jurisdiction. *Reifer*, 751 F.3d at 144 ("[D]istrict courts declining jurisdiction should be rigorous in ensuring themselves that the lack of pending parallel state proceedings is outweighed by opposing factors."); *DiAnoia's Eatery, LLC*, 10 F.4th at 207 (noting that diversity jurisdiction is a constitutionally-created vehicle for a party to use in an effort to obtain a declaratory judgment on issues involving application of a settled question(s) of state law).

## C.  Additional Guidance Does Not Weigh Against Exercising Jurisdiction

The eight *Reifer* factors are not exhaustive, and the Third Circuit has pointed to additional guidance from *Summy* as applicable in the insurance context. *DiAnoia's Eatery, LLC*, 10 F.4th at 197. *Summy's* additional guidance includes the recommendation that "when applicable state law is 'uncertain or undetermined, district courts should be particularly reluctant' to exercise DJA jurisdiction." *Reifer*, 751 F.3d at 141 (quoting *Summy*, 234 F.3d at 135). Additionally, "[t]he fact that district courts are limited to predicting—rather than establishing—state law requires 'serious consideration' and is 'especially important in insurance coverage cases.'" *Id.* at 148 (quoting *Summy*, 234 F.3d at 135). Yet, the Third Circuit has cautioned that there can be no *per se* dismissal of insurance declaratory judgment actions, in part because "[f]ederal and state courts are equally capable of applying settled state law to a difficult set of facts." *Id.* at 147 (alteration in original) (quoting *Heritage Farms Inc.*, 671 F.2d at 747).

Here, as the Court explained earlier, the parties have not alleged that the action now before this Court implicates any unsettled questions of Pennsylvania state law. (ECF Nos. 12, 14, 22, 25). Given that the Court has every indication, at this point in this proceeding, that the present case involves application of settled principles of Pennsylvania law, the Court reiterates the Third Circuit's guidance that "there can be no *per se* dismissal of declaratory judgment actions, in part because federal and state courts are equally capable of applying settled state law to a difficult set of facts." *DiAnoia's Eatery, LLC*, 10 F.4th at 197 (internal quotation marks and citation omitted). In short, the Court finds that the additional guidance from *Summy* does not weigh against exercising jurisdiction.

### D. Improperly Raised Claim

As the Court noted earlier, Laurel argued, in its Reply in Support of its Motion to Dismiss that the Court should stay this action pending developments in the Underlying Action. (ECF No. 22 at 6).

Because Laurel did not include a request for a stay in its Motion to Dismiss (ECF No. 11) or its initial Brief in Support of its Motion to Dismiss (ECF No. 12), the Court will not consider Laurel's arguments in favor of a stay at this point in this case. *Konold v. Superior Int'l Indus. Inc.*, 911 F. Supp. 2d 303, 307 n.2 (W.D. Pa. 2012) (declining to consider new argument raised in reply brief "as it should have been included in the Motion to Dismiss and Brief in support thereof"). Indeed, the Court finds that considering this argument now would be prejudicial to NORCAL, which has not had a full opportunity to address it. *Id.*

However, the Court will permit Laurel to submit a motion to stay this case in the future if it sees fit to do so. For purposes of clarity, the Court stresses that it has not weighed Laurel's arguments related to a stay in ruling on Laurel's Motion to Dismiss. Should Laurel bring a motion to stay in the future, the Court will fully consider Laurel's arguments on the subject at that time.

## IV. Conclusion

For the foregoing reasons, the Court finds that it is appropriate to exercise its discretionary authority over this matter, and the Court will therefore deny Laurel's Motion to Dismiss.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NORCAL MUTUAL INSURANCE COMPANY, | ) | Case No. 3:21-cv-66 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | JUDGE KIM R. GIBSON |
| LAUREL PEDIATRIC ASSOCIATES, INC., d/b/a LAUREL PEDIATRIC ASSOCIATES, | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER

AND NOW, this 2nd day of May, 2022, upon consideration of Defendant Laurel Pediatric Associate's Motion to Dismiss, (ECF No. 11), and in accordance with the accompanying Memorandum Opinion, it is **HEREBY ORDERED** that the Motion is **DENIED.** To the extent that Laurel requests that the Court stay this action, Laurel's Motion is **DENIED WITHOUT PREJUDICE**.

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE