IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
JOHNSTOWN DIVISION

| | | |
|---|---|---|
| NORCAL INSURANCE COMPANY, F/K/A NORCAL MUTUAL INSURANCE COMPANY; | ) ) ) ) | Civil Action No.: 3:21-CV-00066-CBB |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Christopher B. Brown United States Magistrate Judge |
| LAUREL PEDIATRIC ASSOCIATES, INC., | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM AND ORDER[1]
ON ECF No. 50**

**Christopher B. Brown, United States Magistrate Judge.**

## I.    Introduction

This declaratory judgment action was initiated by Plaintiff Norcal Insurance Company ("NORCAL") against Defendant Laurel Pediatric Associates, Inc. ("Laurel") on April 12, 2021 seeking a judicial determination pursuant to 28 U.S.C. §§ 2201, 2202 that NORCAL does not owe a duty to defend or indemnify under an insurance policy issued to Laurel in connection with an underlying state court lawsuit filed against Laurel and others seeking damages from sexual misconduct perpetrated against minor-patients by a former Laurel pediatrician, Johnnie W.

---

[1]    This Memorandum Order is sealed subject to any further Order of Court.

Barto, M.D. ("Barto"). ECF No. 76 at ¶ 2.  This action was reassigned to the undersigned on April 1, 2025. ECF No. 69.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

Presently before the Court is a motion for leave to file an amended complaint by NORCAL ECF No. 50.  The motion is fully briefed and ripe for consideration. ECF Nos. 51, 58, 65.  For the reasons that follow, NORCAL's motion for leave to file an amended complaint is GRANTED.[2]

## II.    Background

Because the Court writes primarily for the parties, only those facts necessary to resolve the present motions will be discussed.  Laurel is a medical healthcare facility located in Johnstown, Pennsylvania which provides pediatric services. NORCAL issued a medical professional liability insurance policy to Laurel for a policy period from January 1, 2016 to January 1, 2017.  NORCAL initiated this Declaratory Judgment Action to determine whether NORCAL has a duty to defend and/or indemnify Laurel in an underlying state court action.  The underlying action involves a civil lawsuit brought in the Court of Common Pleas of Cambria County,

---

[2]      "[A] magistrate judge, without the consent of the parties, has the power to enter orders which do not dispose of the case." *In re U.S. Healthcare*, 159 F.3d 142, 145 (3d Cir. 1998).  Generally, a motion to amend a complaint is a non-dispositive pretrial matter under 28 U.S.C. § 636(b) which a magistrate judge may decide by order. *See Cont'l Cas. Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245, 251 (3d Cir. 1998); *State Farm Mut. Automobile Ins. Co. v. Lugiano*, No. CV 15-575, 2016 WL 11701344, at *2 (E.D. Pa. Apr. 26, 2016) (noting a motion to amend a complaint may fall into the "dispositive" category and Article III authority where the denial of a motion to amend a complaint is based on a "futility" analysis akin to a motion pursuant to Fed. R. Civ. P. 12(b)(6)).  Laurel does not argue amendment is futile, thus this motion will be considered non-dispositive.  A district court reviewing a magistrate judge's decision of non-dispositive matters "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); LCvR 72.C.2.

Pennsylvania by over 100 minor plaintiffs against Laurel and others who were patients of Laurel and claim to have been sexually abused by Barto who was a former Laurel pediatrician and the founder of Laurel's pediatric practice (the "underlying litigation").[3]

Thereafter, Laurel filed a motion to dismiss and the Court, as part of its Initial Scheduling Order, ordered the parties to amend their pleadings within thirty days after it ruled on the then-pending motion to dismiss. ECF No. 27 at ¶ 1.  On May 2, 2022, the Court denied Laurel's motion to dismiss which made amended pleadings due by June 2, 2022. ECF No. 35.  Neither party amended their pleadings by that deadline.  After fact discovery was completed, and more than thirteen months after that court-ordered deadline to amend had passed, NORCAL filed the present motion for leave to file an amended complaint on July 28, 2023.

In its motion, NORCAL argues that discovery revealed additional bases to deny coverage which it had not known previously and therefore could not have been included in the original complaint.  Specifically, NORCAL maintains it learned during discovery that Robert T. Lovejoy, Laurel's office manager, knew of the claims of sexual abuse by Barto but misrepresented his knowledge of these allegations to NORCAL by denying such knowledge when he applied for insurance with NORCAL

---

[3]      The underlying litigation is being heard in the Court of Common Pleas of Cambria County, Pennsylvania against Laurel and others at *Doe v. Laurel Pediatric Associates, Inc.*, 2019-2172 (C.P. Cambria Cnty. 2019).  It is also noted that Barto pleaded no contest to criminal charges of aggravated indecent assault, indecent assault and endangering the welfare of a child, was sentenced to a term of incarceration and had his medical license suspended in January 2018. ECF No. 1 at ¶¶ 7-10

on behalf of Laurel during the relevant time period in 2015. ECF No. 65 at 4.

NORCAL points to a deposition taken in the underlying state-court litigation on

May 23, 2022, where Lovejoy testified he was employed at Laurel in 1998-2000

when he knew the Medical Board revoked Barto's license in 2000 because "patients

had made complaints of inappropriateness." ECF No. 65 at 7; 65-11.  In that

deposition he also testified he knew of a civil claim by one of three patients who

alleged sexual misconduct by Barto and was aware of a settlement with another one

of the claimants.  *Id.*  Lastly, he testified he learned all of this information from

Barto in the "early days of Laurel" and that Barto he even shown him a letter from

Children and Youth Service Agency stating a patient reported Barto sexually

touched her in 2014.[4] *Id.*

  Similarly, NORCAL maintains it first learned of deposition testimony by

Elaine Confer, M.D. taken in the underlying litigation on June 2022 that she

learned three patients made sexual molestation claims against Barto in 1998, that

Barto was brought before the medical board for those claims, and in 2008 she had

learned from another physician at Laurel there were additional allegations that

Barto had inappropriately touched a minor patient.  *Id.*  NORCAL now seeks to

amend the complaint to add those relevant facts which it claims further supports

---

[4]    NORCAL maintains Lovejoy's misrepresentations breach the relevant policies' conditions
which provide that the person signing the application warrants all information in the application is
truthful and deems the policy void where any information submitted as part of an application by the
insured is fraudulent, or intentionally or recklessly conceals or misrepresents a material fact. ECF
No. 65 at 4.

coverage denial and additional breaches of the relevant insurance provisions related to Lovejoy's alleged misrepresentations. *Id.*

In this action and in the underlying action, Laurel has consistently maintained it had no knowledge of allegations of sexual abuse by Barto. ECF No. 65 at 5.  NORCAL served its first set of interrogatories and document requests on Laurel on July 6, 2022, which Laurel responded to on July 28, 2022. ECF No. 65 at 5.  One interrogatory asked Laurel whether it had "knowledge and/or was aware, at any time before January 1, 2016, of any allegations that Barto engaged in any actual or alleged contact of a sexual nature with minors[.]" ECF No. 65-5 at ¶ 5. Laurel answered "No" and directed NORCAL to deposition transcripts of individuals including Lovejoy taken in the underlying action noting that "NORCAL and/or its appointed counsel that is defending Laurel in the underlying action are already in possession of these documents." *Id.*  In September and October 2022, NORCAL requested that Laurel produce these deposition transcripts and other related documents, but Laurel maintained they did not have to produce those documents because NORCAL could obtain the documents from Laurel's defense counsel in the underlying litigation. ECF No. 65 at 5-6; ECF No. 65-7 at 2. Notwithstanding NORCAL's objections related to Laurel's discovery obligations to produce these documents, in October 2022, NORCAL contacted Laurel's defense counsel in the underlying litigation to obtain the relevant documents. ECF No. 65-8.

In October and November 2022, some discovery from the underlying litigation was produced. ECF No. 65 at 6.  In January 2023, the parties began

formalizing an agreement that would allow Laurel's defense counsel in the underlying litigation to share documents with NORCAL in this action without violating protective orders in the underlying litigation. *Id.* In late January 2023, Laurel authorized the release of documents to NORCAL in this action subject to protective orders. ECF No. 65-9; ECF No. 65-10.

It is unclear from the record when NORCAL received the relevant documents from the underlying litigation – but it knew by at least April 27, 2023 when NORCAL shared its proposed amended complaint with Laurel including these newly discovered facts, and asking whether Laurel consented to the filing of the amended complaint. ECF No. 65-13. Laurel responded to NORCAL on May 3, 2023, indicating it did not consent to NORCAL's proposed amendment and threatened a bad faith claim against NORCAL if it sought leave to file the amended complaint. ECF No. 65-14. NORCAL maintains that after it determined an insurer does not commit bad faith by amending a complaint to conform to discovery, it filed the instant motion for leave to amend the complaint on July 28, 2023. ECF No. 50.

### III. Discussion

#### a. Motion to Amend Complaint

Fed. R. Civ. P. 16(b)(4) controls the court's authority to enter scheduling orders and provides: "[a] schedule may be modified only for good cause and with the judge's consent." This applies to deadlines set by the court for the parties to amend pleadings and this "good cause" standard insures "that at some point . . . the pleadings will be fixed[.]" Fed. R. Civ. P. 16, Advisory Committee Note (1983).

Similarly, Fed. R. Civ. P. 15(a)(2) controls a party's ability to amend pleadings and provides: "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."

When a party moves to amend a pleading after the deadline in the court's scheduling order has passed, the party must first establish "good cause" for doing so under the standard set forth in Fed. R. Civ. P. 16(b)(4) before the court considers whether the party has met the more liberal standard for amendment set forth in Fed. R. Civ. P. 15. *Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020).  Whether "good cause" exists to support a plaintiff's request to amend a pleading outside of a court-imposed deadline "depends in part on a plaintiff's diligence." *Id.*  Several courts recognize if a plaintiff "knows or is in possession of the information that forms the basis of the later motion to amend at the outset of the litigation, the party is presumptively not diligent." *Jackson v. Locust Med., LLC*, No. 4:22-CV-00424, 2024 WL 2701695, at *1 (M.D. Pa. May 24, 2024).  "This principle, however, may be rebutted by a clear and cognizable explanation why the proposed amendment was not included in the original pleading." *Chan. v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 702 (E.D. Pa. 2007).

Newly discovered evidence can support a finding of good cause under Fed. R. Civ. P. 16 where the party seeking amendment was diligent in discovering the evidence that supports amendment and are diligent in seeking to amend after discovering the evidence. *Graham v. Progressive Direct Ins. Co.*, 271 F.R.D. 112,

119 (W.D. Pa. 2010); *Johnston v. Titan Logistics & Resources, LLC*, No. CV 17-1617, 2020 WL 6364148, at *4 (W.D. Pa. Oct. 29, 2020).

Here, NORCAL has clearly shown good cause under Rule 16(b)(4).[5] It was diligent in seeking discovery from Laurel, and when Laurel did not provide the discovery it requested, NORCAL took the initiative to procure the discovery from the underlying litigation. After NORCAL learned of the new discovery related to Lovejoy's deposition in the underlying litigation sometime between October 2022 and April 2023, it informed Laurel it intended to file a motion to amend their complaint and provided a copy of its proposed amendment to Laurel seeking Laurel's consent to amend. In response to this proposal and after Laurel threatened to assert bad faith claims for NORCAL's attempt to amend its complaint, NORCAL did its due diligence to determine whether Laurel's threats had any merit and thereafter filed its motion for leave to amend.

The crux of Laurel's argument against amendment is that NORCAL was aware Laurel had knowledge of the sexual abuse allegations against Barto since the inception of the underlying litigation and NORCAL had knowledge of the discovery it now seeks to include in this action because the discovery was taken in the underlying case that NORCAL is defending on behalf of Laurel. ECF No. 58 at 2.

---

[5]    NORCAL did not provide a "good cause" analysis under Rule 16 in its opening brief but did so in its reply brief. Laurel argues the motion should be denied on that basis alone. The Court will not exercise its discretion to consider this argument waived, especially where NORCAL was under the albeit mistaken assumption that the deadline to amend pleadings had not yet passed, and NORCAL has in fact shown good cause for amendment. *Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020) (the district court has the discretion to refuse to consider arguments first raised in a reply).

Both arguments fail. First, there is nothing in the record that NORCAL knew or had reason to know that Lovejoy misrepresented answers in the policy applications until his testimony in the underlying litigation suggested as much, and until NORCAL received a copy of that deposition transcript in this litigation. Therefore, these facts are newly discovered and NORCAL had no reason to include the additional policy breaches until it was placed on notice of these facts – which it diligently did.  These are newly discovered facts that support an independent basis for NORCAL to argue the policy is void and it has no duty to defend or indemnify. Laurel generalizes NORCAL's theory of the case and argues NORCAL always took the position Laurel knew of the sexual abuse allegations.  But this generalization does not support that NORCAL knew Lovejoy misrepresented his knowledge about Barto's sexual abuse allegations on the insurance applications, especially because Lovejoy did not admit to doing so until his 2022 deposition which NORCAL only discovered sometime between October of 2022 and April of 2023.

Second, Laurel's argument that NORCAL's amendment is "based upon material furnished long ago in discovery in the underlying case that it itself is defending" ECF No. 58 at 16, is misleading.  Laurel cites to no legal authority that an insurance company who has retained counsel for an insured under its duty to defend is automatically privy to discovery and litigation materials in the underlying litigation and may use those materials against the insured in a separate coverage action.  In fact, the opposite is true.  Generally, under the common interest doctrine, when counsel is retained or paid for by an insurer, in some instances, either party –

the insurer or the insured – may obtain attorney-client communications related to the underlying facts giving rise to the claim. *N. River Ins. Co. v. Philadelphia Reinsurance Corp.*, 797 F. Supp. 363, 366 (D.N.J. 1992) (quoting *Carey–Canada, Inc. v. Aetna Cas. & Sur. Co.*, 118 F.R.D. 250, 251 (D.D.C.1987))(citations omitted). This is because the interests of the insurer and the insured in defeating the third-party claim are indistinguishable that "no reasonable expectations of confidentiality" exist. *Id.* "Communications that relate to an issue of coverage, however, are not discoverable. This distinction is recognized because the interests of the insurer and its insured with respect to the issue of coverage are always adverse." *Id.* at 367. "It is clear in an insurance situation that a lawyer designated to defend the insured has a client-lawyer relationship with the insured. The insurer is not, simply by the fact that it designates the lawyer, a client of the lawyer. . . . When there is a question whether a claim against the insured is within the coverage of the policy, a lawyer designated to defend the insured may not reveal adverse confidential client information of the insured to the insurer concerning that question without explicit informed consent of the insured." Restatement (Third) of the Law Governing Lawyers § 134 *cmt. f.* (2000). It is without merit to argue NORCAL had notice of the deposition testimony taken in the underlying litigation simply because it retained counsel for Laurel under the policy. For Laurel's retained counsel to share unsolicited litigation materials adverse to Laurel with NORCAL in this coverage litigation, after NORCAL denied coverage and without Laurel's notice and consent or an order of court would raise serious ethical concerns.

*See* Restatement (Third) of the Law Governing Lawyers § 51 *cmt. g.* (2000) ("a lawyer designated by an insurer to defend an insured owes a duty of care to the insurer with respect to matters as to which the interests of the insurer and insured are not in conflict . . . [h]owever, such a duty does not arise when it would significantly impair, in the circumstances of the representation, the lawyer's performance of obligations to the insured."); Restatement (Third) of the Law Governing Lawyers § 60 *cmt. l.* (2000) (outlining the duties of a lawyer to co-clients).

Notwithstanding Laurel's refusal to produce discovery in this action, NORCAL made every attempt to conduct discovery through other means and acted within a reasonable period of time to amend their complaint after learning of the newly discovered evidence it seeks to make part of this lawsuit. *Johnston v. Titan Logistics & Resources, LLC*, No. CV 17-1617, 2020 WL 6364148, at *5 (W.D. Pa. Oct. 29, 2020) (finding good cause to amend where evidence supporting amendment was discovered within a "few months" of seeking leave to amend). Accordingly, NORCAL has shown good cause to allow amendment[6] and the Court will consider

---

[6]    NORCAL's original complaint only seeks a declaration as to the 2016 policy. NORCAL also seeks to amend its complaint to include claims for declaratory relief related to successive policy periods from 2017-2019 because additional claimants who were alleged victims of Barto joined the underlying litigation since this lawsuit was initiated. Laurel objects to NORCAL amending its complaint to include these allegations arguing that NORCAL could have moved to amend sooner because the third amended complaint filed in 2020 in the underlying litigation provided notice of sexual abuse that occurred within the successive policy periods. ECF No. 58 at 21 n. 33. Notwithstanding Laurel relegated its argument to a footnote, its argument is without merit. The references to the third amended complaint in the underlying litigation Laurel offers to show NORCAL was on notice of claims related to the successive policy periods do not support its argument. The portions of the third amended complaint attached by Laurel alleges claims of sexual abuse by Barto that occurred in 1991, 1996, 2000, and 2007. ECF No. 58-1 pp. 25-36 at ¶¶ 65, 78, 89, 100. Of those claims, only the claim of sexual abuse levied against Laurel occurred in 2007 and all other claims are alleged to have occurred in other pediatrician offices in which Barto was employed. *Id.* at ¶¶ 89-99. The portions of the third amended complaint attached by Laurel do not conclusively show that Laurel had notice of any claims related to the successive coverage years from 2017-2019.

the factors under Rule 15 which requires leave to amend shall be freely given,

unless Laurel can show undue delay, bad faith or dilatory motive on the part of the

movant, repeated failure to cure deficiencies by amendments previously allowed,

undue prejudice to the opposing party by virtue of allowance of the amendment, or

futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Chancellor*, 501 F.

Supp. 2d at 700 ("the burden is on the party opposing the amendment to show

prejudice, bad faith, undue delay, or futility."). Delay alone is insufficient to support

a denial of leave to amend. *Cornell & Co. v. Occupational Safety & Health Rev.*

*Com'n*, 573 F.2d 820, 823 (3d Cir. 1978). "However, at some point, the delay will

become "undue," placing an unwarranted burden on the court, or will become

---

Nor do the portions of the fourth amended complaint in the underlying litigation attached by Laurel support NORCAL was on notice of claims within the successive policy periods. *See* ECF No. 58-1 pp. 37-54. It appears that as new plaintiffs were discovered or came forward in the underlying litigation, instead of amending the complaint, the fourth amended complaint became the "Master Complaint" and each new plaintiff joined the action by filing a "Notice of Adoption of the Master Complaint" ("adoption forms"), agreeing to be bound by the rulings made in the underlying litigation and setting forth the specific allegations against the defendants, including Laurel. *See* ECF No. 58-1 pp. 57-71. Of the adoption forms this Court is privy to, it appears both were filed on January 10, 2023, one alleging sexual abuse by Barto between 2012 to 2018 while employed by Laurel, ECF No. 58-1 at pp. 57-61, and another alleging sexual abuse by Barto between 2016 to 2018 while employed by Laurel. ECF No. 58-1 at pp. 67-71. It also appears adoption forms were filed by additional plaintiffs until at least March 9, 2023. ECF No. 58-1 at p. 75. And by the end of April 2023, NORCAL appeared to know of approximately 60 additional claimants who filed adoption forms which triggered the successive policy periods and sought Laurel's consent to amend its complaint in this action to include the successive policies. ECF No. 58-2 at pp. 72-73. Nothing in the record suggests NORCAL had notice of any claims related to the successive coverage years until 2023 when those additional plaintiffs joined the underlying litigation. Perhaps NORCAL received notice on a rolling basis, but it appears this occurred in the first few months of 2023. NORCAL could not have sought to amend its complaint to include references to new claimants and new policy periods until those claims were made or joined in the underlying litigation. NORCAL was not in possession of the information triggering the successive policies at the outset of this litigation, it learned of this information as discovery in the underlying litigation advanced and more plaintiffs came forward to join the underlying litigation, and it was diligent in seeking to amend its complaint within a few months after those plaintiffs joined the underlying litigation triggering the successive policy period. Accordingly, there is good cause for NORCAL to amend its complaint to include declaratory relief related to the successive policy period. The parties are cautioned that in any further matter before this Court, legal arguments made in footnotes will not be addressed. *Commonwealth of Pa. v. HHS*, 101 F.3d 939, 945 (3d Cir. 1996).

"prejudicial," placing an unfair burden on the opposing party." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) (cleaned up).

Laurel argues that NORCAL delayed filing the motion to amend because NORCAL knew of Laurel's prior knowledge of the sexual abuse allegations as far back as 2019 when the underlying lawsuit was first filed and NORCAL issued its reservation of rights letter to Laurel. As stated above, Laurel's knowledge of Barto's sexual abuse allegations as a ground to deny coverage under the policy does not mean that NORCAL uncovered every basis to deny coverage based on Laurel's knowledge – especially where the testimony uncovered in 2022 and provided to NORCAL within the course of litigation for the first time is separate grounds to deny coverage. Thus, no delay occurred to justify denying amendment.

Moreover, Laurel's arguments that NORCAL is acting in bad faith in its attempt to amend the complaint and Laurel will suffer prejudice if NORCAL is permitted to amend because the amendment is "designed to prove the truth and merit of the very allegations asserted against Laurel in the underlying action that NORCAL is defending" is again unsupported by legal authority and without merit. ECF No. 58 at 23. NORCAL is seeking a determination of whether it has an obligation to defend and indemnify Laurel for sexual abuse allegations under the policy which NORCAL claims excludes coverage for damages from sexual misconduct if the insured knew or should have known about the misconduct and failed to stop it or knew or should have known that the perpetrator of the abuse had a prior history or propensity for sexual misconduct, and a determination as to

13

whether the policy is void for a breach of its conditions. *See* ECF No. 50-2 at ¶¶ 43, 60-67. This Court can discern nothing prejudicial related to NORCAL seeking a judicial determination of its obligations under the policy and by seeking leave to file an amended complaint that conforms with evidence newly discovered. Laurel has not met its burden of showing why amendment should not be freely given under Rule 15 and NORCAL's motion is GRANTED as follows:

## ORDER

AND NOW, this 20th day of June, 2025, it is hereby ORDERED that NORCAL's motion for leave to file an amended complaint ECF No. 50 is GRANTED. NORCAL shall file its amended complaint forthwith.

BY THE COURT:

s/Christopher B. Brown
United States Magistrate Judge